UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

Delama GEORGES, et al.

            Plaintiffs,

     v.

United Nations, et al.


            Defendants.

--------------------------------------------------------

No.  1:13-cv-07146 (JPO)


**BRIEF OF *AMICI CURIAE* FANM AYISYEN NAN MIYAMI, INC. AND THE HAITIAN LAWYERS ASSOCIATION IN SUPPORT OF PLAINTIFFS' MOTION FOR AFFIRMATION THAT SERVICE HAS BEEN MADE ON DEFENDANTS**


DAVID K.S. KIM
Law Office of David K.S. Kim, P.C.
193-08 Northern Boulevard
Flushing, NY 11358
(718) 352-0801
kim@dkskimlaw.com
*Attorney of record for amici curiae*

*Of Counsel*:
BYRNES GUILLAUME
2101 Vista Parkway
Suite 268
West Palm Beach, FL 33411
(561) 201-8350
bguillaume@byrnesglaw.com

SOEURETTE MICHEL
19553 Northwest 2nd Avenue
Suite 218
Miami Gardens, FL 33169
(786) 309-5473
smichellaw@gmail.com

February 21, 2014

**TABLE OF CONTENTS**

INTERESTS OF *AMICI CURIAE* ...........................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

ARGUMENT...........................................................................................................................2

   I.  The UN's avoidance of service takes place at a time when prolonging the course of justice not only delays the possibility of redress for cholera victims and their families, but also ignores the new victims being infected every day. .............................................2

   II.  The UN's evasion of service fits into a pattern of dissembling and delay that worsened the initial cholera outbreak and currently stands in the way of efforts to alleviate stricken families' suffering and systematically tackle the disease. ...................4

   III.  The UN should be required to abide by the same rule-of-law principles that it espouses as central to its mission in Haiti, which should not permit it to bypass responding to Plaintiffs' claims.......................................................................................7

CONCLUSION........................................................................................................................10

# **TABLE OF AUTHORITIES**

Agreement between the United Nations and the Government of Haiti Concerning the Status of the United Nations Operations in Haiti, U.N.-Haiti, July 9, 2004, 2271 U.N.T.S. 235 ....................................................................................................................... 8

Channel 4 News, *Cholera crisis in Haiti, four years after the earthquake*. (Jan 10, 2014), *available at* http://www.channel4.com/news/haiti-cholera-disaster-un-earthquake ....... 3

Daniele Lantagne et al, *The Cholera Epidemic in Haiti: Where and How Did It Begin?* CURRENT TOPICS IN MICROBIOLOGY AND IMMUNOLOGY, 2013 ...................................... 5

Deborah Sontag, *In Haiti, Global Failures on a Cholera Epidemic*. N.Y. TIMES (Mar. 31, 2012), *available at* http://www.nytimes.com/2012/04/01/world/americas/haitis-cholera-outraced-the-experts-and-tainted-the-un.html?smid=pl-share ........................... 5

Editorial, *Haiti's Imported Disaster*, N.Y. TIMES, Oct. 12, 2013, *available at* http://www.nytimes.com/2013/10/13/opinion/sunday/haitis-imported-disaster.html?_r=0 ................................................................................................................ 7

Jonathan M. Katz, THE BIG TRUCK THAT WENT BY: HOW THE WORLD CAME TO SAVE HAITI AND LEFT BEHIND A DISASTER (2013) ..................................................................... 5

Letter from Rep. Christopher Smith and Rep. Albio Sires to Secretary of State Hillary Clinton (on file with *Amici*) ........................................................................................... 10

Letter from Rep. John Conyers to U.S. Ambassador to the United Nations Susan Rice, July 17, 2012, *available at* http://conyers.house.gov/index.cfm/press-releases?ID=11e98fff-5056-be00-4743-1c189ec648d7 ................................................ 10

Letter from Rep. Maxine Waters et al. to Secretary-General Ban Ki-Moon (May 30, 2013), *available at* http://waters.house.gov/news/documentsingle.aspx?DocumentID=336057 ................ 10

Matthew Mosk, *Bill Clinton, UN Envoy, Admits Peacekeepers as Source of Haiti Cholera*. ABC NEWS (Mar. 9, 2012), *available at* http://abcnews.go.com/Blotter/bill-clinton-admits-united-nations-source-haiti-cholera/story?id=15885580&singlePage=true ................................................................. 7

Pan-American Health Organization and World Health Organization, *Epidemiological Update: Cholera*. (Dec. 23, 2013), *available at* http://www.paho.org/hq/index.php?option=com_docman&task=doc_view&gid=23900 +&Itemid=999999&lang=en ............................................................................................ 3

Partners in Health, *Reflecting on the Cholera Outbreak in Haiti, Three Years Later*. (Oct. 18, 2013), *available at* http://www.pih.org/blog/reflecting-on-the-cholera-outbreak-in-haiti-three-years-later .................................................................................................. 11

Richard Knox, *Haitian Cholera Strain Spreads to Mexico*. NPR: MORNING EDITION (Oct. 23, 2013), available at http://www.npr.org/blogs/health/2013/10/23/239803890/haitian-cholera-strain-spreads-to-mainland-with-mexico-outbreak ............................................ 4

TRANSNATIONAL DEVELOPMENT CLINIC, YALE LAW SCHOOL, GLOBAL HEALTH JUSTICE PARTNERSHIP OF THE YALE LAW SCHOOL AND THE YALE SCHOOL OF PUBLIC HEALTH & ASSOCIATION HAÏTIENNE DE DROIT DE L'ENVIRONNEMENT, PEACEKEEPING WITHOUT ACCOUNTABILITY: THE UNITED NATIONS' RESPONSIBILITY FOR THE HAITIAN CHOLERA EPIDEMIC (2013), available at http://www.law.yale.edu/documents/pdf/Clinics/Haiti_TDC_Final_Report.pdf ....... 8, 9

UN, Department of Peacekeeping Operations and Office of the High Commissioner for Human Rights, *Rule of Law Indicators: Implementation Guide and Project Tools*. (2011), *available at* http://www.un.org/en/events/peacekeepersday/2011/publications/un_rule_of_law_indicators.pdf .............................................................................................................. 8

United Nations Security Council, *Report of the Secretary-General on the United Nations Stabilization Mission in Haiti* (Aug. 31, 2012), *available at* http://www.un.org/en/ga/search/view_doc.asp?symbol=S/2012/678 ......................... 2, 7

## INTERESTS OF *AMICI CURIAE*[1]

**Fanm Ayisyen Nan Miyami, Inc.** (FANM) / Haitian Women of Miami is an advocacy and social service agency located in the heart of Miami's Little Haiti, serving the needs of indigent and low-income women and their families, as well as victims of abuse, neglect, violence, discrimination and racism, primarily those of Haitian immigrant background.  Since 1991, FANM has championed and advocated for the rights of those who have been underserved, marginalized, disenfranchised, and discriminated against in South Florida, the United States, and Haiti.

**The Haitian Lawyers Association** (HLA) is a Florida-based non-profit membership organization whose mission is to promote excellence, professionalism, equality and diversity in the legal profession and among our members.  HLA strives to facilitate the administration of justice while protecting and promoting the general welfare of the Haitian-American community and other minority residents in the South Florida area.  Founded in 1997, HLA seeks among other goals to promote a greater awareness of and commitment to the civil and political rights of the Haitian-American community and to promote the general welfare of Haitian-Americans in South Florida.

## INTRODUCTION AND SUMMARY OF ARGUMENT

*Amici* respectfully urge the Court to grant Plaintiffs' motion for affirmation that service has been made or, in the alternative, for service of process by alternative means, and to extend the time to effectuate service.  *Amici* are South Florida-based civil society organizations

---

[1] *Amici* certify that no party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and that no person other than *Amici*, their members, and their counsel contributed money that was intended to fund preparing or submitting the brief.

1

representing Haitian immigrants to the United States and their descendants, some of whose family members were afflicted by the cholera outbreak which is the basis of the current lawsuit.

*Amici* wish to emphasize how important it is that Plaintiffs be accorded a prompt day in court for the United Nations (UN) to answer the serious allegations of negligence, gross negligence, wrongful death, private and public nuisance, and breach of contract contained in the Complaint. *See* Doc. 1 (filed Oct. 9, 2013). *Amici* here discuss three supporting reasons for granting the motion: (1) ongoing devastation in Haiti caused by the cholera outbreak; (2) the UN's pattern of evasion and delay that worsened the initial outbreak and currently stands in the way of efforts to alleviate stricken families' suffering and systemically tackle the disease; and (3) the importance of showing the Haitian people and their diaspora that, in spite of Haiti's dependence on external assistance, the UN will be held to account in court pursuant to the very rule-of-law principle it declares a priority for its mission in Haiti. *See, e.g.*, United Nations Security Council, *Report of the Secretary-General on the United Nations Stabilization Mission in Haiti* (Aug. 31, 2012), 8 (identifying four priorities of the United Nations Stabilization Mission in Haiti (MINUSTAH) as "cholera mitigation; security lighting; road and infrastructure rehabilitation; and rule of law and education infrastructure"), *available at* http://www.un.org/en/ga/search/view_doc.asp?symbol=S/2012/678.

## ARGUMENT

**I.     The UN's avoidance of service takes place at a time when prolonging the course of justice not only delays the possibility of redress for cholera victims and their families, but also ignores the new victims being infected every day.**

The cholera outbreak in Haiti is by no means solely a past event. Cholera appeared in Haiti in October 2010 for the first time in recorded history. According to a December 23, 2013 report by the Pan-American Health Organization and World Health Organization, "[i]n Haiti,

since the beginning of the epidemic (October 2010) and until EW [epidemiological week] 48 of 2013, there have been 693,875 cholera cases, of which 387,820 were hospitalized (55.9 %) and 8,482 died." In the first 48 weeks of 2013, "55,736 cholera cases and 431 deaths have been registered with a monthly average of 5,066 cases and 36 deaths and with a weekly average of 1,140 cases and 9 deaths." Pan-American Health Organization and World Health Organization, *Epidemiological Update: Cholera*. (Dec. 23, 2013), 1 (footnote omitted), *available at* http://www.paho.org/hq/index.php?option=com_docman&task=doc_view&gid=23900+&Itemid=999999&lang=en. Plaintiffs' initial attempt to serve the UN occurred on October 10, 2013. *See* Declaration of Beatrice Lindstrom in Support of Plaintiffs' Motion, Doc. 5, Ex.1, 1-2. Extrapolating from the 2013 infection figures, in the four and a half months that the UN's has evaded service before this filing, more than 22,500 new cases of cholera have occurred and 162 deaths. A recent news report confirmed that in "villages near the UN base . . . many are still getting infected from cholera-infested water." Channel 4 News, *Cholera crisis in Haiti, four years after the earthquake*. (Jan 10, 2014), *available at* http://www.channel4.com/news/haiti-cholera-disaster-un-earthquake.

Apart from new infections, Plaintiffs' complaint alleges ongoing deleterious effects for victims of cholera and their families, including the psychological toll of loss as well as material deprivation. The family of Fritznel Paul, for example, "incurred debt to pay for Fritznel's funeral and medical expenses. The family has been forced to sell Fritznel's car to repay some of the debt, and has had to pull Fritznel's eleven-year-old daughter out of school because they can no longer pay her tuition expenses." Complaint, Doc. 1, 46. For Plaintiff Felicia Paule, "[c]holera has affected every aspect of life . . . . She continues to have nightmares about suffering from cholera, has difficulties sleeping, and has lost interest in the activities that she used to enjoy prior

to contracting cholera." Paule "is no longer able to work as she did prior to contracting cholera, thereby causing economic hardship including making it difficult to pay for her daughters' schooling [and] has had to divert scarce funds from other basic needs to purchase treated water." *Id.* at 51.

Moreover, since this lawsuit was filed it has been reported that Haiti's cholera spread to Mexico, which became the third country – along with the Dominican Republic and Cuba – to experience an outbreak resulting from the cholera imported to Haiti under Defendants' auspices. Cases have also been reported in the United States. *See, e.g.*, Richard Knox, *Haitian Cholera Strain Spreads to Mexico*. NPR: MORNING EDITION (Oct. 23, 2013), available at http://www.npr.org/blogs/health/2013/10/23/239803890/haitian-cholera-strain-spreads-to-mainland-with-mexico-outbreak. In short, the UN's avoidance of service exacerbates the public health crisis in Haiti and neighboring countries by postponing past victims' day in court and allowing the infectious spread of cholera to continue adding new Plaintiffs and their suffering families to the putative class. By granting the motion, this Court would rightly demonstrate the urgency of considering the matters in dispute at a full and fair hearing.

**II.     The UN's evasion of service fits into a pattern of dissembling and delay that worsened the initial cholera outbreak and currently stands in the way of efforts to alleviate stricken families' suffering and systemically tackle the disease.**

Plaintiffs' Complaint details a pattern of UN behavior to mislead the public and avoid responsibility for the cholera outbreak in Haiti. This Court should not allow the UN to continue this evasion by abusing the Court's rules for service of process.

Extensive evidence from genetic and epidemiological studies, including one commissioned by the UN, demonstrates that cholera was introduced to Haiti when soldiers of the UN Stabilization Mission in Haiti (MINUSTAH) discharged untreated human waste into a

4

tributary of Haiti's largest river system. *See* Complaint, Doc. 1, 31-40; Daniele Lantagne et al, *The Cholera Epidemic in Haiti: Where and How Did It Begin?* CURRENT TOPICS IN MICROBIOLOGY AND IMMUNOLOGY, 2013, § 5. The Complaint details how the UN's statement on October 26, 2010, 12 days after the first documented case of cholera, was misleading or false. Far from managing waste in a manner "consistent with international standards," MINUSTAH was shown by multiple news organizations to have allowed fecal matter in waste water to flow into the Meille tributary system. *Id.* at 25-27; *see also, e.g.*, Jonathan M. Katz, THE BIG TRUCK THAT WENT BY: HOW THE WORLD CAME TO SAVE HAITI AND LEFT BEHIND A DISASTER (2013); Deborah Sontag, *In Haiti, Global Failures on a Cholera Epidemic*. N.Y. TIMES (Mar. 31, 2012) ("Even four months later, the United Nations' own experts, examining the base's supposedly improved sanitation, discovered haphazard piping . . . ."), *available at* http://www.nytimes.com/2012/04/01/world/americas/haitis-cholera-outraced-the-experts-and-tainted-the-un.html?smid=pl-share.

Two days later, the UN issued a false statement that all Nepalese soldiers deployed to Haiti underwent necessary medical testing and none tested positive for cholera when, in fact, none of the soldiers had been tested for cholera. *Id.* at 27 (noting that the Chief Medical Office of the Nepalese Army stated that "no MINUSTAH soldiers from Nepal had been tested for cholera"). At a press conference, the official MINUSTAH spokesperson asserted – falsely, as he later admitted – that no UN soldiers had "the illness." *Id.* At the same time, the UN did not permit independent examination of the soldiers during the 14-day period when infected individuals typically shed cholera bacteria. *Id.* at 29. In addition, MINUSTAH released clean water sample results based on unreliable testing protocols. *Id.* at 29-30.

The UN's false statements, and barriers to investigation that it constructed, created the misimpression that the cholera may have originated from a source other than the Nepalese soldiers.  As a result, fears arose among the Haitians that crops from regions affected by the cholera outbreak were a source of the disease.  Farmers abandoned many of their crops, a December 2010 report observed, including "a significant portion of the rice harvest in Northwestern Haiti," *id.* at 30, and consumers shied away from purchasing such foodstuffs. *Id.*

The UN also made additional significant misleading representations.  On or about December 15, 2010, the organization's Under-Secretary-General for Peacekeeping Operations repeated that "all soldiers had tested negative for the strain." *Id.* at 31.  It was not until January 6, 2011, that the UN finally announced that a panel of international experts would investigate the source of cholera in Haiti, a decision which prompted this admission from the Under-Secretary-General for Coordination of Humanitarian Affairs: "[I]n retrospect, maybe we should have had the [panel] much sooner." *Id.* at 32-33.  Despite the panel's conclusive findings of UN culpability and extensive recommendations to remedy the harm done and to avoid future harm, a May 2013 a report by Physicians for Haiti, a nonprofit supporting medical education and training in Haiti, found that the UN had not implemented "any of the changes in its medical or sanitation protocols recommended." *Id.* at 37.

Indeed, the UN continued its refusal to take responsibility even *after* UN Special Envoy and former U.S. President Bill Clinton stated in early March 2012 that "I don't know that the person who introduced cholera in Haiti, the U.N. peacekeeper, or [U.N.] soldier from South Asia, was aware that he was carrying the virus . . . . [I]t was the proximate cause of cholera.  That is, he was carrying the cholera strain.  It came from his waste stream into the waterways of Haiti, into the bodies of Haitians." Matthew Mosk, *Bill Clinton, UN Envoy, Admits Peacekeepers*

*as Source of Haiti Cholera*. ABC NEWS (Mar. 9, 2012), *available at* http://abcnews.go.com/Blotter/bill-clinton-admits-united-nations-source-haiti-cholera/story?id=15885580&singlePage=true.

Human rights advocates within and outside the UN have called on the organization to honor the cholera victims' right to access justice.  Immediately after the current action was filed, the *New York Times* Editorial Board noted, "[t]here is no denying that the United Nations has failed to face up to its role in a continuing tragedy." Editorial, *Haiti's Imported Disaster*, N.Y. TIMES, Oct. 12, 2013, *available at* http://www.nytimes.com/2013/10/13/opinion/sunday/haitis-imported-disaster.html?_r=0.  To this day, the UN continues to refuse to accept responsibility for the outbreak of cholera, for the delays Defendants caused that hindered dealing effectively with the epidemic, and for its failure to provide victims with a mechanism to redress their harms.  The organization's evasion of service is yet another manifestation of its shirking of responsibility for the cholera outbreak, one which this Court should declare an abuse of its rules relating to service of process.

   **III. The UN should be required to abide by the same rule-of-law principles that it espouses as central to its mission in Haiti, which should not permit it to bypass responding to Plaintiffs' claims.**

As noted above, a top priority of the UN's mission to Haiti is to promote the "rule of law . . . infrastructure." Report of the Secretary-General, *supra*.  To further that objective, the UN laudably works to improve developing countries' legal processes, stating in its *Rule of Law Indicators* that measurements of judicial performance should include "whether the judicial system meets its responsibilities in an efficient and timely manner." UN, Department of Peacekeeping Operations and Office of the High Commissioner for Human Rights, *Rule of Law Indicators: Implementation Guide and Project Tools*. (2011), 7, *available at*

7

http://www.un.org/en/events/peacekeepersday/2011/publications/un_rule_of_law_indicators.pdf. *Amici*, who include a bar association, agree with the vital importance of such rule-of-law initiatives and applaud the UN's stated commitment to them. The UN's handling of its legal responsibilities arising out of the cholera outbreak, however, undermines that commitment and fails to approach the standard of "efficient and timely" adjudication which the UN appropriately sets forth as a critical indicator of success. *Amici* urge the Court to prevent the UN from further delaying a full airing of Plaintiffs' claims.

In fact, the UN has breached its own agreements with the Haitian government designed to ensure the rule of law. Thus, the Status of Forces Agreement (SOFA) that governs the UN's operations in Haiti requires that harms arising out of MINUSTAH's operations which cannot be resolved informally are to be heard and settled through a standing claims commission. *See* Agreement between the United Nations and the Government of Haiti Concerning the Status of the United Nations Operations in Haiti, U.N.-Haiti, ¶¶ 54-55, July 9, 2004, 2271 U.N.T.S. 235 ("Third-party claims for . . . personal injury, illness or death arising from or directly attributed to MINUSTAH, . . . which cannot be settled through the internal procedures of the United Nations shall be settled . . . by a standing claims commission to be established for that purpose."). Yet the UN has never established a standing claims commission or any other claims settlement mechanism in Haiti. In fact, it has never established a standing claims commission in any peacekeeper host country despite having signed 32 agreements in which it promised to do so. *See* TRANSNATIONAL DEVELOPMENT CLINIC, YALE LAW SCHOOL, GLOBAL HEALTH JUSTICE PARTNERSHIP OF THE YALE LAW SCHOOL AND THE YALE SCHOOL OF PUBLIC HEALTH & ASSOCIATION HAÏTIENNE DE DROIT DE L'ENVIRONNEMENT, PEACEKEEPING WITHOUT ACCOUNTABILITY: THE UNITED NATIONS' RESPONSIBILITY FOR THE HAITIAN CHOLERA EPIDEMIC

27 (2013), available at

http://www.law.yale.edu/documents/pdf/Clinics/Haiti_TDC_Final_Report.pdf.

The UN has refused to establish such a claims commission despite specific, formal requests to do so:  In November 2011, 5,000 cholera victims sought to resolve their claims against the UN through the dispute resolution mechanism expressly provided for by the SOFA. They filed a petition with the UN seeking access to a standing claims commission and remedies in the form of: 1) investment in water and sanitation infrastructure; 2) fair compensation for their losses; and 3) a public acceptance of responsibility for the cholera outbreak.  *See* Complaint, Doc. 1, 41.

The UN's response to the epidemic and, more specifically, to the victims' efforts to resolve their claims out of court, has been wholly inadequate.  In February 2013, the UN rejected the victims' petition in a terse letter that stated the claims "would necessarily include a review of political and policy matters [and were a]ccordingly . . . not receivable."  The victims responded in May 2013, explaining that the UN is, in fact, legally obligated to accept the claims and that there is no legal basis for a "political" or "policy" exception to that obligation.  They also requested mediation or an in-person meeting with UN officials.

In July 2013, the UN denied those requests, repeating the assertion from its previous letter that the claims were not receivable. *Id.* at 41-42.  In a recent report, researchers from Yale Law School found that "the UN's ongoing unwillingness to hold itself accountable to victims violates its legal obligations under international law." PEACEKEEPING WITHOUT ACCOUNTABILITY, *supra*, at 4.  The UN's position on the issue has undermined its moral credibility and its commitment to the rule of law, and drawn worldwide criticism from prominent media outlets, international legal scholars, UN officials, and members of the U.S. Congress.

More than 100 members of Congress have expressed concern about the UN's response to cholera in various letters to the UN, the U.S. Mission to the UN, and the U.S. State Department. *See e.g.*, Letter from Rep. Maxine Waters et al. to Secretary-General Ban Ki-Moon (May 30, 2013), *available at* http://waters.house.gov/news/documentsingle.aspx?DocumentID=336057; Letter from Rep. John Conyers to U.S. Ambassador to the United Nations Susan Rice, July 17, 2012, *available at* http://conyers.house.gov/index.cfm/press-releases?ID=11e98fff-5056-be00-4743-1c189ec648d7; Letter from Rep. Christopher Smith and Rep. Albio Sires to Secretary of State Hillary Clinton (on file with *Amici*).

In sum, despite this high level of public and media interest, combined with the indisputable continuing suffering of cholera victims and their families, the UN chooses to continue to delay these proceedings by engaging in tactics of process-serving evasion described in Plaintiffs' motion. *Amici* contend that these facts, including all of the UN's actions and inaction, are critical to and supportive of Plaintiffs' strong legal arguments in support of their motion regarding service.

## CONCLUSION

*Amici* respectfully urge the Court to grant Plaintiffs' motion. The UN's stalling and evasion are contrary to the stated goals of the organization and continue to exacerbate the suffering of Plaintiffs and their families. The nearly 700,000 cases of cholera and the death toll that now approaches 8,500 testify tragically to the staggering scale of suffering experienced by nearly one-tenth of Haiti's population because of the UN's actions. The harm suffered, however, is about more than numbers. It is also about individual human suffering, as poignantly described by Dr. Charles Patrick Almazor from Port-au-Prince, Haiti, director of clinical services for Zanmi Lasante. He was one of the first doctors to see cholera patients in St. Marc. He

described that experience in these words: "The patients—the lucky ones who were taken to a clinic—were transported by family and community members on traditional stretchers, a straw mat on an iron bed supported by two thick sticks and carried by four men.  Our patients' eyes were sunken into their skulls, their skin as parched as the dry season.  Because of their appearance, they were referred to as *zombi lage*, fleeing zombies. Patients of all ages laid on their cots, throwing up what they hardly found to eat, since for most of them food is a scarce resource." Partners in Health, *Reflecting on the Cholera Outbreak in Haiti, Three Years Later*. (Oct. 18, 2013), *available at* http://www.pih.org/blog/reflecting-on-the-cholera-outbreak-in-haiti-three-years-later.

*Amici* and the directly-impacted constituents they represent respectfully request the Court to affirm that service has been made on the UN, or set terms of service by alternative means, to ensure that Plaintiffs expeditiously have their day in court.

Respectfully submitted,

Dated: February 21, 2014

                              By: /s/ David K.S. Kim
                                    David K.S. Kim
                                    Law Office of David K.S. Kim, P.C.
                                    193-08 Northern Boulevard
                                    Flushing, NY 11358
                                    (718) 352-0801
                                    kim@dkskimlaw.com

*Of Counsel*:

BYRNES GUILLAUME
2101 Vista Parkway
Suite 268
West Palm Beach, FL 33411
(561) 201-8350
bguillaume@byrnesglaw.com

S<small>OEURETTE</small> M<small>ICHEL</small>
19553 Northwest 2nd Avenue
Suite 218
Miami Gardens, FL 33169
(786) 309-5473
smichellaw@gmail.com