

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

March 7, 2014

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
United States District Courthouse
500 Pearl Street
New York, NY 10007

> Re:  *Georges v. United Nations, et al.*,
>      13 Civ. 7146 (JPO)

Dear Judge Oetken:

The United States of America, by and through its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, and in response to the Court's order, dated February 7, 2014, concerning whether plaintiffs have effectively served defendant the United Nations ("UN").

As detailed below, all of the defendants in this matter are immune from legal process and suit.  The UN, including its integral component, defendant the United Nations Stabilization Mission in Haiti ("MINUSTAH"), is absolutely immune from legal process and suit absent an express waiver, pursuant to the Charter of the United Nations ("UN Charter"), June 26, 1945, 59 Stat. 1031, TS 993, 3 Bevans 1153, and the Convention on the Privileges and Immunities of the United Nations ("General Convention"), adopted Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 16.  In this case, the UN, including MINUSTAH, has not waived its immunity from legal process and suit, and instead has repeatedly and expressly asserted its absolute immunity.  Defendants Ban Ki-Moon, the Secretary-General of the UN ("Secretary-General Ban"), and Edmond Mulet, former Under-Secretary-General for the United Nations Stabilization Mission in Haiti and current Assistant Secretary-General for UN Peacekeeping Operations ("Assistant Secretary-General Mulet"), are similarly immune from legal process and suit, pursuant to the UN Charter, the General Convention, and the Vienna Convention on Diplomatic Relations ("Vienna Convention"), 23 U.S.T. 3227, TIAS No. 7502, 500 UNTS 95.

In light of each defendant's immunity, the Court lacks subject matter jurisdiction over this matter, and this action should be dismissed.  *See Brzak v. United Nations*, 551 F. Supp. 2d 313, 318 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 107 (2d Cir. 2010); *see also* Fed. R.

Hon. J. Paul Oetken
Page 2

Civ. P. 12(h)(3). Further, because each defendant's immunity encompasses immunity from service of process, plaintiffs' attempted service on defendants was ineffective.

## BACKGROUND

### A.     The Complaint

Plaintiffs allege that the UN, MINUSTAH, Secretary-General Ban and Assistant Secretary-General Mulet are responsible for an epidemic of cholera that broke out in Haiti in 2010, killing approximately 8,000 Haitians and injuring approximately 600,000 more. *See* Complaint, dated October 9, 2014, at ¶¶ 1-2. Specifically, plaintiffs allege that the UN failed to screen and immunize Nepalese peacekeepers who were deployed to Haiti from Nepal, which had recently experienced a surge in cholera infections. *See id.* at ¶ 5. Plaintiffs allege that the UN stationed the Nepalese peacekeeping forces at a base on the banks of the Meille Tributary, which flows into the Artibonite River, Haiti's primary water source, and failed to maintain adequate sanitation equipment at the base. *See id.* at ¶ 6. As a result, plaintiffs allege, contaminated sewage flowed from the base into the Meille Tributary and ultimately into the Artibonite River, resulting in an outbreak of cholera along the river and eventually throughout the country. *See id.* at ¶¶ 6-8. Plaintiffs further allege that the UN failed to take remedial steps to contain the outbreak and intentionally obscured the source of the outbreak, resulting in additional injuries and death. *See id.* at ¶ 9.

Plaintiffs allege that "Ban Ki-moon is and was at all relevant times the Secretary-General of the UN" and had "overall responsibility for the management of the UN and its operations, including all operations in Haiti." *Id.* at ¶ 21. Plaintiffs allege that the Secretary-General also appointed and oversaw defendant Mulet in his capacity as Special Representative of the Secretary General. *See id.* Plaintiffs further allege that "Mulet had 'overall authority on the ground for the coordination and conduct of all activities of the United Nations agencies, funds and programmes in Haiti.'" *Id.* at ¶ 22 (quoting UN Security Council Resolution 1542, which established MINUSTAH). Plaintiffs allege that both individuals "knew or reasonably should have known that hazardous conditions or activities under [their] authority or control could injure Plaintiffs, and [they] negligently failed to take or order appropriate action to avoid the harm." *Id.* at ¶¶ 21-22.

In addition, plaintiffs allege that the UN has failed to establish a "standing claims commission" to address third-party claims of individuals injured by the cholera epidemic, in violation of the Agreement Between the United Nations and the Government of Haiti Concerning the Status of the United Nations Operation in Haiti ("Status of Forces Agreement"). *Id.* at ¶¶ 173-74. Plaintiffs allege that, in November of 2011, approximately 5,000 victims of the cholera outbreak submitted claims with the UN and MINUSTAH, requesting compensation, remediation and an admission of responsibility. *See id.* at ¶ 176. Plaintiffs allege that the UN and MINUSTAH effectively denied those claims on February 21, 2013, and again on July 5, 2013, thus exhausting the victims'

Hon. J. Paul Oetken
Page 3

"extrajudicial options for pursuing a remedy for their injuries and damages." *Id.* at
¶¶ 178, 181, 183.

The named plaintiffs are Haitian and United States citizens who allege that they
either have been personally injured by the cholera epidemic or are the personal
representatives of those who have died as a result of it. *See id.* at ¶¶ 10, 30. Plaintiffs
bring this action on behalf of themselves and a class of all other persons who have been
or will be personally injured by the cholera outbreak, and personal representatives of
those who have died or will die from the cholera outbreak. *See id.* at ¶¶ 29-30.

### B. Procedural History

Plaintiffs now seek an order confirming that service of process on the UN has
been perfected, or alternatively an order providing for service of process on the UN by
other means. *See* Docket No. 5, Plaintiffs' Memorandum of Law in Support of Plaintiffs'
Motion, dated February 4, 2014 ("Pls. Memo."). Plaintiffs have also filed "Certificate[s]
of Service," Docket Nos. 7-9, purporting to show that service of process has been
perfected on MINUSTAH, Secretary-General Ban, and Assistant Secretary-General
Mulet.

On February 7, 2014, this Court entered an order, stating:

> Plaintiffs have moved for an order ruling that they have effectively
> served process on Defendant United Nations. (Dkt. No. 4.) If the
> United Nations wishes to file an opposition, the opposition is due
> February 21, 2014. The United States Attorney is also invited to
> file a letter expressing the view of the United States on this motion.

Docket No. 11.

The United States makes this submission pursuant to 28 U.S.C. § 517, consistent
with the United States' obligations as host nation to the UN and as a party to treaties
governing the privileges and immunities of the UN.

### DISCUSSION

### A. The UN Enjoys Absolute Immunity

#### 1. The UN's Immunity

The UN Charter provides that the UN "shall enjoy in the territory of each of its
Members such privileges and immunities as are necessary for the fulfilment [sic] of its
purposes." UN Charter, art. 105, § 1. The UN's General Convention, which the UN
adopted shortly after the UN Charter, defines the UN's privileges and immunities, and
specifically provides that "[t]he United Nations, its property and assets wherever located
and by whomsoever held, shall enjoy immunity from every form of legal process except

Hon. J. Paul Oetken
Page 4

insofar as in any particular case it has expressly waived its immunity."  General
Convention, art. II, § 2.

As courts in this district have long recognized, the United States is a party to both
the UN Charter and the General Convention.  *See, e.g., Brazk*, 597 F.3d at 111; *Sadikoglu
v. United Nations Development Programme*, No. 11 Civ. 0294(PKC), 2011 WL 4953994,
at *3 (S.D.N.Y. Oct. 14, 2011) ("[t]he scope of immunity for the UN and its subsidiary
bodies derives primarily from two multilateral agreements to which the United States is a
party: the Charter of the United Nations . . . and the Convention on Privileges and
Immunities of the United Nations"); *Askir v. Boutros-Ghali*, 933 F. Supp. 368, 371
(S.D.N.Y. 1996).  The United States understands the General Convention, Article II
section 2, to mean what it unambiguously says:  the UN enjoys absolute immunity from
this or any suit unless the UN itself expressly waives its immunity.

To the extent there could be any alternative reading of the General Convention's
text, the Court should defer to the Executive Branch's interpretation.  *See Kolovrat v.
Oregon*, 366 U.S. 187, 194 (1961) ("While courts interpret treaties for themselves, the
meaning given them by the departments of government particularly charged with their
negotiation and enforcement is given great weight."); *Tachiona v. United States,* 386 F.3d
205, 216 (2d Cir. 2004) (interpreting the General Convention and noting, "in construing
treaty language, '[r]espect is ordinarily due the reasonable views of the Executive
Branch'") (quoting *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168, 576
(1999)).

Here, the Executive Branch, and specifically the Department of State, is charged
with maintaining relations with the United Nations, and so its views are entitled to
deference.  The Executive Branch's interpretation should be given particular deference in
this case because the interpretation is shared by the UN.  *See* Letters dated December 20,
2013, and February 10, 2014, from Miguel de Serpa Soares, Under-Secretary-General for
Legal Affairs and United Nations Legal Counsel, to Samantha Power, Permanent
Representative of the United States to the United Nations, annexed hereto as Exhibits 1
and 2, respectively (stating that, *inter alia*, the UN, including MINUSTAH, is entitled to
immunity from suit pursuant to the UN Charter and the General Convention); *see also,
e.g., Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 185 (1982) (where parties
to a treaty agree on meaning of treaty provision, and interpretation "follows from the
clear treaty language, [the court] must, absent extraordinarily strong contrary evidence,
defer to that interpretation").

Consistent with the applicable treaty language and the Executive Branch's and the
UN's views, courts repeatedly, and indeed to the United States' knowledge uniformly,
have recognized that "[u]nder the Convention the United Nations' immunity is absolute,
subject only to the organization's express waiver thereof in particular cases." *Boimah v.
United Nations General Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y. 1987); *see also, e.g.,
Askir*, 933 F. Supp. at 371.  Controlling Second Circuit authority recognizes the UN's

Hon. J. Paul Oetken
Page 5

absolute immunity. *See Brzak*, 597 F.3d at 112 ("The United Nations enjoys absolute immunity from suit unless 'it has expressly waived its immunity'"). As the *Brzak* district court held, "where, as here, the United Nations has not waived its immunity, the General Convention mandates dismissal of Plaintiffs' claims against the United Nations for lack of subject matter jurisdiction." *Brzak*, 551 F. Supp. 2d at 318.

MINUSTAH, as a subsidiary organ of the UN, enjoys this same absolute immunity. MINUSTAH is a UN peacekeeping mission that reports directly to the Secretary-General, and is therefore an integral part of the UN. *See* United Nations: Structure and Organization, http://www.un.org/en/aboutun/structure/ (last visited February 21, 2014); *see also* Exhibit 1 ("As a subsidiary organ of the United Nations, MINUSTAH is also entitled to the privileges and immunities provided for in the General Convention."); *see also* Exhibit 2 (implicitly recognizing MINUSTAH as part of the UN). Indeed, the Status of Forces Agreement explicitly provides that MINUSTAH "shall enjoy the privileges and immunities . . . provided for in the [General] Convention." Status of Forces Agreement, art. III, § 3. Accordingly, MINUSTAH is entitled to the immunities established by the UN Charter and General Convention. *See, e.g., Emmanuel v. United States*, 253 F.3d 755, 756 (1st Cir. 2001) (noting that Article II immunity under the General Convention applies to the UN Mission in Haiti pursuant to the applicable Status of Forces Agreement); *see also Sadikoglu*, 2011 WL 4953994, at *3 (finding that "because [defendant UN Development Programme] – as a subsidiary program of the UN that reports directly to the General Assembly – has not waived its immunity, 'the [General Convention] mandates dismissal of Plaintiff['s] claims against the United Nations for lack of subject matter jurisdiction'" (quoting *Brzak*, 551 F. Supp. 2d at 318)); *Boimah*, 664 F. Supp. at 71 (finding that the General Assembly enjoys the same immunities as the UN); *Shamsee v. Shamsee*, 428 N.Y.S.2d 33 (N.Y. App. Div. 1980) (finding that the UN Joint Staff Pension Fund enjoys the UN's immunities); *Hunter v. United Nations*, 800 N.Y.S.2d 347, 2004 WL 3104829 (N.Y. Sup. Ct. 2004) (finding that UNICEF, as a UN agency, enjoys the UN's immunities).

Therefore, absent an express waiver, the UN, including MINUSTAH, enjoys absolute immunity from suit, and this action should be dismissed as against the UN for lack of subject matter jurisdiction. *See Brzak*, 551 F. Supp. 2d at 318.

## 2. The UN Has Not Waived Its Immunity

To the extent plaintiffs argue that the UN, including MINUSTAH, has waived its immunity in this case because it has not established a venue for plaintiffs to pursue legal remedies, *see, e.g.*, Complaint at ¶¶ 172-83 (asserting that, by failing to provide procedures by which injured parties can make claims for compensation, the UN has "refus[ed] to comply with its legal obligations," and that "[p]ursuing this action in a court of law is the only option left for Plaintiffs . . . to seek enforcement of their right to a remedy"), such an argument should be rejected because the UN has repeatedly and expressly asserted its absolute immunity.

Hon. J. Paul Oetken
Page 6

Whether the UN has established a claims commission or other means by which aggrieved persons can seek compensation is irrelevant to the question of waiver. As established by the General Convention, any waiver of the UN's absolute immunity from suit or legal process must be "express[]." General Convention, art. II, § 2; *see also Brzak*, 597 F.3d at 112 ("Although the plaintiffs argue that purported inadequacies with the United Nations' internal dispute resolution mechanism indicate a waiver of immunity, crediting this argument would read the word 'expressly' out of the [General Convention].").

In this case, there has been no express waiver. To the contrary, the UN has repeatedly asserted its immunity. On December 20, 2013, Miguel de Serpa Soares, the United Nations Legal Counsel, wrote to Samantha Power, Permanent Representative of the United States to the United Nations, stating: "I hereby respectfully wish to inform you that the United Nations has not waived and is expressly maintaining its immunity with respect to the claims in [the instant] Complaint." Exhibit 1 at 2; *see also id.* at 1 (requesting "the competent United States authorities to take appropriate action to ensure full respect for the privileges and immunities of the United Nations and its officials"); *id.* at 2 ("the United Nations has not waived, and indeed, expressly maintains the privileges and immunities of the United Nations and its officials in respect of [the instant matter]"). The UN reasserted its absolute immunity on February 10, 2014. *See* Exhibit 2 at 2 ("The United Nations has not waived its immunity in the present case."); *id.* ("reaffirm[ing] that the United Nations continues to maintain its immunity and the immunity of its officials in connection with this matter"). The UN has requested that the United States advise the Court of its immunity and that of its officials and take steps to ensure that these immunities are protected. *See id.* ("request[ing] that the relevant United States authorities inform the Court that the United Nations maintains its immunity in respect [to this matter]"); *id.* ("further request[ing] that the relevant United States authorities take the necessary steps to ensure that the immunity of the United Nations and its officials is respected").

Accordingly, because the UN has not waived its immunity in this case, the UN, including MINUSTAH, enjoys absolute immunity from suit, and this action should be dismissed as against the UN for lack of subject matter jurisdiction.

**B.    Secretary-General Ban and Assistant Secretary-General Mulet Enjoy Immunity**

The UN Charter, the General Convention and the Vienna Convention also provide immunity from legal process and suit for UN officials such as Secretary-General Ban and Assistant Secretary-General Mulet.

The UN Charter provides that "officials of the Organization shall . . . enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connexion [sic] of the organization." UN Charter, art. 105, § 2. In addition, Article V, Section 19 of the General Convention specifically provides that "the Secretary-General

Hon. J. Paul Oetken
Page 7

and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law." *Id.*, art. V, § 19.

In the United States, the privileges and immunities enjoyed by diplomats are governed by the Vienna Convention, which entered into force with respect to the United States in 1972. 23 U.S.T. 3227, TIAS No. 7502, 500 U.N.T.S. 95. Article 31 of the Vienna Convention provides that diplomatic agents "enjoy immunity from the civil and administrative jurisdiction" of the receiving State – here, the United States – except with respect to: (a) privately-owned real estate; (b) performance in a private capacity as an executor, administrator, heir or legatee; and (c) professional or commercial activities other than official functions. *See id.* at art. 31. As this Court has noted, the purpose of diplomatic immunity under the Vienna Convention is "to protect the interests of comity and diplomacy among nations . . . ." *Devi v. Silva*, 861 F. Supp. 2d 135, 142-43 (S.D.N.Y. 2012). Federal courts, including the Second Circuit, repeatedly have recognized the immunity of United Nations officials pursuant to the General Convention and the Vienna Convention. *See, e.g., Brzak*, 597 F.3d at 113 (noting that, under the Vienna Convention, "current diplomatic envoys enjoy absolute immunity from civil and criminal process").

Moreover, Article V, Section 18(a) of the General Convention provides that UN officials are "exempt from legal process in respect of words spoken or written and all acts performed by them in their official capacity . . . ." General Convention, art. V, § 18(a).[1] Under this provision, both current and former UN officials, regardless of rank, enjoy immunity from suit for all acts performed in their official capacity. *See Van Aggelen v. United Nations*, 311 F. App'x 407, 409 (2d Cir. Feb. 20, 2009) (applying this immunity to a UN official who did not enjoy diplomatic immunity); *McGehee v. Albright*, 210 F. Supp. 2d 210, 218 n.7 (S.D.N.Y. 1999) (applying this immunity to then-Secretary-General Annan), *aff'd*, 208 F.3d 203 (2d Cir. 2000); *see also De Luca v. United Nations Org.*, 841 F. Supp. 531, 534 (S.D.N.Y. 1994) (recognizing former high-level UN officials as entitled to immunity), *aff'd*, 41 F.3d 1502 (2d Cir. 1994); *Askir*, 933 F. Supp. at 371 (dismissing complaint against UN official for lack of subject matter jurisdiction because he was immune from suit under the General Convention).[2]

---

[1] Section 17 of the General Convention provides that the Secretary-General will specify the categories of officials to whom the provisions of Article V of the General Convention apply. In 1946, the General Assembly approved the Secretary-General's proposal to apply the privileges and immunities of Article V of the General Convention to "all members of the staff of the United Nations, with the exception of those who are recruited locally and are assigned to hourly rates." G.A. Res. 76 (I), U.N. Doc. A/RES/76(I) (Dec. 7, 1946).

[2] Similarly, under § 7(b) of the International Organizations Immunities Act, 22 U.S.C. § 288 *et seq.* ("IOIA"), UN officials are immune from suit and legal process "relating to

Hon. J. Paul Oetken
Page 8

Because none of the three exceptions outlined in the Vienna Convention is relevant in the instant case, and because the UN has expressly asserted the immunity of Secretary-General Ban and Assistant Secretary-General Mulet in this matter,[3] Secretary-General Ban and Assistant Secretary-General Mulet enjoy immunity from suit, and this action should be dismissed as against them for lack of subject matter jurisdiction.

**C.     Because All Defendants Are Immune, Plaintiffs' Attempted Service Was Ineffective**

Consistent with its absolute immunity, the UN, including MINUSTAH, is also immune from service of legal process. *See* General Convention, art. II, § 2 (the UN "shall enjoy immunity from every form of legal process"); Status of Forces Agreement, art. III, § 3 (stating that MINUSTAH "shall enjoy the privileges and immunities . . . provided for in the [General] Convention," which include immunity "from any form of legal process"). In addition, the General Convention specifically provides that the "premises of the United Nations shall be inviolable." *Id.*, art. II, § 3. Moreover, the Agreement Between the United Nations and the United States Regarding the Headquarters of the United Nations ("Headquarters Agreement"), June 26, 1947, 61 Stat. 3416, 11 U.N.T.S. 11 (entered into force Oct. 21, 1947), art. III, § 9(a), provides that "service of legal process . . . may take place within the headquarters district only with the consent of and under conditions approved by the [UN] Secretary-General." And pursuant to the Headquarters Agreement, "the Secretary-General of the United Nations has not prescribed any conditions under which service by mail or facsimile would be allowed." Exhibit 2 at 2. Accordingly, plaintiffs' attempts to serve the UN, including MINUSTAH, in New York, and their attempts to serve MINUSTAH in Haiti, *see* Docket Nos. 5 and 8,

---

acts performed by them in their official capacity and falling within their functions as . . . officers or employees, except insofar as such immunity may be waived" by the United Nations. 22 U.S.C. § 288d(b).

[3] The General Convention provides that the "Secretary-General shall have the right and the duty to waive the immunity of any official in any case where, in his opinion, the immunity would impede the courts of justice and can be waived without prejudice to the interests of the United Nations." General Convention, art. V, § 20. In this case, the UN has not waived and, instead, has expressly asserted the immunity of both Secretary-General Ban and Assistant Secretary-General Mulet. *See* Exhibits 1 and 2. Accordingly, both defendants are entitled to immunity in this action. *See, e.g., McGehee*, 210 F. Supp. 2d at 218 (noting that the Under-Secretary-General for Legal Affairs for the UN "informed the Court that the United Nations is not waiving its immunity in this action as to defendant [Secretary-General Kofi] Annan," and dismissing lawsuit against him on immunity grounds pursuant to the IOIA and the General Convention).

Hon. J. Paul Oetken
Page 9

were ineffective.[4]  Moreover, any attempt at an alternative method of service, including by publication, would likewise be ineffectual.

      For similar reasons, plaintiffs' attempts to serve Secretary-General Ban and Assistant Secretary-General Mulet at UN headquarters, *see* Docket Nos. 7 and 9, were ineffective.  *See* General Convention, art. II; Headquarters Agreement, art. III, § 9(a); Exhibit 2 at 2.  Moreover, the General Convention specifically provides that "[t]he person of a diplomatic agent shall be inviolable," and that the "private residence of a diplomatic agent shall enjoy the same inviolability and protection as the premises of the mission." General Convention, art. 29, 30; *see also* Vienna Convention, art. 22 ("The premises of the mission shall be inviolable.").  Accordingly, plaintiffs' attempts to serve Secretary-General Ban and Assistant Secretary-General Mulet by delivering mail to, or leaving process at, their residences, *see* Docket Nos. 7 and 9, were ineffective.  Plaintiffs have therefore failed to effect service on Secretary-General Ban and Assistant Secretary-General Mulet, in light of their diplomatic immunity, the inviolability of the UN headquarters district, and the inviolability of the premises of the UN.

---

[4] To the extent plaintiffs argue that the UN implicitly waived its immunity from service of process by appearing to accept service at UN headquarters, *see, e.g.,* Pl. Memo. at 7 (stating that "representatives from [the United Nations Office of Legal Affairs ("OLA")] informed the process server that the UN would accept service by mail or facsimile and gave him a facsimile number to which the process could be faxed"); Docket No. 8 at ¶¶ 1-2, 4 (stating that OLA informed a process server attempting to serve MINUSTAH that it would accept service by mail or facsimile, and that OLA later confirmed to one of plaintiffs' representatives that the UN had received the faxed documents from plaintiffs' counsel), that argument should be rejected.  As an initial matter, the UN disputes that any "responsible or duly authorized officer of the United Nations accept[ed] service of process or provide[d] any advice on how process may be served against the United Nations or its officials."  Exhibit 2 at 2.  But even assuming, *arguendo*, that a UN employee did provide instructions to a process server, such instructions did not constitute an "express[] waive[r]" of the UN's absolute immunity "from every form of legal process."  General Convention, art. II, § 2.  Moreover, as explained above, only the Secretary-General may establish a method of service on UN headquarters, and the Secretary-General has not done so.

Hon. J. Paul Oetken
Page 10

Thank you for your consideration of this matter.

Respectfully,

PREET BHARARA
United States Attorney

By:      /s/ Ellen Blain
         ELLEN BLAIN
         Assistant United States Attorney
         86 Chambers Street, 3rd Floor
         New York, New York 10007
         Tel.    (212) 637-2743
         Fax     (212) 637-2730

cc:      By Electronic Mail
         Beatrice Lisa Young Lindstrom, Esq.
         Institute For Justice & Democracy In Haiti
         666 Dorchester Ave.
         Boston, MA 02127
         (404) 217-1302
         Email: beatrice@ijdh.org

         Ira Jay Kurzban, Esq.
         Kurzban Kurzban Weinger Tetzeli & Pratt, P.A.
         2650 S.W. 27th Avenue, Second Floor
         Miami, FL 33133
         (305) 444-0060
         Email: ira@kkwtlaw.com

# EXHIBIT A

# United Nations ⊕ Nations Unies

HEADQUARTERS • SIEGE     NEW YORK, NY 10017
TEL.: 1 (212) 963.1234 • FAX: 1 (212) 963.4879

REFERENCE:

20 December 2013

Excellency,

Complaint in the United States District Court for the Southern District of New York—
*Georges, et al. v. United Nations, et al.*

      I write to inform you that the United Nations has become aware of the filing of the above-mentioned Complaint filed by Delama Georges et al. against the United Nations, the United Nations Stabilization Mission in Haiti (MINUSTAH) and, in their official capacities, Ban Ki-Moon, Secretary-General of the United Nations, and Edmond Mulet, former Special Representative of the Secretary-General for Haiti and Head of MINUSTAH.  In that former capacity, Mr. Mulet, who is currently Assistant Secretary-General for Peacekeeping Operations, held the rank of Under-Secretary-General.  The Complaint is related to the cholera outbreak that occurred in Haiti in 2010.

      With the present letter, I hereby return the copy of the Complaint and respectfully request the competent United States authorities to take appropriate action to ensure full respect for the privileges and immunities of the United Nations and its officials, in accordance with the obligations of the United States under both international and United States law.

      As you are aware, the United Nations is an international inter-governmental organization established pursuant to the Charter of the United Nations (hereinafter referred to as "the UN Charter"), a multilateral treaty signed on 26 June 1945.  The UN Charter was ratified by the Government of the United States of America on 8 August 1945 and came into force in the United States on 28 October 1945.  *See* UN Charter, 59 Stat. 1031 (1945), *reprinted* in 1945 U.S. Code Cong. & Admin. News, 961 *et seq.*

      As an international organization, the United Nations has been accorded certain privileges and immunities which are necessary for the fulfilment of the purposes of its purposes.  Article 105 of the UN Charter provides the general basis for the privileges and immunities of both the United Nations and its officials.  Pursuant to Article 105, paragraph 1 of the UN Charter, "[t]he Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment of its purposes".  Article 105, paragraph 2 provides that "officials of the Organization shall

Her Excellency
Ms. Samantha Power
Permanent Representative of the
  United States to the United Nations
New York

similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connexion with the Organization".  Article 105, paragraph 3 stipulates that "[t]he General Assembly may make recommendations with a view to determining the details of the application of paragraph[] 1 ... of this Article or may propose conventions to the Members of the United Nations for this purpose".  UN Charter, Art. 105, 1945 U.S. Code Cong. & Admin News, at 985.

In order to give effect to Article 105 of the UN Charter, the General Assembly of the United Nations adopted the Convention on the Privileges and Immunities of the United Nations (hereinafter referred to as "the General Convention") on 13 February 1946.  1 U.N.T.S. 15 (1946), General Convention, Art. II, 21 U.S.T. at 1422.  The United States of America acceded to the General Convention on 29 April 1970.  21 U.S.T. at 1418; [1970] TIAS No. 6900.  As a subsidiary organ of the United Nations, MINUSTAH is also entitled to the privileges and immunities provided for in the General Convention.

Article II, Section 2 of the General Convention provides that "[t]he United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity.  It is, however, understood that no waiver of immunity shall extend to any measure of execution".  The immunity provided for under Article II is absolute and is neither qualified nor limited in any way under the terms of the General Convention.  Any exception to the provision that an express waiver is required would render the applicable immunity void and risk the United Nations being embroiled in litigation in its 193 Member States, thereby defeating the purpose of the immunity granted to it by its Member States.

I hereby respectfully wish to inform you that the United Nations has not waived and is expressly maintaining its immunity with respect to the claims in the above-mentioned Complaint.

With respect to the claims against the Secretary-General, Mr. BAN Ki-moon, and the former Under-Secretary-General, Mr. Edmond Mulet, I wish to note that pursuant to Article V, Section 18(a) of the General Convention, both are "immune from legal process in respect of words spoken or written and all acts performed by them in their official capacity".  Furthermore, as Mr. BAN Ki-moon holds the position of the Secretary-General of the United Nations and Mr. Mulet currently holds a position as the Assistant Secretary-General for Peacekeeping Operations, pursuant to Article V, Section 19 of the General Convention, both enjoy "the privileges and immunities, exemptions and facilities accorded to diplomatic envoys, in accordance with international law".  Pursuant to Article 31 of the Vienna Convention on the Diplomatic Relations (hereinafter, "the Vienna Convention"), 500 UNTS 95 (18 April 1961), which entered into force with respect to the United States on 13 December 1972, 23 U.S.T. 3227; TIAS No. 7502, diplomatic envoys enjoy immunity from criminal, civil and administrative jurisdiction of the host country.  Accordingly, the Secretary-General and Mr. Mulet are both entitled to immunity from suit with respect to these claims.

UNITED NATIONS   NATIONS UNIES                                                PAGE **3**

Pursuant to Article V, Section 20 of the General Convention, it is the Secretary-General who has the sole authority to waive the immunity of officials of the Organization while the Security Council has the authority to waive the immunity of the Secretary-General himself. In this case, the claims made by the plaintiffs against the Secretary-General and Mr. Mulet relate to actions undertaken by them in the performance of their official functions. Specifically, with respect to the Secretary-General, the Complaint states that he is and was at all relevant times Secretary-General of the United Nations, and that, as such, "he has and had overall responsibility for the management of the United Nations and its operations, including all operations in Haiti". With respect to Mr. Mulet, the Complaint states that he was the Special Representative of the Secretary-General [for Haiti] and Head of MINUSTAH, and mentions that pursuant to relevant Security Council resolutions, Mr. Mulet "had overall authority on the ground for the coordination and conduct of all activities of the United Nations agencies, funds and programmes in Haiti".

Therefore, the Secretary-General and Mr. Mulet enjoy both diplomatic immunity as well as functional immunity under the General Convention in relation to the present Complaint unless their immunity has been waived, which it has not. The United Nations is expressly asserting the immunity of the Secretary-General and Mr. Mulet in relation to the above-referenced Complaint.

I further wish to inform you that the plaintiffs in this matter brought these claims directly to the United Nations before filing suit in the district court pursuant to Article VIII, Section 29 of the General Convention. The United Nations carefully considered these claims and determined that they were not receivable pursuant to Section 29 of the General Convention as consideration of these claims would necessarily include a review of political and policy matters.

Pursuant to Section 34 of the General Convention, the Government of the United States undertook an obligation to be "in a position under its own law to give effect to the terms of this Convention". Any interpretation of the provisions of the General Convention must be carried out within the spirit of the underlying principles of the United Nations, and in particular Article 105 thereof, which provides that "the Organization shall enjoy such privileges and immunities as are necessary for the fulfillment of its purposes".

In view of the above, please be advised that the United Nations has not waived, and indeed, expressly maintains the privileges and immunities of the United Nations and its officials in respect of the above-mentioned Complaint in the United States District Court for the Southern District of New York. Accordingly, I wish to respectfully request the Government of the United States to take the appropriate steps with a view to ensuring that the privileges and immunities of the United Nations and its officials are maintained in respect of this legal action.

I take this opportunity to inform you that since the outbreak of the disease, the United Nations, in cooperation with other partners, has been assisting the Government of Haiti in combating and eradicating cholera in Haiti. In addition, in December 2012,

UNITED NATIONS     NATIONS UNIES       PAGE **4**

the Secretary-General launched his special effort to support the Initiative by the Governments of Haiti and the Dominican Republic for the Elimination of Cholera in the Island of Hispaniola.  In August 2013, the Secretary-General appointed a Senior Coordinator for the Cholera Response in Haiti to work closely with the relevant United Nations agencies, funds and programmes as well as the World Bank, Inter-American Development Bank, NGOs and other key actors to ensure a coherent and effective response to the issue of cholera in Haiti.  In connection with the ongoing support and assistance provided by the United Nations to the Government of Haiti in its efforts to eradicate cholera, I note that the Organization and the Government of Haiti are currently engaged in establishing a joint high level committee to monitor progress in the fight against cholera and to provide strategic and operational guidance and ensure the effectiveness of the response to the cholera outbreak.

      Please accept, Excellency, the assurances of my highest consideration.

Miguel de Serpa Soares
Under Secretary-General for Legal Affairs
and United Nations Legal Counsel

# EXHIBIT B

# United Nations   Nations Unies

HEADQUARTERS • SIEGE      NEW YORK, NY 10017

TEL.: 1 (212) 963.1234 • FAX: 1 (212) 963.4879

REFERENCE:

***CONFIDENTIAL***

10 February 2014

Excellency,

Complaint in the United States District Court for the Southern District of New York—
*Georges, et al. v. United Nations, et al.* (Civil Action No: 13-CV-07146-JPO)

   I have the honour to refer to the above-referenced case that was initiated in the District Court of the Southern District of New York (the Court) and my letter of 20 December 2013, informing the United States Mission to the United Nations that the United Nations has expressly maintained its immunity with respect to the above-referenced case and requesting that the competent United States authorities so advise the Court. I further have the honour to refer to the discussions between members of my Office and the United States Mission to the United Nations regarding this case.

   Since my letter of 20 December 2013, the United Nations has become aware of a motion filed by the claimants, before the Court, for an affirmation that the summons and complaint in this case have been duly served on the United Nations or, in the alternative, for service of process by alternate means as well as an extension of time to effect service. The Court has issued an order dated 7 February 2014, stipulating that that if the United Nations wishes to file an opposition to the motion, the opposition is due on 21 February 2014. The Court has also invited the United States Attorney to file a letter expressing its views on the motion by the same date.

   As previously indicated in the cover note of the copy of the Complaint that was transmitted with my 20 December 2013 letter as well as in the papers supporting the latest motion, the claimants have asserted that the process server who attempted to effect service on 10 October 2013 was informed by the Office of Legal Affairs of the United Nations that the Organization accepts service by mail or by facsimile and therefore transmitted the documents to the United Nations on 11 December 2013 by facsimile and on 30 December 2013 via certified mail.

Her Excellency
Ms. Samantha Power
Permanent Representative of the United States
 to the United Nations
New York

UNITED NATIONS  NATIONS UNIES

PAGE **2**

***CONFIDENTIAL***

In this respect, I wish to clarify that the United Nations does not accept service of process by mail or facsimile. I would like to clarify further that at no time did a responsible and duly authorized officer of the United Nations accept service of process or provide any advice on how process may be served against the United Nations or its officials.

In addition, I wish to note that Article 9 (a) of the Agreement regarding the headquarters of the United Nations, approved by the General Assembly on 31 October 1947, provides that the service of process in the Headquarters District can only take place with the consent of and under conditions prescribed by the Secretary-General. The Secretary-General of the United Nations has not prescribed any conditions under which service by mail or facsimile would be allowed. Accordingly, the United Nations has not agreed to service and, in the absence of its consent, no service against it or its officials has been duly effected in this matter.

I wish to note further that the Convention on the Privileges and Immunities of the United Nations, to which the United States is a party, provides in relevant part in Article II, Section 2 that "[t]he United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity." The United Nations has not waived its immunity in the present case.

I wish to reaffirm that the United Nations continues to maintain its immunity and the immunity of its officials in connection with this matter, in accordance with my letter of 20 December 2013. In light of the above, I further reiterate my request that the relevant United States authorities take necessary action to ensure respect for the privileges and immunities of the Organization and its officials and ensure that no judgment or other adverse decision is entered by the Court against the Organization and its officials. Moreover, with respect specifically to the Court's order dated 7 February 2014, as referred to above, I request that the relevant United States authorities inform the Court that the United Nations maintains its immunity in respect thereof. I further request that the relevant United States authorities take the necessary steps to ensure that the immunity of the United Nations and its officials is respected in connection with that order.

Please accept, Excellency, the assurances of my highest consideration.

Miguel de Serpa Soares
Under-Secretary-General for Legal Affairs
and United Nations Legal Counsel