EXHIBIT 2

## Section 5 : Recommendation Concerning Privileges and Immunities

*The Executive Committee,*
*Recommends :*

1. that the attached study on privileges and immunities, drawn up by a committee of the Executive Committee, if approved by the Preparatory Commission, be referred to the General Assembly for its consideration ;

2. that the Preparatory Commission instruct the Executive Secretary to remind the Members of the United Nations that, under Article 105 of the Charter, the obligation to accord to the United Nations, its officials and the representatives of its Members all privileges and immunities necessary for the accomplishment of its purposes, operates from the coming into force of the Charter and is therefore applicable even before the General Assembly has made the recommendations referred to in paragraph (3) of the Article, or the conventions there mentioned have been concluded.

## APPENDIX

### Study on Privileges and Immunities

*Provisions of the Charter*

1. Chapter XVI of the Charter contains the following provisions :

" *Article* 104

The Organisation shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfilment of its purposes."

" *Article* 105

*1.* The Organisation shall enjoy in the territory of each of its members such privileges and immunities as are necessary for the fulfilment of its purposes.

*2.* Representatives of the Members of the United Nations and officials of the Organisation shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organisation.

*3.* The General Assembly may make recommendations with a view to determining the details of the application of paragraphs *1* and *2* of this Article or may propose conventions to the Members of the United Nations for this purpose."

*Privileges and Immunities at the seat of the Organisation and elsewhere*

2. The question of privileges and immunities for the United Nations is of the greatest importance in connection with the country in which the United Nations has its seat. In the case of the League of Nations, including the International Labour Organisation, the Covenant of the League contains only the following short provision in Article 7 :

" Representatives of the Members of the League and officials of the League, when engaged on the business of the League, shall enjoy diplomatic privileges and immunities."

As a result, all the detailed arrangements for the privileges and immunities of the League of Nations and the I.L.O. were worked out in agreements concluded between the Secretary-General of the League and the Swiss Government. It would seem desirable that the working out of the detailed privileges and immunities of the United Nations should be deferred until the question of its seat has been decided.

3. However, although the question of privileges and immunities arises in the greatest degree as between the United Nations and the country in which it has its seat, the same question arises as between the Organisation and all its Members. The difference is one of degree rather than one of kind. The United Nations may have offices elsewhere than at its seat. The officials of the Organisation may be travelling on its business in any part of the world. The United Nations may wish to conclude contracts and hold funds or property elsewhere than at its seat. For these and similar reasons, therefore, the Organisation will require, in the territories of all Members, the same kind of privileges and immunities as it has in the country of its seat.

*Precedents afforded by the Constitutions of Specialised Agencies.*

4. A number of specialised agencies is already in existence. Their constitutions, or the agreements under which they are set up, have for the most part detailed provisions with regard to privileges and immunities based to a large extent on the arrangements made between the League of Nations and the Swiss Government. These specialised agencies include the following : The International Monetary Fund (see Article IX), the International Bank for Reconstruction and Development (see Article VII), United Nations Relief and Rehabilitation Administration (see Resolutions Nos. 32, 34 and 36 of the first

E 3

session of the Council), Food and Agriculture Organisation (see Articles VIII and XV), European Central Inland Transport Organisation (see Article VIII, paragraphs 13, 14, 15, 16, 17). These provisions are on the same lines in each case, though in some instances they have been worked out in more detail than in others.

*Co-ordination of the Privileges and Immunities of the United Nations with those of Specialised Agencies*

5. There are many advantages in the unification, as far as possible, of the privileges and immunities enjoyed by the United Nations and the various specialised agencies. On the other hand, it must be recognised that not all specialised agencies require all the privileges and immunities which may be needed by others. No specialised agency would, however, require greater privileges than the United Nations itself. The privileges and immunities, therefore, of the United Nations might be regarded as a maximum within which the various specialised agencies should enjoy just such privileges and immunities as the proper fulfilment of their respective functions may require. It should be a principle that no immunities and privileges, which are not really necessary, should be asked for. An example of a case where a differentiation has been made between immunities, for practical reasons, may be seen by comparing Section 3 of Article IX of the Articles of Agreement of the International Monetary Fund, and Section 3 of Article VII of the Articles of Agreement of the International Bank for Reconstruction and Development. There are certain privileges and immunities which probably every specialised agency would require as well as the United Nations itself, such as recognition that it possesses legal capacity to contract and to hold property, and to be a party to legal proceedings, the immunity of its premises and papers, and the granting of travelling facilities to its officials. When the privileges and immunities of the United Nations have been determined in detail, and the specialised agencies are being brought into relationship with the United Nations, reconsideration of the privileges and immunities accorded to such specialised agencies may be desirable if it is found that they enjoy privileges and immunities in excess of those to be given to the United Nations or of what is really required.

*Creation of an International Passport*

6. In order to facilitate the travelling of officials it may be found desirable to institute an international passport issued by the Organisation, describing the holder as its official. The United Nations might issue such passports also to the senior officials of specialised agencies. The creation of this passport would not, of course, impair the sovereign rights of Members of the United Nations in respect of the granting of visas. It might, however, be hoped that any necessary visas would be granted speedily. Member governments are already required to grant visas speedily under the constitutions of some specialised agencies. It may be desirable to confine the holding of these special passports to superior officials.

*Privileges and Immunities*

7. In this report the expression " diplomatic privileges and immunities " is used for convenience to describe the whole complex of privileges and immunities which are in fact accorded to diplomatic envoys. While it will clearly be necessary that all officials, whatever their rank, should be granted immunity from legal process in respect of acts done in the course of their official duties, whether in the country of which they are nationals or elsewhere, it is by no means necessary that all officials should have diplomatic immunity. On the contrary, there is every reason for confining full diplomatic immunity to the cases where it is really justified. Any excess or abuse of immunity and privilege is as detrimental to the interests of the international organisation itself as it is to the countries who are asked to grant such immunities. In the case of existing specialised agencies, the practice has up to now been to confine diplomatic immunity to the senior official of the agency concerned and those of his assistants, whose rank is equivalent to that of Deputy Secretary-General. (In the case of the I.L.O. the range of officials to whom diplomatic immunity has been accorded is somewhat wider). It is also a principle that no official can have, in the country of which he is a national, immunity from being sued in respect of his non-official acts and from criminal prosecution. It is further most desirable that both the United Nations and all specialised agencies should adopt the principle that privileges and immunities are only given to their officials in the interests of the Organisation in whose service they are, and in no way for the benefit of the individual concerned, and that, in consequence, the Secretary-General both can waive immunity and will in fact do so in every case where such a course is consistent with the interests of the United Nations. This rule has long been in force in the International Labour Organisation. It has been accepted by most of the new specialised agencies which have come into being. Similarly, it is desirable that where the United Nations or a specialised agency concludes contracts with private individuals or corporations, it should include in the contract an undertaking to submit to arbitration disputes arising out of the contract, if it is not prepared to go before the Courts. Most of the existing specialised agencies have already agreed to do this.

*Taxation of Officials in the State of which they are nationals*

8. The provisions in the agreements or constitutions of the new specialised agencies, while providing in general that no taxation should be levied on the salaries of officials, leave complete latitude to governments to tax the salaries of officials who are their own nationals or persons resident in their territory. As a result, the Act of Parliament of the United Kingdom which was passed to enable the United Kingdom to give effect to its obligations as regards privileges and immunities for international organisations (the Diplomatic Privileges Extension Act, 1944) excepts from the immunity from income tax the salaries of those international officials who are both British subjects and whose usual place of abode is in the United Kingdom. A similar practice has been followed in certain other countries. It is, however, a matter for consideration whether this latitude or this exception are really sound. One of its effects is that some of the members of the staff have salaries which are tax free, because being resident outside their own states they do not fall under the income tax provisions of their own state, while other officials doing the same work for the same nominal salary are subject to income tax. This has led to certain administrative difficulties and has indeed raised the question whether the United Nations should not pay some special allowance to those of its employees who are paying income tax, in order to produce equality.

*The International Court of Justice*

9. The above paragraphs do not apply to the International Court of Justice. The Statute of the Court provides :

*Article 19*

" The members of the Court, when engaged upon the business of the Court, shall enjoy diplomatic privileges and immunities."

*Article 32—Paragraph 8*

" The above salaries, allowances and compensation shall be free of all taxation."

*Article 42—Paragraph 3*

"The agents, counsel, and advocates of parties before the Court shall enjoy the privileges and immunities necessary to the independent exercise of their duties."

When the first and second of these paragraphs (which correspond to the provisions of the Statute of the Permanent Court, whereas the third is new) are compared with paragraph 2 of the above quoted Article 105 of the Charter of the United Nations, it seems clear that the members of the Court, when engaged in the business of the Court, are to enjoy diplomatic privileges and immunities in the fullest sense. This has been the case with the members of the Permanent Court. For that institution the details of the privileges and immunities to be accorded at the seat of the Court were settled by negotiations between the Court itself and the Netherlands Government. It would seem desirable to postpone consideration of the subject until the Court can be consulted. It is therefore suggested that, for the first session of the Court, the rules applicable to the members of the Permanent Court should be observed, and that the new Court should then be invited to state whether changes are in their opinion required and, if this be the case, whether they wish the General Assembly to act on their behalf.

It would also appear expedient to consult the Court upon the privileges and immunities necessary for its members when engaged on the Court's business outside the country of its seat.

Finally, the question of the privileges and immunities of agents, counsel and advocates of parties before the Court would seem to be a matter which should only be taken up after it has been possible to consult the Court. It is not likely to arise at the first session.

## CHAPTER VI : THE SECRETARIAT

## Section 1 : Recommendation Concerning the Organisation of the Secretariat

*The Executive Committee,*

*Considering* that the degree in which the objects of the Charter can be realised will be largely determined by the manner in which the Secretariat performs its task, and that the Secretariat cannot successfully perform this task unless it enjoys the confidence of all the Members of the United Nations ;

*Recommends :*

1. that appropriate methods of recruitment be established in order that a staff may be assembled which is characterised by the highest standards of efficiency, competence and integrity, due regard being also paid to its recruitment on as wide a geographical basis as possible ;

E 4