EXHIBIT 3

United Nations Audiovisual Library of International Law

# CONVENTION ON THE PRIVILEGES AND IMMUNITIES OF THE UNITED NATIONS

# CONVENTION ON THE PRIVILEGES AND IMMUNITIES OF THE SPECIALIZED AGENCIES

**By August Reinisch**
*Professor of International Law, University of Vienna*

When the United Nations was established it was considered necessary that it should enjoy the status of a legal person under the domestic law of its Member States. Such a domestic legal personality is a prerequisite for international organizations to effectively manage numerous practical needs such as procurement contracts, the acquisition of property and the capacity to pursue its private law rights before national courts. The Charter of the United Nations only very generally responded to these needs by providing in its Article 104 that "[t]he Organization shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfilment of its purposes."

A similar functional concept was adopted with regard to the question of the privileges and immunities that the United Nations should enjoy. Article 105, paragraph 1, provides that "[t]he Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment of its purposes."

The principle of "functional" personality as well as of "functional" immunity was thus firmly established in the founding document of the United Nations. However, these abstract rules required some more detailed explanation in order to become workable helping United Nations officials as well as national judges to determine whether the United Nations should be considered capable of entering into a specific legal transaction or immune from a particular lawsuit directed against it. In a similar way, it was unclear to what extent United Nations officials as well as Member State representatives to the United Nations should enjoy privileges and immunities. In Article 105, paragraph 2, the drafters of the Charter of the United Nations again opted for a functional concept when it was stated therein that "[r]epresentatives of the Members of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connexion with the Organization."

At the time of the adoption of the Charter of the United Nations there were not many legal instruments that could have served as examples for what was intended to be achieved. The Covenant of the League of Nations of 28 June 1919 merely provided for "diplomatic" privileges and immunities of its employees and the inviolability of its property. Only a subsequent agreement with the League's host State, the so-called *modus vivendi*, stipulated that the League possessed international personality and capacity and that it could not "in principle, according to the rules of international law, be sued before the Swiss Courts without its consent." (*Communications du Conseil Fédéral Suisse concernant le Régime des Immunités Diplomatique du Personnel de la Société des Nations et du Bureau International du Travail*, entered into by the League of Nations and the Swiss Government on 18 September 1926, 7 OJLN (1926), annex 911a, 1422). Thus, the privileges and immunities of international organizations was largely uncharted territory.

Copyright © United Nations, 2009. All rights reserved
www.un.org/law/avl

It was against this background that the Convention on the Privileges and Immunities of the United Nations, frequently referred to as the "General Convention", was negotiated and adopted in the immediate aftermath of the establishment of the United Nations. As provided for in Article 105, paragraph 3, of the Charter of the United Nations, it was adopted by the General Assembly at its first session on 13 February 1946 (resolution 22 A (I)) on the basis of a draft of the United Nations Preparatory Commission. It entered into force on 17 September 1946 and was registered with the Secretary-General on 14 December 1946. It was one of the first treaties to be published in the United Nations *Treaty Series*.

The General Convention specifies the notion of "functional" personality and immunity of the United Nations and contains detailed provisions on the privileges and immunities enjoyed by United Nations officials and Member State representatives. Because of the high level of precision of the Convention's articles they are considered directly applicable or self-executing in many national legal systems. That means that national courts may directly rely on them without the need of national implementing legislation.

In article I, section 1, the "functional" personality of the United Nations is defined as "juridical personality" encompassing the specific capacity: "(a) to contract; (b) to acquire and dispose of immovable and movable property; (c) to institute legal proceedings." This provision clarifies that the United Nations should be able to enter into day-to-day operations governed by private law.

The Convention's core provision with regard to immunity from jurisdiction is found in article II, section 2, which runs as follows: "The United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity. It is, however, understood that no waiver of immunity shall extend to any measure of execution." The resulting "absolute" immunity from suit of the United Nations has been largely respected in most countries, though some national courts have tried to limit the Organization's scope of immunity along the initially envisaged "functional" immunity. In practice, this has also sometimes led to the application of restrictive State immunity principles denying immunity for "commercial" activities.

The *de facto* "absolute" immunity of the United Nations is mitigated by the fact that article VIII, section 29, of the Convention requires the United Nations to "make provisions for appropriate modes of settlement of: (a) disputes arising out of contracts or other disputes of a private law character to which the United Nations is a party". The General Convention's obligation to provide for alternative dispute settlement in case of the Organization's immunity from legal process can be regarded as an acknowledgment of the right of access to court as contained in all major human rights instruments.

Private law contracts entered into by the United Nations regularly contain arbitration clauses. In the case of tort claims, such as those resulting from harm suffered as a result of peacekeeping operations or vehicular accidents, the United Nations usually agrees on similar forms of dispute resolution. Staff disputes within the United Nations are settled by an internal mechanism in the form of the United Nations Administrative Tribunal, established in 1949 (General Assembly resolution 351 A (IV) of 9 December 1949). In 2009, this system will undergo a major reform leading to the establishment of a two-tier

Copyright © United Nations, 2009. All rights reserved
www.un.org/law/avl

United Nations Audiovisual Library of International Law

judicial system with a United Nations Dispute Tribunal and a United Nations Appeals Tribunal.

In addition to immunity from suit, the General Convention provides for the "inviolability" of United Nations premises and property which basically means that they are exempted from any search, requisition, confiscation, or other forms of executive, administrative, judicial or legislative interference. The same inviolability applies to the archives of the United Nations.

The most important "privileges" conferred upon the United Nations by the General Convention are fiscal ones. Most significantly, article II, section 7, exempts the United Nations from all direct taxes as well as from customs duties and quotas concerning goods for the United Nations' official use. With regard to indirect taxes, the Convention merely provides that in case of "important purchases for official use" the State concerned will make appropriate administrative arrangements for tax reimbursement.

The General Convention further contains privileges and immunities for three categories of persons crucial for the work of the Organization: 1) representatives of Member States; 2) United Nations officials; and 3) experts on missions for the United Nations. While Member State representatives enjoy modified diplomatic privileges and immunities, United Nations officials, i.e. permanently employed staff members, enjoy "functional" immunity which is defined in article V, section 18 (a), as immunity "from legal process in respect of words spoken or written and all acts performed by them in their official capacity." Article V, section 20, stresses that "[p]rivileges and immunities are granted to officials in the interests of the United Nations and not for the personal benefit of the individuals themselves" and that the Secretary-General has to waive the immunity of United Nations officials where it would "impede the course of justice and can be waived without prejudice to the interests of the United Nations." In addition to jurisdictional immunity, United Nations officials are tax exempt with regard to their salary received from the United Nations and enjoy a number of other fiscal, travel and residence privileges. Only the Secretary-General, Under-Secretaries-General and Assistant Secretaries-General enjoy full diplomatic privileges and immunities.

As opposed to United Nations officials, experts on missions for the United Nations, like members of the International Law Commission, Special Rapporteurs, or members of United Nations peacekeeping operations, serve under a temporary and specific mandate. They also enjoy certain functionally limited privileges and immunities pursuant to article VI of the General Convention.

The General Convention has had a major impact on the development of subsequent treaties dealing with privileges and immunities of international organizations. Already on 21 November 1947, the General Assembly approved the Convention on the Privileges and Immunities of the Specialized Agencies. It entered into force on 2 December 1948 and applies to those United Nations related international organizations that have entered into special relationship agreements with the United Nations pursuant to Article 63 of the Charter, such as the International Civil Aviation Organization, the World Health Organization, the Food and Agriculture Organization, the United Nations Educational, Scientific and Cultural Organization, the International Monetary Fund, the International Bank for Reconstruction and Development, and others. The so-called Special Convention

Copyright © United Nations, 2009. All rights reserved
www.un.org/law/avl

contains roughly the same provisions on privileges and immunities as the General Convention.

Examples of similar privileges and immunities treaties are the General Agreement on Privileges and Immunities of the Council of Europe, 1949, and the Agreement on Privileges and Immunities of the Organization of American States, 1949. Numerous "headquarters" or "seat agreements" have also been influenced by the General Convention.

**Related Materials**

*A. Legal Instruments*

Covenant of the League of Nations of 28 June 1919 (LEG 341.123 L434: Edition embodying the Amendment of Article 6, in force as from the 13th August 1924, and the Amendments of Articles 12, 13 and 15, in force as from the 26th September 1924).

*Communications du Conseil Fédéral Suisse concernant le Régime des Immunités Diplomatique du Personnel de la Société des Nations et du Bureau International du Travail*, entered into by the League of Nations and the Swiss Government on 18 September 1926, 7 Official Journal of the League of Nations (1926), annex 911a, 1422.

Agreement on Privileges and Immunities of the Organization of American States, Washington, 15 May 1949, United Nations, *Treaty Series*, vol. 1438, p. 79.

General Agreement on Privileges and Immunities of the Council of Europe, Paris, 2 September 1949, (ETS No. 2), United Nations, *Treaty Series*, vol. 250, p. 14.

*B. Documents*

General Assembly resolution 22 A (I) of 13 February 1946 (Privileges and Immunities of the United Nations).

General Assembly resolution 351 A (IV) of 9 December 1949 (Establishment of a United Nations Administrative Tribunal).

*C. Doctrine*

K. Ahluwalia, *The Legal Status, Privileges and Immunities of the Specialized Agencies of the United Nations and Certain Other International Organizations*, M. Nijhoff, The Hague, 1964.

P. H. F. Bekker, *The Legal Position of Intergovernmental Organizations: A Functional Necessity Analysis of Their Legal Status and Immunities*, M. Nijhoff, Dordrecht, Boston and London, 1994.

W. C. Jenks, *International Immunities*, Stevens & Sons Ltd., London, 1961.

A. Reinisch, *International Organizations Before National Courts*, Cambridge University Press, Cambridge, 2000.

Copyright © United Nations, 2009. All rights reserved
www.un.org/law/avl