# EXHIBIT 5

# Chapter VI

# SELECTED LEGAL OPINIONS OF THE SECRETARIATS OF THE UNITED NATIONS AND RELATED INTERGOVERNMENTAL ORGANIZATIONS

## A. Legal opinions of the Secretariat of the United Nations

(Issued or prepared by the Office of Legal Affairs)

### LIABILITY ISSUES

1. Payment of settlement claims—Liabilities of a private law nature—Procedures for settlement—Budget considerations

*Memorandum to the Controller*

I. *Introduction and summary conclusion*

1. I refer to your query regarding the settlement of claims and the making of settlement payments.

2. You have sought advice as to the regulatory basis for the payment of claims settlements that have been recommended by this Office and the payment of such settlements. In that connection, you noted that the United Nations Financial Regulations and Rules do not expressly provide for payments of such settlements. You also referred to financial rule 110.1, which requires that "the expenditures of the Organization remain within the appropriations as voted and are incurred only for the purposes approved by the General Assembly."

3. The question you raise is an important one. The answers are found not only in the inherent authority of the Organization to incur liabilities of a private law nature and the obligation to compensate for such liabilities, but are also reflected in various specific authorities and in the long-standing practice of the Organization. Notably, the General Assembly has been made aware of and taken note of this practice.

II. *Background*

    A. *Juridical status of the Organization*

4. As a point of departure, I should like to observe that, as an attribute of the international legal and juridical personality of the United Nations,[1] it is established that the Organization is capable of incurring obligations and liabilities of a private law nature.[2] Such obligations and liabilities may arise, for example, from contracts entered into by the Organization. The capacity of the Organization to contract is specifically provided in the Convention on the Privileges and Immunities of the United Nations, article I, section 1.[3] The authority of the United Nations to resolve claims arising under such contracts and other types of liability claims, such as those arising from damage or injury caused by the Organization to property or persons, is reflected in article 29 of the Convention on Privileges and Immunities and the long-standing practice of the Organization in addressing such claims.[4] This prac-

tice has been reported to and endorsed by the General Assembly; see paragraphs below. Further evidence of the Organization's recognition that it may incur, and that the Administration may address, liabilities of a private law character is derived from the establishment by the General Assembly of limits to various types of such liabilities. Thus, in Headquarters regulation No. 4 on "Limitation of damages in respect of acts occurring within the Headquarters district", adopted by the General Assembly in its resolution 41/210 of 11 December 1986, the Assembly established limits to its liability for tort claims arising from injuries incurred by third parties in the Headquarters district. In its resolution 52/247 of 26 June 1998, the General Assembly established temporal and financial limitations on its liabilities to third parties resulting or arising from peacekeeping operations.

### B. *Procedures for the settlement of private law claims*

5. Pursuant to the Convention on the Privileges and Immunities of the United Nations, article VIII, section 29, the United Nations is required to make provisions for appropriate modes of settlement of, inter alia, "disputes arising out of contracts or other disputes of a private law character, to which the United Nations is a party". In a study prepared for the International Law Commission in 1967 on the practice of the United Nations, the specialized agencies and the International Atomic Energy Agency concerning their status, privileges and immunities, the Secretariat reported that claims against the United Nations arising from commercial contracts were settled by negotiation and arbitration, and that other claims of a private law nature, for example, personal injury claims, were settled amicably, e. g., by means of insurance coverage in the case of injuries arising from the operation of United Nations vehicles or by discussions between the Organization and the injured party.[5]

6. In 1995, the Secretary-General submitted to the General Assembly a comprehensive report on the procedures employed by the Organization for implementing that obligation in a wide variety of contexts, including claims arising from contracts and leases, third-party claims for personal injury outside the peacekeeping context and claims arising from peacekeeping operations.[6] As elaborated in that report, while specific procedures have been devised for particular types of claims, the central features of the modes of settlement used by the United Nations pursuant to article VIII, section 29, of the Convention are the amicable resolution of such claims, where possible, such as through negotiation or, in certain cases, insurance, and, if amicable settlement cannot be achieved, the submission of claims to formal dispute resolution procedures, usually arbitration. Claims are submitted to arbitration pursuant to arbitration clauses contained in contracts entered into by the United Nations or, for claims that do not arise from such contracts, pursuant to arbitration agreements negotiated and entered into by the United Nations with the claimant. The General Assembly took note of the report.[7]

7. Procedures for the settlement of third-party claims arising from peacekeeping operations were reported by the Secretary-General to the General Assembly in 1996,[8] in a study prepared in response to a recommendation of the Advisory Committee on Administrative and Budgetary Questions (ACABQ),[9] endorsed by the General Assembly,[10] calling upon the Secretary-General to develop and propose "appropriate measures and procedures which would provide for a simple, efficient and prompt settlement of third-party claims" and for limits to the liabilities of the United Nations in respect of such claims. Part of the study prepared by the Secretariat reported on the current procedures for handling third-party claims.[11] Those proce-

dures, too, involve amicable settlement in the first instance, where possible, failing which formal dispute resolution procedures may be employed. Although the status-of-forces agreements concluded by the United Nations with host countries provide for a standing claims commission as the formal claims resolution procedure, as reported in the Secretary-General's study, this mechanism has not been used to date. Instead, third-party claims that could not be settled amicably have been submitted to arbitration.

8.  The study was commended by ACABQ[12] and was endorsed by the General Assembly in its resolution 51/13 of 4 November 1996, in which it requested the Secretary-General to develop specific measures for implementing the principles outlined in the study, which included measures to limit the liability of the Organization. The Secretary-General recommended such measures in a follow-up report in 1997.[13] The recommended measures were adopted by the General Assembly in its resolution 52/247 of 26 June 1998.

III.  *Analysis*

   A.  *Roles of Secretariat units with respect to settlements*

9.  The roles and mandates within the Secretariat for negotiating settlements were reported by the Secretary-General to the General Assembly in 1999.[14] As stated in paragraph 11 of that report, the Office of Legal Affairs, after analysing the relevant factual and legal issues, may "recommend a settlement range based on an assessment as to the degree to which the Organization is exposed to liability in the case and the costs in terms of money, time and effort to arbitrate the matter. Authority from the Under-Secretary-General for Management/Controller to settle for that amount is generally sought before negotiations are undertaken with the contractor . . . if agreement in principle can be reached between the United Nations and the contractor, the formal documentation settling the claim is prepared by the Office of Legal Affairs and submitted to the Under-Secretary-General for Management/Controller and to the contractor for signature." While that portion of the report referred to handling contract claims, essentially the same process is used with respect to other types of private law claims. In addition to the above report, the practice whereby authorization to negotiate settlements recommended by this Office is sought from the Controller, and the Controller signs the documentation finalizing such settlements, such as settlement agreements and releases, had been previously reported to the General Assembly.[15] This practice is consistent with financial rule 106.1 which provides: "No commitments, obligations or expenditures against any funds may be incurred without the written authorization of the Controller."

10.  As noted above, settlements recommended by the Office of Legal Affairs are based on its assessment as to the Organization's exposure to legal liability in the case and the costs that the Organization would incur if it had to arbitrate the matter in the absence of an amicable settlement. It should be noted that the liability of the Organization to a third party is independent of its internal financial regulations and processes. In this regard, the International Court of Justice has ruled in two advisory opinions that, although the General Assembly has the authority under the Charter of the United Nations to approve the budget of the Organization, it has no alternative but to honour obligations incurred by the Organization; see *Effects of Awards of Compensation made by the United Nations Administrative Tribunal, Advisory Opinion*, *I.C.J. Reports 1954*, p. 47; *Certain Expenses of the United Nations*,

*Advisory Opinion, I.C.J. Reports 1962*, p. 151. This obligation also follows from general principles of law.

### B.   *Financial Regulations and Rules*

11.   Financial rule 104.1 provides: "An outstanding legal obligation is to be based on a contract, purchase order, agreement or other form of undertaking by the United Nations or *based on a liability recognized by the United Nations*, which obligation is supported by an appropriate obligating document . . ." (emphasis added). It is our understanding that the "obligating document" referred to in this provision is dealt with in financial rule 110.2 (*a*), requiring certifying officers to submit to the Controller "the appropriate documents in support of proposed obligations and expenditures", and financial rule 110.3 (*a*), providing that "every obligation or proposal for the incurring of expenditure shall require: (*a*) certification by a certifying officer designated for the purpose by the Controller before the expenditure is actually incurred, *provided that the Controller shall have authority to certify obligations and expenditures under all accounts* . . ." (emphasis added). The practice whereby a submission by the relevant substantive unit (e. g., the Field Administration and Logistics Division, Department of Peacekeeping Operations, in cases arising from peacekeeping operations or the Procurement Division in cases arising from contracts) of the analysis of a claim by the Office of Legal Affairs and a recommendation of settlement, and the written approval of the Controller of such a recommendation, is consistent with those provisions.

12.   Some of the liabilities of a private law nature discussed in the present memorandum arise from contracts, purchase orders, leases and other agreements. Other liabilities arise from property damage, injury or death caused by or legally attributable to the United Nations. Such liabilities that are recognized by the United Nations, for example, on the basis of a legal analysis and recommendation of the Office of Legal Affairs and approval of any settlement of such liability by the Controller, are precisely of the kind that fall within the terms of financial rule 104.1.

13.   As pointed out in your memorandum of 19 April 2000, financial rule 110.1 requires that "the expenditures of the Organization remain within the appropriations as voted and [be] incurred only for the purposes approved by the General Assembly". It is explained above that once the Organization incurs a legal liability, it is legally obligated to pay that liability. It is for the appropriate financial officials of the Organization to take the necessary steps to do so.

14.   Some settlements recommended by the Office of Legal Affairs involve payments that, as concluded by this Office, the Organization is obligated to make under contracts, purchases orders, leases and other agreements. If funding for those contracts or other agreements has already been provided for in a budgetary appropriation approved by the General Assembly, this would, in our view, constitute sufficient authorization under financial rule 110.1 to make such settlement payments. If for some reason a legal liability arising under a contract or other agreement exceeds the amount that the General Assembly has appropriated for that contract, additional funding would have to be obtained (although the "purpose" of the payment—satisfaction of an obligation under a contract—would already have been approved by the General Assembly in its original budgetary appropriation for that contract).

15.   With respect to other liabilities, such as liabilities arising outside contracts (for example, tort liabilities to third parties), the appropriate steps would have to be taken to obtain funds and pay those liabilities. In the context of peacekeeping operations, we have been informed by the Field Administration and Logistics Division, Department of Peacekeeping Operations, that the current practice is for the budgets of peacekeeping operations to contain a line item, "claims and adjustments", to cover potential third-party claims. In addition, we have been informed that the budgets for the pre-liquidation phase of peacekeeping operations typically include a line item to cover outstanding or anticipated third-party claims. The approval of these budgets by the General Assembly would, in our view, constitute the required authority under financial rule 110.1 to pay settlements of such claims. To the extent that the amounts of such payments exceed the amounts budgeted, additional funds would have to be obtained.

16.   As discussed above, the fact that funds have not been appropriated to pay legal obligations is not an excuse for failing to pay these obligations. This has been recognized in two advisory opinions of the International Court of Justice and it follows from general principles of law.

IV.   *Conclusion*

17.   As a matter of international law, it is clear that the Organization can incur liabilities of a private law nature and is obligated to pay in regard to such liabilities. It is equally clear that the Administration has the obligation and the authority to resolve claims of a private law nature, and that there is a long practice of the Administration in exercising that authority. It is also true that the practice has been presented to the General Assembly and that it is aware of that practice.

18.   With respect to the exercise of that authority within the framework of the Financial Regulations and Rules, it is clear that in all but a handful of cases the money to satisfy the liability will come from funds specifically authorized by the General Assembly for a particular activity, for example, for a particular peacekeeping mission or a particular contract.

19.   In this connection, it would be useful for the budgets for those activities which may give rise to claims to include a line item to cover potential claims or "unforeseen expenses". We understand that this is currently the practice in peacekeeping budgets.

20.   In the rare instance where there are no funds (or insufficient funds) specifically authorized for the particular activity, we believe that, in the light of the authorities and practices relating generally to the settlement of disputes of a private law nature, discussed above, financial rule 104.1, particularly the reference to "liability recognized by the United Nations", and financial rule 110.2 (*d*), authorizing the Controller to transfer funds between allotments, provide the authority to you to use funds not specifically authorized for the activity at issue if such funds are available for that purpose and the use of those funds would not prevent or interfere with a mandated activity or operation. Of course, this may require the Administration to seek additional funding from the General Assembly to replace this amount so that funds would be available to meet the purpose for which such funds originally were authorized.

23 February 2001

_____

# Chapter VI

## SELECTED LEGAL OPINIONS OF THE SECRETARIATS OF THE UNITED NATIONS AND RELATED INTERGOVERNMENTAL ORGANIZATIONS

### A. Legal opinions of the Secretariat of the United Nations

(Issued or prepared by the Office of Legal Affairs)

#### LIABILITY ISSUES

1. PAYMENT OF SETTLEMENT CLAIMS—LIABILITIES OF A PRIVATE LAW NATURE—PROCEDURES FOR SETTLEMENT—BUDGET CONSIDERATIONS

*Memorandum to the Controller*

I. *Introduction and summary conclusion*

1. I refer to your query regarding the settlement of claims and the making of settlement payments.

2. You have sought advice as to the regulatory basis for the payment of claims settlements that have been recommended by this Office and the payment of such settlements. In that connection, you noted that the United Nations Financial Regulations and Rules do not expressly provide for payments of such settlements. You also referred to financial rule 110.1, which requires that "the expenditures of the Organization remain within the appropriations as voted and are incurred only for the purposes approved by the General Assembly."

3. The question you raise is an important one. The answers are found not only in the inherent authority of the Organization to incur liabilities of a private law nature and the obligation to compensate for such liabilities, but are also reflected in various specific authorities and in the long-standing practice of the Organization. Notably, the General Assembly has been made aware of and taken note of this practice.

II. *Background*

A. *Juridical status of the Organization*

4. As a point of departure, I should like to observe that, as an attribute of the international legal and juridical personality of the United Nations,[1] it is established that the Organization is capable of incurring obligations and liabilities of a private law nature.[2] Such obligations and liabilities may arise, for example, from contracts entered into by the Organization. The capacity of the Organization to contract is specifically provided in the Convention on the Privileges and Immunities of the United Nations, article I, section 1.[3] The authority of the United Nations to resolve claims arising under such contracts and other types of liability claims, such as those arising from damage or injury caused by the Organization to property or persons, is reflected in article 29 of the Convention on Privileges and Immunities and the long-standing practice of the Organization in addressing such claims.[4] This prac-

tice has been reported to and endorsed by the General Assembly; see paragraphs below. Further evidence of the Organization's recognition that it may incur, and that the Administration may address, liabilities of a private law character is derived from the establishment by the General Assembly of limits to various types of such liabilities. Thus, in Headquarters regulation No. 4 on "Limitation of damages in respect of acts occurring within the Headquarters district", adopted by the General Assembly in its resolution 41/210 of 11 December 1986, the Assembly established limits to its liability for tort claims arising from injuries incurred by third parties in the Headquarters district. In its resolution 52/247 of 26 June 1998, the General Assembly established temporal and financial limitations on its liabilities to third parties resulting or arising from peacekeeping operations.

### B.  Procedures for the settlement of private law claims

5.   Pursuant to the Convention on the Privileges and Immunities of the United Nations, article VIII, section 29, the United Nations is required to make provisions for appropriate modes of settlement of, inter alia, "disputes arising out of contracts or other disputes of a private law character, to which the United Nations is a party". In a study prepared for the International Law Commission in 1967 on the practice of the United Nations, the specialized agencies and the International Atomic Energy Agency concerning their status, privileges and immunities, the Secretariat reported that claims against the United Nations arising from commercial contracts were settled by negotiation and arbitration, and that other claims of a private law nature, for example, personal injury claims, were settled amicably, e. g., by means of insurance coverage in the case of injuries arising from the operation of United Nations vehicles or by discussions between the Organization and the injured party.[5]

6.   In 1995, the Secretary-General submitted to the General Assembly a comprehensive report on the procedures employed by the Organization for implementing that obligation in a wide variety of contexts, including claims arising from contracts and leases, third-party claims for personal injury outside the peacekeeping context and claims arising from peacekeeping operations.[6] As elaborated in that report, while specific procedures have been devised for particular types of claims, the central features of the modes of settlement used by the United Nations pursuant to article VIII, section 29, of the Convention are the amicable resolution of such claims, where possible, such as through negotiation or, in certain cases, insurance, and, if amicable settlement cannot be achieved, the submission of claims to formal dispute resolution procedures, usually arbitration. Claims are submitted to arbitration pursuant to arbitration clauses contained in contracts entered into by the United Nations or, for claims that do not arise from such contracts, pursuant to arbitration agreements negotiated and entered into by the United Nations with the claimant. The General Assembly took note of the report.[7]

7.   Procedures for the settlement of third-party claims arising from peacekeeping operations were reported by the Secretary-General to the General Assembly in 1996,[8] in a study prepared in response to a recommendation of the Advisory Committee on Administrative and Budgetary Questions (ACABQ),[9] endorsed by the General Assembly,[10] calling upon the Secretary-General to develop and propose "appropriate measures and procedures which would provide for a simple, efficient and prompt settlement of third-party claims" and for limits to the liabilities of the United Nations in respect of such claims. Part of the study prepared by the Secretariat reported on the current procedures for handling third-party claims.[11] Those proce-

dures, too, involve amicable settlement in the first instance, where possible, failing which formal dispute resolution procedures may be employed. Although the status-of-forces agreements concluded by the United Nations with host countries provide for a standing claims commission as the formal claims resolution procedure, as reported in the Secretary-General's study, this mechanism has not been used to date. Instead, third-party claims that could not be settled amicably have been submitted to arbitration.

8.  The study was commended by ACABQ[12] and was endorsed by the General Assembly in its resolution 51/13 of 4 November 1996, in which it requested the Secretary-General to develop specific measures for implementing the principles outlined in the study, which included measures to limit the liability of the Organization. The Secretary-General recommended such measures in a follow-up report in 1997.[13] The recommended measures were adopted by the General Assembly in its resolution 52/247 of 26 June 1998.

III.  *Analysis*

   A.  *Roles of Secretariat units with respect to settlements*

9.  The roles and mandates within the Secretariat for negotiating settlements were reported by the Secretary-General to the General Assembly in 1999.[14] As stated in paragraph 11 of that report, the Office of Legal Affairs, after analysing the relevant factual and legal issues, may "recommend a settlement range based on an assessment as to the degree to which the Organization is exposed to liability in the case and the costs in terms of money, time and effort to arbitrate the matter. Authority from the Under-Secretary-General for Management/Controller to settle for that amount is generally sought before negotiations are undertaken with the contractor . . . if agreement in principle can be reached between the United Nations and the contractor, the formal documentation settling the claim is prepared by the Office of Legal Affairs and submitted to the Under-Secretary-General for Management/Controller and to the contractor for signature." While that portion of the report referred to handling contract claims, essentially the same process is used with respect to other types of private law claims. In addition to the above report, the practice whereby authorization to negotiate settlements recommended by this Office is sought from the Controller, and the Controller signs the documentation finalizing such settlements, such as settlement agreements and releases, had been previously reported to the General Assembly.[15] This practice is consistent with financial rule 106.1 which provides: "No commitments, obligations or expenditures against any funds may be incurred without the written authorization of the Controller."

10.  As noted above, settlements recommended by the Office of Legal Affairs are based on its assessment as to the Organization's exposure to legal liability in the case and the costs that the Organization would incur if it had to arbitrate the matter in the absence of an amicable settlement. It should be noted that the liability of the Organization to a third party is independent of its internal financial regulations and processes. In this regard, the International Court of Justice has ruled in two advisory opinions that, although the General Assembly has the authority under the Charter of the United Nations to approve the budget of the Organization, it has no alternative but to honour obligations incurred by the Organization; see *Effects of Awards of Compensation made by the United Nations Administrative Tribunal, Advisory Opinion*, I.C.J. Reports 1954, p. 47; *Certain Expenses of the United Nations*,

*Advisory Opinion, I.C.J. Reports 1962*, p. 151. This obligation also follows from general principles of law.

### B.  *Financial Regulations and Rules*

11.  Financial rule 104.1 provides: "An outstanding legal obligation is to be based on a contract, purchase order, agreement or other form of undertaking by the United Nations or *based on a liability recognized by the United Nations*, which obligation is supported by an appropriate obligating document . . ." (emphasis added). It is our understanding that the "obligating document" referred to in this provision is dealt with in financial rule 110.2 (*a*), requiring certifying officers to submit to the Controller "the appropriate documents in support of proposed obligations and expenditures", and financial rule 110.3 (*a*), providing that "every obligation or proposal for the incurring of expenditure shall require: (*a*) certification by a certifying officer designated for the purpose by the Controller before the expenditure is actually incurred, *provided that the Controller shall have authority to certify obligations and expenditures under all accounts* . . ." (emphasis added). The practice whereby a submission by the relevant substantive unit (e. g., the Field Administration and Logistics Division, Department of Peacekeeping Operations, in cases arising from peacekeeping operations or the Procurement Division in cases arising from contracts) of the analysis of a claim by the Office of Legal Affairs and a recommendation of settlement, and the written approval of the Controller of such a recommendation, is consistent with those provisions.

12.  Some of the liabilities of a private law nature discussed in the present memorandum arise from contracts, purchase orders, leases and other agreements. Other liabilities arise from property damage, injury or death caused by or legally attributable to the United Nations. Such liabilities that are recognized by the United Nations, for example, on the basis of a legal analysis and recommendation of the Office of Legal Affairs and approval of any settlement of such liability by the Controller, are precisely of the kind that fall within the terms of financial rule 104.1.

13.  As pointed out in your memorandum of 19 April 2000, financial rule 110.1 requires that "the expenditures of the Organization remain within the appropriations as voted and [be] incurred only for the purposes approved by the General Assembly". It is explained above that once the Organization incurs a legal liability, it is legally obligated to pay that liability. It is for the appropriate financial officials of the Organization to take the necessary steps to do so.

14.  Some settlements recommended by the Office of Legal Affairs involve payments that, as concluded by this Office, the Organization is obligated to make under contracts, purchases orders, leases and other agreements. If funding for those contracts or other agreements has already been provided for in a budgetary appropriation approved by the General Assembly, this would, in our view, constitute sufficient authorization under financial rule 110.1 to make such settlement payments. If for some reason a legal liability arising under a contract or other agreement exceeds the amount that the General Assembly has appropriated for that contract, additional funding would have to be obtained (although the "purpose" of the payment—satisfaction of an obligation under a contract—would already have been approved by the General Assembly in its original budgetary appropriation for that contract).

15.   With respect to other liabilities, such as liabilities arising outside contracts (for example, tort liabilities to third parties), the appropriate steps would have to be taken to obtain funds and pay those liabilities. In the context of peacekeeping operations, we have been informed by the Field Administration and Logistics Division, Department of Peacekeeping Operations, that the current practice is for the budgets of peacekeeping operations to contain a line item, "claims and adjustments", to cover potential third-party claims. In addition, we have been informed that the budgets for the pre-liquidation phase of peacekeeping operations typically include a line item to cover outstanding or anticipated third-party claims. The approval of these budgets by the General Assembly would, in our view, constitute the required authority under financial rule 110.1 to pay settlements of such claims. To the extent that the amounts of such payments exceed the amounts budgeted, additional funds would have to be obtained.

16.   As discussed above, the fact that funds have not been appropriated to pay legal obligations is not an excuse for failing to pay these obligations. This has been recognized in two advisory opinions of the International Court of Justice and it follows from general principles of law.

IV.   *Conclusion*

17.   As a matter of international law, it is clear that the Organization can incur liabilities of a private law nature and is obligated to pay in regard to such liabilities. It is equally clear that the Administration has the obligation and the authority to resolve claims of a private law nature, and that there is a long practice of the Administration in exercising that authority. It is also true that the practice has been presented to the General Assembly and that it is aware of that practice.

18.   With respect to the exercise of that authority within the framework of the Financial Regulations and Rules, it is clear that in all but a handful of cases the money to satisfy the liability will come from funds specifically authorized by the General Assembly for a particular activity, for example, for a particular peacekeeping mission or a particular contract.

19.   In this connection, it would be useful for the budgets for those activities which may give rise to claims to include a line item to cover potential claims or "unforeseen expenses". We understand that this is currently the practice in peacekeeping budgets.

20.   In the rare instance where there are no funds (or insufficient funds) specifically authorized for the particular activity, we believe that, in the light of the authorities and practices relating generally to the settlement of disputes of a private law nature, discussed above, financial rule 104.1, particularly the reference to "liability recognized by the United Nations", and financial rule 110.2 (*d*), authorizing the Controller to transfer funds between allotments, provide the authority to you to use funds not specifically authorized for the activity at issue if such funds are available for that purpose and the use of those funds would not prevent or interfere with a mandated activity or operation. Of course, this may require the Administration to seek additional funding from the General Assembly to replace this amount so that funds would be available to meet the purpose for which such funds originally were authorized.

23 February 2001

_____