EXHIBIT 8



United Nations                                                                                                       A/51/903

# General Assembly

Fifty-first session

Distr.: General

21 May 1997

Original: English

**Agenda item 140 (a)**

**Administrative and budgetary aspects of the financing of the United Nations peacekeeping operations: financing of the United Nations peacekeeping operations**

Report of the Secretary-General

*Summary*

The present report is submitted pursuant to paragraph 2 of General Assembly resolution 51/13 of 4 November 1996, in which the Assembly requested the Secretary-General to develop specific measures, including criteria and guidelines for implementing the principles outlined in his report (A/51/389) and to report thereon to the General Assembly through the Advisory Committee.

The present report analyses the provisions of article 51 of the model status-of-forces agreement, elaborates criteria and guidelines for implementing the principles of financial and temporal limitations on the liability of the United Nations and proposes modalities for establishing these limitations in a legally binding instrument.

In paragraph 47 of the present report, the General Assembly is requested to endorse the modalities of establishing the financial and temporal limitations in legally binding instruments proposed in section IV and to adopt a resolution stipulating the temporal and financial limitations of the Organization.

97-13389 (E)   030697

# Contents

|      |                                                                                      | *Paragraphs* | *Page* |
|------|--------------------------------------------------------------------------------------|--------------|--------|
| I.   | Introduction                                                                         | 1 - 6        | 3      |
| II.  | Article 51 of the model status-of-forces agreement                                   | 7 - 11       | 4      |
| III. | Temporal and financial limitations: the principle and its scope of application       | 12 - 36      | 5      |
|      | A.  Temporal limitation                                                              | 15 - 20      | 5      |
|      | B.  Financial limitations                                                            | 21 - 36      | 6      |
| IV.  | Modalities of establishing the financial and temporal limitations in legally binding instruments | 37 - 41      | 9      |
| V.   | Conclusions                                                                          | 42 - 46      | 10     |
| VI.  | Actions to be taken by the General Assembly                                          | 47           | 11     |

*Annex*

Consolidated claim form for third-party personal injury or death and/or property damage or loss ........................................................... 13

## I. Introduction

1. The present report is supplemental to the report of the Secretary-General on the financing of the United Nations Protection Force, the United Nations Confidence Restoration Operation in Croatia, the United Nations Preventive Deployment Force and the United Nations Peace Forces headquarters and administrative and budgetary aspects of the financing of the United Nations peacekeeping operations: financing of the United Nations peacekeeping operations of 20 September 1996 (A/51/389). It is submitted pursuant to General Assembly resolution 51/13 of 4 November 1996.

2. In his earlier report, the Secretary-General outlined the principles of United Nations liability for the activities of peacekeeping operations with regard, in particular, to the types of loss or injury most commonly encountered in the practice of United Nations operations, namely, non-consensual use and occupancy of premises, personal injury and property loss or damage arising from the ordinary operation of the force, and such injury and damage as result from combat operations. The report further examined the existing procedures for settling third-party claims and the difficulties encountered in practice, and proposed modified mechanisms that would ensure simple, efficient and prompt settlement of third-party claims. Finally, the Secretary-General outlined for the consideration of the General Assembly a number of proposals concerning financial and temporal limitations on the liability of the Organization.

3. In its report dated 14 October 1996 (A/51/491), the Advisory Committee on Administrative and Budgetary Questions concurred in the view of the Secretary-General with regard to financial and temporal limitations, subject to further study of their ceiling, duration and the modalities of their establishment (para. 10). The Advisory Committee recommended that the General Assembly endorse the proposals and recommendations regarding limitations on the liability of the Organization contained in paragraphs 38 to 44 of the report of the Secretary-General, taking into account the Committee's observations, and further recommended that the Secretary-General be requested to develop specific measures, including criteria and guidelines for implementing the principles outlined in his report and to report thereon to the Assembly through the Advisory Committee (para. 15).

4. In particular, the Advisory Committee requested:

    (a) That the Secretary-General review the current provisions of article 51 of the model status-of-forces agreement that have proved to be unrealistic or ineffective, with a view to proposing, in the light of the acquired experience in the matter, new procedures for the handling of that type of third-party claim (para. 9);

    (b) That the ceiling of compensation, modalities of establishing the financial limitation of the Organization and the duration of the limitation period be further studied (para. 10);

    (c) That it be provided with a compendium of all instances where the United Nations is entitled to restitution as the result of non-compliance with status-of-forces or other agreements (para. 11);

    (d) That a standard format in which claims must be prepared if they are to be considered by the United Nations, be established (para. 14).

5. By its resolution 51/13, the General Assembly endorsed the observations and recommendations contained in the report of the Advisory Committee on Administrative and Budgetary Questions, and requested the Secretary-General to develop specific measures, including criteria and guidelines for implementing the principles outlined in his report, and to report thereon to the Assembly through the Advisory Committee.

6. The present report is submitted pursuant to that request. It comprises three parts: the first part analyses the provisions of article 51 of the model status-of-forces agreement and the reasons why the settlement of disputes procedure provided for thereunder should be maintained. The second part elaborates criteria and guidelines for implementing the principles of financial and temporal limitations on the liability of the United Nations and the third proposes modalities of establishing these limitations in a legally binding instrument. In addition, a standard form for the preparation and presentation of claims is attached as an annex to the present report. A compendium of all instances where the United Nations is entitled to

restitution as the result of non-compliance with status-of-forces or other agreements by host Governments is under preparation and will be issued as an addendum to the present report.

## II. Article 51 of the model status-of-forces agreement

7. Article 51 of the model status-of-forces agreement (A/45/594)[1] provides for the establishment of a standing claims commission as a mechanism for the settlement of disputes of a private law character to which the United Nations peacekeeping operation or any member thereof is a party and over which the local courts have no jurisdiction because of the immunity of the Organization or its members. The commission is to be composed of three members, one member to be appointed by the Secretary-General of the United Nations, another by the Government and a chairman jointly by the Secretary-General and the Government. If no agreement is reached as to the chairman, the President of the International Court of Justice may, at the request of either party, appoint the chairman. The article further provides for a method for filling vacancies on the commission, the competence of the commission to determine its own procedure, the process of decision-making, the legally binding nature of its award and the procedure for appeal in accordance with article 53 of the model agreement.

8. The standing claims commission as envisaged under the model agreement has never been established in the practice of United Nations peacekeeping operations. There is, therefore, no acquired operational experience against which the effectiveness or ineffectiveness of such a procedure can be judged. This may have been the result of a lack of political interest on the part of host States, or because the claimants themselves may have found the existing procedure of local claims review boards expeditious, impartial and generally satisfactory. But whatever the reason, the very fact of not invoking the procedure provided for under the model agreement, in itself, is not an indication that the procedure is inherently unrealistic or ineffective.

9. It may be recalled that in his earlier report (A/51/389), the Secretary-General stated that the existing mechanisms and procedures for dealing with third-party claims were not inadequate, per se, but that in order to cope with the large numbers and amounts of claims a series of measures, such as provision of additional personnel, increasing the financial authority of local claims review boards or increasing their numbers in the field, were suggested.

10. The Secretary-General maintains the view that no new procedures are called for and that the existing mechanisms should, as necessary, be modified and streamlined. He is also of the view that the standing claims commission envisaged in article 51 of the model agreement should be maintained, mainly because it provides for a tripartite procedure for the settlement of disputes, in which both the Organization and the claimant are treated on a par. The mechanism also reflects the practice of the Organization in resolving disputes of a private law character under article 29 of the Convention on the Privileges and Immunities of the United Nations. The local claims review boards, just and efficient as they may be, are United Nations bodies, in which the Organization, rightly or wrongly, may be perceived as acting as a judge in its own case. Based on the principle that justice should not only be done but also be seen to be done, a procedure that involves a neutral third party should be retained in the text of the status-of-forces agreement as an option for potential claimants.[2]

11. Since the standing claims commission has never been activated, it is difficult to suggest ways in which its procedure might be modified or amended. If, however, on the basis of future experience the procedure proves to be inadequate, the Secretary-General would revert to the matter.

## III. Temporal and financial limitations: the principle and its scope of application

12. The limitation on the liability of the Organization as a means of allocating the risks of peacekeeping operations between the United Nations and host States is premised on the assumption that consensual peacekeeping operations are conducted for the benefit of the country in whose territory they are deployed, and that having expressly or implicitly agreed to the deployment of a peacekeeping operation in its territory, the host country must be deemed to bear the risk of the operation and assume, in part at least, liability for damage arising from such an operation. As a practical matter, limiting the liability of the Organization is also justified on the ground that the funds from which third-party claims are paid are public funds contributed by the States Members of the United Nations for the purpose of financing activities of the Organization as mandated by those Member States. To the extent that funds are used to pay third-party claims, lesser amounts may be available to finance additional peacekeeping or other United Nations operations. In limiting the liability of the Organization with regard to third-party claims arising from peacekeeping operations it is expected that the host Government will assume responsibility for providing any additional compensation that may appear warranted under the circumstances.

13. Temporal and financial limitations established within the ceilings or criteria set out below would be applicable to third-party claims for personal injury, illness or death, and for property loss or damage (including non-consensual use of premises) attributable to the activities of members of peacekeeping operations in the performance of their official duties.[3]

14. Compensation, subject to these limitations, would be paid where the liability of the Organization is engaged. Where such liability is not engaged, such as in claims arising from "operational necessity", the question of financial limitation would not arise.[4] On the other hand, no financial limitations are proposed with regard to claims arising as a result of gross negligence or wilful misconduct. If such claims are established, the Organization would assume liability to compensate a third party, retaining the right to seek recovery from the individual or the troop-contributing State concerned.[5] In the view of the Secretary-General, the Organization cannot limit its responsibility when a member of a peacekeeping operation, while performing his duties, has committed a wrongful act wilfully or with a criminal intent or because of gross negligence. But it is precisely because of that element of gross fault or wilful or criminal intent that the Organization is justified in seeking recovery from the individual or the troop-contributing State concerned. This approach is consistent with the prevailing practice in other fields of international law where limited liability is recognized for negligence, but is not applicable in cases of gross negligence.

### A. Temporal limitation

#### 1. Balance of interests between the Organization and the claimant

15. A temporal limitation on the submission of claims against the Organization is designed to ensure that third-party claims are submitted within a reasonable period of time and before witnesses and evidence disappear and memories fade. It is also intended to free the Organization from unknown and possibly large financial liabilities for past operations which could otherwise be asserted against the Organization at any time in the future. Furthermore, in many peacekeeping operations of limited duration, the Organization withdraws from the area when the mandate of the operation ends. This means that the United Nations personnel with knowledge of the circumstances of claims arising in the area are dispersed to other posts in the Organization or leave the Organization altogether. As a consequence, unless the Organization is given timely notice of a claim, its ability to investigate the claim and defend itself is severely restricted.

16. At the same time, any temporal limitation must be of a reasonable duration so as not to unduly deprive claimants of their right to seek compensation in the event they suffer injury or loss in situations which entail the liability of the Organization.

### 2. Duration of the limitation period

17. In the laws of most States which provide for temporal limitations for the submission of tort claims, the period of limitation runs from the time when the action or the event causing the injury or loss occurred, or, if the claimant did not know and could not have reasonably known of the injury or loss or of the identity of the party who inflicted it, from the time the claimant became aware of them. Some national legislation provides, in addition, for a general period of limitation after the expiry of which all claims of whatever kind are barred.[6]

18. Because of the limited duration of most peacekeeping operations, the period of limitation established should be reasonable, practicable and fair to both potential claimants and the United Nations. It should be simple to administer, allow the United Nations to deal expeditiously with claims and be consistent with any relevant existing practices of the Organization in this regard.

19. In this connection, it is noted that claims by United Nations military observers and civilian police monitors for compensation for death, injury or illness attributable to the performance of official duties on behalf of the Organization must be brought within four months of the observer's death, injury or onset of illness, although, in exceptional circumstances, the Secretary-General may accept for consideration a claim made at a later date.[7] Claims for compensation submitted by members of commissions, committees or similar bodies in the event of death, injury or illness attributable to service with the United Nations are subject to similar time limitations.[8]

20. Given the practice of the Organization, the exigencies of peacekeeping operations and the relatively brief duration of most such operations, a six-month time limit would appear reasonable and would enable the accounts of a peacekeeping operation to be finalized within a relatively short period of time after the cessation of the operation. The Secretary-General suggests that the six-month limit run from the time the damage was sustained, or if the claimant did not know or could not have reasonably known of the injury or loss, from the time when he discovered it, but in any event not later than one year after the termination of the mandate of the operation. The termination of the mandate is determined by the Security Council. For the purposes of the overall limit period, it does not include the wind-up phase. However, in the event that injury or loss occur during the wind-up phase, the Secretary-General would consider waiving the time limit (see para. 19).

## B. Financial limitations

21. The financial liability of the Organization may be limited in several ways: by limiting compensation to particular types of injury or loss, by limiting the amount of compensation payable in regard to each or all of the compensable types or where the damages cannot be quantified, by reference to criteria which could guide the claims review board or the standing claims commission in the determination of the claim and the calculation of damages.

22. In analysing the various measures of financial limitations, the present report distinguishes between personal injury, death or illness, and property loss or damage (including non-consensual use of premises), and suggests in respect of each category different measures of limitations as set out below.

### 1. Personal injury, illness or death

(a) *Compensable types of loss and injury*

23. Within the general category of personal injury, illness or death, types of loss and injury may include any or all of the following: economic loss, such as medical expenses, loss of earnings or support income, burial expenses, homemaker services, legal expenses and other expenses associated with the personal injury (i.e., transportation), and non-economic loss, such as pain and suffering and mental anguish.

24. In the practice of peacekeeping operations, compensation payable to third-party claimants for personal injury is based on the types of injury and loss compensable under local law and the prevailing practice in the mission area, in particular, as well as on the past practice of the Organization.[9] In the view of the Secretary-General, a list of compensable types of personal injury or loss should now be established on a global basis regardless of the place where the act causing the injury or loss took place. Such an approach would be simple to implement and create the least disparities among claimants worldwide. It is also the approach adopted in Headquarters regulation No. 4 limiting the liability of the Organization in respect of compensation for injury or loss occurring in the United Nations Headquarters district in New York[10] and by the United Nations Compensation Commission.[11]

25. Drawing upon the types of injury and loss compensable under Headquarters regulation No. 4 and the criteria developed by the United Nations Compensation Commission, and in conformity with the practice of United Nations peacekeeping operations, the Secretary-General suggests that the list of compensable types of personal injury, death or illness be limited to actual economic or pecuniary loss, and comprise the following:

   (a) Necessary medical and rehabilitation expenses;

   (b) Loss of earnings;

   (c) Loss of financial support;

   (d) Transportation expenses associated with injury, illness or medical care;

   (e) Burial expenses.

26. In the view of the Secretary-General, non-economic loss, such as pain and suffering or moral anguish, as well as punitive or moral damages which are difficult to quantify, should be excluded from the list. It is further his view that types of loss or damage which are difficult to verify, such as homemaker services, or those that are not directly related to the injury or loss itself, such as attorneys' fees and legal costs, should also be excluded.[12]

   (b) *Maximum ceiling amount*

27. Maximum compensation amounts for personal injury, death or illness were established by the United Nations for military or police observers and members of United Nations commissions.[13] With respect to the former, as set out in the "Notes for guidance of military/police observers on assignment", the compensation payable to military or police observers for death, injury or illness attributable to the performance of official duties in peacekeeping operations is limited to a maximum amount of $50,000, or twice the observer's basic annual salary less allowances, whichever is greater.

28. With respect to members of United Nations commissions, committees or similar bodies, the Rules governing compensation in the event of death, injury or illness attributable to the performance of official duties on behalf of the United Nations provide for the following compensation amounts: (a) for death: reasonable medical, hospital and directly related expenses not covered by insurance or other sources, reasonable funeral expenses and expenses for transport of the body and survivors' benefits of $100,000 (if survivors are spouse, dependent children or dependent parent) or $50,000 (if survivors are dependent siblings); (b) for injury or illness: total compensation for medical, hospital and directly related expenses which are not covered by insurance or other sources and permanent disfigurement or loss of function — compensation including this item is subject to a ceiling of $100,000.[14]

29. The Secretary-General suggests that a global maximum ceiling on compensation payable to third-party claimants for personal injury, death or illness be established. The actual amount payable, up to a limit of $50,000, will be determined in accordance with local compensation standards.

Case 1:13-cv-07146-JPO   Document 33-8   Filed 05/15/14   Page 9 of 20

A/51/903
English
Page 8


**2. Property loss or damage**

(a) *Non-consensual use of privately owned premises*

30. As indicated in the earlier report of the Secretary-General, there has frequently been the need for a peacekeeping operation to take temporary possession of privately owned premises in the host State owing to the failure or inability of the host Government to provide the peacekeeping operation, free of charge, with the premises or facilities necessary for the conduct of its operational and administrative activities and for the accommodation of its members.[15] Although taking of possession in such circumstances is justified, the Organization nevertheless considers itself liable to pay the private owner adequate compensation for the loss of use or rental income, or for physical damage caused to such premises, while maintaining its right to seek reimbursement from the Government.[16] The question is what constitutes in appropriate cases adequate compensation or fair rental for the premises.

  (i) *Compensation limited to fair rental value prior to United Nations deployment*

31. In determining the fair rental value of the occupied premises, it is suggested that the local rental market prices that prevailed prior to the deployment of the peacekeeping operation be adopted as a basis for compensation. Given that the deployment of such an operation creates an increased demand for rental premises in the local market, with a resulting increase in rental prices, the advantage of determining the fair rental value prior to United Nations deployment is obvious. The fair rental value of the premises would normally be established by a United Nations pre-mission technical survey team relying on information maintained by United Nations agencies, Government institutions, non-governmental organizations, private associations, property owners and tenants, or any other available information.

  (ii) *Compensation not to exceed a maximum ceiling amount payable per square metre or per hectare*

32. Another method of calculating compensation may be to establish a maximum monthly rent expressed in terms of amounts for each square metre of building space or hectare of land for use throughout the entire mission area. Maximum ceiling rates which for particular occupied properties could be lower, depending on the condition of the property, would be established for residential and commercial premises and, if appropriate, vacant land, throughout the entire mission area. The respective rates would be established by the United Nations pre-mission technical survey team, based upon whatever relevant information is available, such as rental prices paid by the host Government for similar premises.

(b) *Physical loss or damage to premises and land*

33. Physical loss or damage beyond reasonable wear and tear caused to State-owned or privately owned premises by members of a peacekeeping operation, either in connection with their temporary occupation of such premises or in the performance of their official duties, entails the liability of the Organization to pay compensation. Such compensation should, in principle, cover the repair costs of the damage caused to the building or the land. Given the nature of the property and the difficulties in attributing in advance a ceiling amount for the costs of repairing the damage to property, it is suggested that the amount of compensation payable be linked to the rental value of such premises prior to United Nations deployment, and if capital was invested in refurbishing the premises, in accordance with the rental value of the premises prior to its refurbishment, provided that the cost of repairing the damage exceeds that of improvements.

34. It is therefore proposed to establish limits on the amount of compensation payable for the repair of property by reference to:

  (a) The equivalent of a number of months of rental value (for example, two months) or a fixed percentage of the rental amount payable for the period of United Nations occupancy; or, if the loss or damage caused to the premises by members of a peacekeeping operation did not arise from their temporary

   occupation or use thereof, the rental amount that would otherwise be payable for leasing premises of that kind; or

 (b) A fixed percentage of the cost of repair.

 (c) *Personal property*

35. In addition to its liability for loss or damage to premises, whether or not occupied by a peacekeeping operation, the Organization assumes liability for loss or damage to personal property of third parties arising from the activities of the operation or in connection with the performance of official duties by its members.

36. In considering the criteria for calculating limits to compensation for loss or damage to personal property, the Secretary-General has examined the option of establishing a maximum compensable amount for all loss or damage incurred to property by an individual or family household resulting from one incident, or alternatively, a specific amount for individual property items. Given the different kinds of personal property which may be lost or damaged in the context of a peacekeeping operation, it was concluded that a fixed financial limitation of a general application would be extremely difficult to establish in advance. A specific ceiling amount for individual items was considered. Such a method is established for loss of or damage to personal effects of United Nations staff members attributed to their service and of military and police observers on assignment.[17] However, it was concluded that such a list of items consisting of a watch, radio, typewriter, video camera, personal computer or cash was not representative of the kind of third-party property likely to be damaged in the context of peacekeeping operations. Given the difficulties of establishing a maximum ceiling according to both options, the Secretary-General proposes that the amount of compensation offered should cover the reasonable costs of repair or replacement of the personal property damaged.[18]

## IV. Modalities of establishing the financial and temporal limitations in legally binding instruments

37. Financial limitations on the liability of the Organization, though justified on economic, financial and policy grounds, constitute an exception to the general principle that when tortious liability is engaged compensation should be paid with a view to redressing the situation and restoring it to what it had been prior to the occurrence of the damage. The need to establish these limitations in a legally binding manner is, therefore, imperative. The United Nations must ensure that potential claimants, whether the host State or the individual, consent to the limitations or are otherwise bound by them regardless of their consent.

38. In considering the various modalities by which the limitations on United Nations liability may be established in a legally binding manner, the Secretary-General has concluded that the following are both necessary and sufficient:

 (a) A General Assembly resolution;

 (b) A liability clause in the status-of-forces agreement;

 (c) Similar provisions in the terms of reference of the claims review board.

39. A General Assembly resolution stipulating the temporal and financial limitations is necessary to give the Organization the legislative authority for limiting its liability vis-à-vis Member States. A General Assembly resolution on the limitation of the financial liability of the Organization in the context of peacekeeping operations would be taken within its budgetary authority under Article 17 of the Charter of the United Nations. Article 17 entrusts the Assembly with the control over the finances of the Organization, the levying of the amounts necessary to defray the costs of carrying out its functions and the apportionment of such expenses among Members of the Organization in a legally binding manner. The budgetary authority of the Assembly to determine the expenses of the Organization also includes the power to limit such

    expenses in the form of a limited financial liability. Of course, such a limitation among Members of the Organization does not preclude any additional liability that the host State may assume for claims (see para. 12).

40.   A liability clause in the status-of-forces agreement would ensure that in the relationship between the Organization and the host country, the temporal and financial limitations on the liability of the Organization would be binding within the territory of the host State on the basis of its express consent. The liability clause would set out the principles of the limitations and incorporate them in the agreement by reference to the General Assembly resolution limiting the Organization's liability. It would read as follows:

> "Third party claims for property loss or damage and for personal injury, illness or death arising from or directly attributed to the peacekeeping operation, except for those arising from 'operational necessity', and which cannot be settled through the internal procedures of the United Nations, shall be settled by the United Nations in the manner provided for in article 51 of the present agreement, provided that the claim is submitted within six months following the occurrence of the loss, damage or injury, or, if the claimant did not know or could not have reasonably known of such loss or injury, within six months from the time he had discovered them, but in any event not later than one year after the termination of the mandate of the operation. Upon determination of liability, the United Nations shall pay compensation within the financial limitations approved by the General Assembly in its resolution ...".

41.   Temporal and financial limitations along the lines adopted by the General Assembly should also be included in the terms of reference of the local claims review boards as a basis for their jurisdiction. As such they would be binding upon any potential claimant who would choose to institute proceedings before such boards.

## V. Conclusions

42.   The present report concludes the Secretary-General's review and analysis of the principles of United Nations liability for activities of United Nations peacekeeping operations, the existing procedures for settling third-party claims and their modifications, and limitations on the liability of the Organization in time and amount of damages.

43.   The analysis of article 51 of the model status-of-forces agreement has revealed that the advantages and disadvantages of a mechanism which has never been activated cannot be effectively evaluated. In principle, however, the standing claims commission reflects the practice of the Organization under article 29 of the Convention on the Privileges and Immunities of the United Nations, and until it is proved in practice to be ineffective, it should be retained in the status-of-forces agreement as an option for potential claimants.

44.   The scope of application of temporal and financial limitations has been delineated. A time limit of six months for the submission of claims is proposed, running from the time the damage was caused, or from the time it was discovered by the claimant, and in any event not later than one year after the termination of the mandate of the operation.

45.   In devising means of financial limitations, a distinction is drawn between personal injury, death or illness, and property loss or damage (including non-consensual use of premises), and the following measures of limitations are suggested:

    (a)   With regard to personal injury:

        (i)   Compensable types of injury or loss should be limited to economic loss, such as medical and rehabilitation expenses, loss of earnings, loss of financial support, transportation expenses associated with injury, illness or medical care, and burial expenses;

        (ii)   The compensation amount payable would be determined by reference to local compensation standards, not to exceed a maximum compensation ceiling of $50,000;

(b) With regard to property loss and damage:

(i) Compensation for non-consensual use of premises should be calculated on the basis of a fair rental value in the local market prior to United Nations deployment, or a maximum ceiling amount payable per square metre or per hectare;

(ii) Compensation for loss or damage to premises should be calculated on the basis of the equivalent of a number of months of the rental value, or a fixed percentage of the rental amount;

(iii) Compensation for personal property should cover the reasonable costs of repair or replacement.

46. The modalities proposed for establishing these limitations in a legally binding manner are a General Assembly resolution, a liability clause in the status-of-forces agreement and the terms of reference of the claims review boards. They would, respectively, provide for a legislative authority for limiting the liability of the Organization, a consensual basis for applying limited liability in the relationship between the Organization and host States, and a basis for the jurisdiction of the claims review boards in claims submitted by individuals against the Organization.

## VI. Actions to be taken by the General Assembly

47. The actions to be taken by the General Assembly are: (a) to endorse the modalities of establishing the financial and temporal limitations in legally binding instruments proposed in section IV and (b) to adopt a resolution stipulating the temporal and financial limitations of the Organization.

*Notes*

[1] In the present report, reference to the status-of-forces agreement includes also the status-of-mission agreement.

[2] However, the Secretary-General would propose the deletion from article 51 of the model agreement of the option of an appeal on the standing commission's award. The appeal to a tribunal, as provided for in article 53 of the model agreement, foresees a very similar procedure and composition to that of the standing claims commission, and may in fact be seen as a duplication of the proceedings in the standing claims commission. It is, accordingly, suggested that the following words be deleted from the penultimate sentence of article 51:

"unless the Secretary-General of the United Nations and the Government permit an appeal to a tribunal established in accordance with paragraph 53."

Similarly, in article 53 of the model agreement, the following words should be deleted from the first sentence:

"and any appeal that both of them agree to allow from the award of the claims commission established pursuant to paragraph 51".

[3] Claims excluded from this study, such as claims arising from accidents involving United Nations vehicles, contractual claims or claims arising from off-duty acts or activities of members of a peacekeeping operation not relating to official duties (see A/51/389, note 1) are obviously not subject to the financial and temporary limitations proposed in the present report.

[4] See A/51/389, paras. 13, 14 and 46 and note 5.

[5] Ibid., paras. 42 and 43.

[6] J. A. Jolowicz, *International Encyclopedia of Comparative Law*, vol. XI, chap. 13, paras. 61-63.

[7] The four-month time limit for the submission of compensation claims by military or police observers is included in the "Notes for guidance of military/police observers on assignment".

8. The rules governing compensation to members of commissions, committees or similar bodies in the event of death, injury or illness attributable to service with the United Nations are set forth in document ST/SGB/103/Rev.1. Article 9 of those rules provides that claims for compensation under the rules shall be filed within four months of the death of the commission member or the injury or onset of the illness; however, in exceptional circumstances, the Secretary-General may accept for consideration a claim made at a later date.

9. Items such as legal expenses and non-economic loss have normally not been compensated by the Organization, even where local law recognized them as compensable.

10. Headquarters regulation No. 4 on "Limitation of damages in respect of acts occurring within the Headquarters district", was adopted by the General Assembly in its resolution 41/210 of 11 December 1986. The types of injury or loss that are compensable in the Headquarters district in respect of personal injury or death include:

    (a) Health care expenses;

    (b) Rehabilitation expenses;

    (c) Loss of earnings;

    (d) Loss of financial support;

    (e) Cost of homemaker services;

    (f) Transportation expenses;

    (g) Burial expenses;

    (h) Legal expenses.

11. The United Nations Compensation Commission divided claims into six categories: departure from Iraq or Kuwait (category "A" awards: $2,500 minimum - $5,000 maximum per family); serious personal injury or death (category "B" awards: $2,500-$10,000 for single claimant, $10,000 limit per family for death); individual claims for damages up to $100,000 (category "C" awards: individual limit $100,000); individual claims for damages above $100,000 (category "D"); claims for corporations and other legal entities (category "E"); and claims from Governments and international organizations (category "F") (see S/AC.26/1991/1 and S/AC.26/1991/7/Rev.1).

12. In the practice of United Nations peacekeeping operations, third-party claimants have not been compensated for non-economic loss (mental pain and suffering) or for legal expenses. The exclusion of legal expenses from the compensable categories of loss would also conform to the approach followed by the United Nations Compensation Commission, which does not compensate claimants for attorneys' fees and other legal and related expenses incurred in the preparation of their claims to the Commission.

13. In respect of the compensation entitlements of staff members for personal injury, death or illness, see appendix D to the United Nations Staff Rules entitled "Rules governing compensation in the event of death, injury or illness attributable to the performance of official duties on behalf of the United Nations".

14. See ST/SGB/103/Rev.1.

15. See A/51/389, paras. 9-12 and 46.

16. Ibid., para. 12.

17. See administration instruction ST/AI/149/Rev.4 on compensation for loss of or damage to personal effects attributable to service. This instruction is usually incorporated by reference in the "Notes for guidance of military/police observers on assignment" issued for a particular peacekeeping operation.

18. It would, of course, be possible to establish a somewhat arbitrary overall limit on the Organization's liability for personal property loss. Such a limit could be geared to a defined percentage of the Organization's limit on liability for personal injury, for example 10 per cent (i.e. maximum of $5,000).

# Annex
# Consolidated claim form for third-party personal injury or death and/or property damage or loss

**Part 1: Identification of claimant** (Attach documentation confirming your identity, such as a certified photocopy of your passport or national identity card)

1. Claimant's full name: Family name _____   First name _____
2. Sex: Male ___ Female ___   3. Status: Single ___ Married ___ Divorced ___ Widowed ___
4. Nationality: _____
5. Date of birth (Day/Month/Year):
6. Place of birth (City/Town/Country):
7. Occupation and employer's name:
8. Earnings during the twelve (12) months prior to the occurrence of the personal injury/death and/or property loss/damage for which the claim is being submitted (specify currency):
9. Present residence:

   Street:

   City/Town:

   Area:

   Country:
10. Mailing address (if different than present residence address):

    Street/P.O. Box:

    City/Town:

    Area:

    Country:
11. Telephone number: Home _____ Work _____   12. Fax number: _____

**Part 2: Identification of victim (injured, deceased or damaged party)**
(Complete only if the victim is a different person than the claimant)

1. Relationship of victim to claimant: Spouse ___ Child ___ Parent ___
   (Attach documentation to show family relationship to victim, such as a certified photocopy of a marriage document, birth certificate or any other official record)
2. Victim's full name: Family name _____ First name _____
3. Victim's sex: Male ___ Female ___   4. Victim's status: Single ___ Married ___ Divorced ___ Widowed ___
5. Victim's nationality: _____
6. Victim's date of birth (Day/Month/Year):
7. Victim's place of birth (City/Country):
8. Victim's occupation and name of victim's employer:

9. Victim's earnings during the twelve (12) months prior to the occurrence of the personal injury/death and/or property loss/damage for which the claim is being submitted (specify currency):

10. Victim's present residence:

    Street:

    City/Town:

    Area:

    Country:

11. Victim's mailing address (if different than present residence address):

    Street/P.O. Box:

    City/Town:

    Area:

    Country:

12. Victim's telephone number:  Home _____   Work _____

13. Victim's fax number: _____

## Part 3: Nature and amount of claim

1. Indicate whether you are presenting a claim for any of the following by inserting a check in the applicable space:

    a. Personal injury ___ (please also complete part 4/section A below)

    b. Death ___ (please also complete part 4/section B below)

    c. Damage/loss to real property (such as land or structures) ___ (please also complete part 4/section C below)

    d. Damage/loss to personal property (such as clothing, personal effects, household furnishings or motor vehicle) ___ (please also complete part 4/section D below)

2. Indicate whether the claim relates to any of the following by inserting a check in the applicable space:

    a. An accident involving a United Nations vehicle ___

    b. An accident involving a non-United Nations vehicle ___

    c. Premises/land occupied by the United Nations under a lease agreement ___

       (Attach a certified photocopy of the signed lease agreement)

    d. Other ___

3. Indicate the total amount of the compensation claimed (specify currency) for any of the following by inserting the figure in the applicable space:

    a. For personal injury: _____

    b. For death: _____

    c. For damage/loss to real property: _____

    d. For damage/loss to personal property: _____

**Part 4: Particulars of claim** (Complete only the section(s) below that is applicable to the claim)

### Section A. Claim for personal injury

1. Provide the following details relating to the occurrence of the personal injury:
    a. Date and time when injury occurred:
    b. Place where injury occurred:
    c. Identity of any United Nations personnel who were involved (give names, identification numbers, nationality, component, etc., to the extent possible):
    d. Identity of any witnesses (give names, addresses and telephone numbers, to the extent possible):
    e. Licence plate number of any United Nations vehicle involved:
    f. Licence plate number of any non-United Nations vehicle involved and name and address of insurance company and policy number (if known):

2. Describe the nature and extent of the injury incurred:

    (Attach appropriate supporting documentation, such as certified photocopies of medical reports from treating physicians and hospitals or insurance records showing the nature and extent of injury, the nature and extent of treatment and the prognosis)

3. Provide the name, address and telephone number of any physician who examined or provided treatment for the injury and any hospital where the injured was admitted:

4. Describe the cause and circumstances of the injury incurred:

    (Attach a separate statement together with a diagram of the accident/incident if appropriate and, where possible, (1) a signed statement from any witness(es), (2) a certified photocopy of any local police investigation report on the injury and (3) photographs relating to the injury)

5. Indicate whether the claimant/victim carries an insurance policy to cover the injury and, if so, specify:
    a. Name and address of insurance company:
    b. Insurance policy number:
    c. Whether any claim has been filed with the insurance carrier in this case and, if so, what action has been taken by the carrier with reference to the claim, including amounts received from the insurance company, along with settlement documentation provided by the insurance company:

6. Provide a breakdown of the total amount of compensation sought with appropriate justification:

    (Attach all relevant supporting documentation, such as signed itemized invoices for medical and hospital expenses actually incurred and receipts of payment)

### Section B. Claim for death

1. Provide the following details relating to the occurrence of the death:
    a. Date and time when the death occurred (Attach supporting documentation, such as a certified photocopy of a death or burial certificate):
    b. Place where the death occurred:
    c. Identity of any United Nations personnel who were involved (give names, identification numbers, nationality, component, etc., to the extent possible):
    d. Identity of any witnesses (give names, addresses and telephone numbers, to the extent possible):
    e. Licence plate number of any United Nations vehicle involved:
    f. Licence plate number of any non-United Nations vehicle involved and name and address of insurance company and policy number (if known):

2. Provide the name, address and telephone number of any physician who examined or provided treatment to the deceased and any hospital where the deceased was admitted:

3. Describe the cause and circumstances of the death:

   (Attach a separate statement together with a diagram of the incident/accident if appropriate and, where possible, (1) a signed statement from any witness(es), (2) a certified photocopy of any local police investigation report on the death and (3) photographs relating to the death)

4. Indicate whether the claimant/victim carries an insurance policy to cover the death and, if so, specify:

   a. Name and address of insurance company:

   b. Insurance policy number:

   c. Whether any claim has been filed with the insurance carrier in this case and, if so, what action has been taken by the carrier with reference to the claim, including amounts received from the insurance company, along with settlement documentation provided by the insurance company:

5. Provide a breakdown of the total amount of compensation sought with appropriate justification:

   (Attach all relevant supporting documentation, such as signed itemized invoices for medical, hospital or burial expenses actually incurred and receipts of payment)

## Section C. Claim for damage/loss to real property

1. Provide the following details relating to the occurrence of the damage/loss to real property:

   a. Date and time when damage/loss occurred:

   b. Place where damage/loss occurred:

   c. Identity of any United Nations personnel who were involved (give names, identification numbers, nationality, component, etc., to the extent possible):

   d. Identity of any witnesses (give names, addresses and telephone numbers, to the extent possible):

   e. Licence plate number of any United Nations vehicle involved:

   f. Licence plate number of any non-United Nations vehicle involved and name and address of insurance company and policy number (if known):

2. Provide the following details regarding the real property involved:

   a. Type of property that was damaged or destroyed (such as residential structure, commercial structure or land):

   b. Name of owner of property as it appears on the title (Attach a certified photocopy of title and any other proof of ownership):

   c. Date of purchase or acquisition of property by claimant/victim and per cent of his/her ownership (If ownership is less than 100 per cent, attach a statement identifying the other owners and their respective percentages of ownership):

   d. Address where property is located:

      Street No.:

      City/Town:

      Area:

      Country:

   e. Official registration number (block, lot, house, building), if available:

   f. Age of the structure and its condition prior to the damage/loss (Attach appropriate documentary evidence to show the prior condition, including photographs if available):

    g.    Floor space of structure or size of land (specify in square metres), as applicable:

    h.    Purchase cost of property by claimant/victim:

    i.    Estimated cost of repair work not yet completed (Attach appropriate documentation showing repair cost estimates from one or more competent and independent companies):

    j.    Actual cost of any repair work already completed (Attach appropriate documentation showing repair expenses actually incurred, such as signed itemized invoices and receipts of payment):

3.    Describe the cause and circumstances of the loss/damage to the property:

    (Attach a separate statement together with a diagram of the incident/accident if appropriate and, where possible, (1) a signed statement from any witness(es), (2) a certified photocopy of any local police investigation report on the damage/loss and (3) photographs of the property in its damaged condition)

4.    Indicate whether the claimant/victim carries an insurance policy to cover the loss/damage to the property and, if so, specify:

    a.    Name and address of insurance company:

    b.    Insurance policy number:

    c.    Whether any claim has been filed with the insurance carrier in this case and, if so, what action has been taken by the carrier with reference to the claim, including amounts received from the insurance company, along with settlement documentation provided by the insurance company:

5.    Provide a breakdown of the total amount of compensation sought with appropriate justification:

    (Attach all relevant supporting documentation)

## Section D. Claim for damage/loss to personal property

1.    Provide the following details relating to the occurrence of the damage/loss to personal property:

    a.    Date and time when damage/loss occurred:

    b.    Place where damage/loss occurred:

    c.    Identity of any United Nations personnel who were involved (give names, identification numbers, nationality, component, etc., to the extent possible):

    d.    Identity of any witnesses (give names, addresses and telephone numbers, to the extent possible):

    e.    Licence plate number of any United Nations vehicle involved:

    f.    Licence plate number of any non-United Nations vehicle involved and name and address of insurance company and policy number (if known):

2.    Provide the following details regarding the personal property involved:

    a.    Identify each property item(s) that was damaged under the following category headings (Attach appropriate documentary evidence establishing ownership of the property items):

    Clothing:

    Personal effects:

    Household furnishings:

    Motor vehicle:

    Other:

    For this purpose, attach a list of the property items under each applicable category and specify the following for each item:

    (1)    Date of purchase by claimant/victim, purchase price and place of purchase (Attach signed invoice and receipt of payment):

(2) Age of item and its condition prior to the damage/loss (Attach appropriate documentary evidence to show the prior condition, including photographs if available):

(3) A description of the extent of the damage/loss to the item:

(4) Estimated cost of repair work not yet completed (Attach appropriate documentation showing repair cost estimates from one or more reputable and independent companies):

(5) Actual cost of any repair work already completed (Attach appropriate documentation showing repair expenses actually incurred, such as signed itemized invoices and receipts of payment):

(6) Estimated cost of replacement of any item that cannot be repaired (Attach appropriate documentation showing replacement cost estimates for a comparable item from one or more competent and independent companies):

(7) Actual cost of replacement of any non-repairable item that has already been purchased (Attach appropriate documentation showing the cost of the replacement item actually paid, such as a signed itemized invoice and receipt of payment, and its comparability to the original item)

3. Describe the cause and circumstances of the loss/damage to the property:

(Attach a separate statement together with a diagram of the incident/accident if appropriate and, where possible, (1) a signed statement from any witness(es), (2) a certified photocopy of any local police investigation report on the damage/loss and (3) photographs of each property item in its damaged condition)

4. Indicate whether the claimant/victim carries an insurance policy to cover the loss/damage to the property and, if so, specify:

   a. Name and address of insurance company:

   b. Insurance policy number:

   c. Whether any claim has been filed with the insurance carrier in this case and, if so, what action has been taken by the carrier with reference to the claim, including amounts received from the insurance company, along with settlement documentation provided by the insurance company:

5. Provide a breakdown of the total amount of compensation sought with appropriate justification:

   (Attach all relevant supporting documentation)

## Part 5: Signature and affirmation

1. I hereby acknowledge that, in calculating the amount of compensation payable, consideration shall be given by the United Nations to such amounts as the claimant/victim might have recovered or might be entitled to recover under insurance arrangements or from any other source.

2. I hereby affirm that, to the best of my knowledge, the information that has been presented in this claim is accurate.

3. I hereby further affirm that, if I am presenting this claim on behalf of a family member (spouse, child, parent), I am duly authorized to submit the claim.

_____
Signature of claimant

_____
Name of claimant
(Print in block letters)

_____
Date

_____
Place

CITY OF _____    COUNTRY OF _____

On the _____ day of _____ 19___ before me personally came _____
(Claimant's name)

to me known, and known to me to be the individual described in, and who executed the foregoing instrument, and he acknowledged to me that he executed the same.

_____
Notary Public