EXHIBIT 16

**OXFORD PUBLIC INTERNATIONAL LAW**
# Oxford Reports on International Law

## Drago v International Plant Genetic Resources Institute (IPGRI), Final Appeal Judgment, Case No 3718, Giustizia Civile Massimario, 2007, 2, ILDC 827 (IT 2007), 19th February 2007, Supreme Court of Cassation

**Date:** 19 February 2007
**Content type:** Domestic Court Decisions
**Jurisdiction:** Supreme Court of Cassation

**Citation(s):** Case No 3718 (Official Case No)
Giustizia Civile Massimario, 2007, 2 (Other Reference)
ILDC 827 (IT 2007) (OUP reference)
**Product:** Oxford Reports on International Law [ORIL]
**Module:** International Law in Domestic Courts [ILDC]

**Parties:** Drago Alberto
International Plant Genetic Resources Institute (IPGRI)

**Judges/Arbitrators:** Carbone Vincenzo (President); Corona Rafaele; Senese Salvatore; Altieri Enrico; Miani Canevari Fabrizio; Di Nanni Luigi Francesco; Vitrone Ugo; Morelli Mario Rosario; Graziadei Giulio

**Procedural Stage:** Final appeal judgment

**Previous Procedural Stage(s):**
Appeal judgment; *Drago v International Plant Genetic Resources Institute (IPGRI)* , n 3516 (Rome Court of Appeal); unreported, 30 August 2004
Trial judgment; *Drago v International Plant Genetic Resources Institute (IPGRI)* , Diritto del lavoro, 2002, II, 501 (Rome Tribunal), 12 December 2001

**Subject(s):**
Privileges — Right to a judge — Immunity from jurisdiction, absolute — Immunity from jurisdiction, international organizations — Immunity from jurisdiction, ratione materiae — Immunity from jurisdiction, relative — Immunity from jurisdiction, states — Treaties, interpretation — Consistent interpretation — Incorporation — Customary international law — Jurisdiction of states, domestic

**Core Issue(s):**
Whether IPGRI enjoyed immunity from jurisdiction with regard to employment disputes.

Whether the treaty provisions conferring jurisdictional immunity to international organizations prevailed over the fundamental principles contained in the Italian Constitution, 1948.

**Oxford Reports on International Law in Domestic Courts is edited by:**

Professor André Nollkaemper and Professor Erika de Wet, University of Amsterdam Center for International Law.

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

**Facts**

**F1** Mr Drago was a former employee of the International Plant Genetic Resources Institute (IPGRI) with a temporary employment contract. After termination of the working relationship, on 30 April 2000, Mr Drago launched an action with the Rome Tribunal claiming unfair dismissal and requesting reinstatement in service, and reparation.

**F2** The Rome Tribunal declined jurisdiction over the employment dispute on the basis of the immunity granted to IPGRI by Article 5 of the Agreement between the Italian Republic and the IPGRI relating to its Headquarters in Rome (10 October 1991) ('Headquarters Agreement') and ratified with Law n 67, 15 January 1994 (Italy). The decision was upheld by a judgment of the Rome Court of Appeal on 30 August 2004, which affirmed that the customary international rule on the immunity of foreign states was also applicable to international organizations.

**F3** Mr Drago challenged the judgment of the Rome Court of Appeal before the Court of Cassation on a number of grounds. First, he alleged violation and erroneous application of Articles 10 and 24 of the Italian Constitution and of the customary international rule on the jurisdictional immunity of states on the grounds that: (a) IPGRI enjoyed immunity from the jurisdiction of the host state pursuant to Article 5 of the Headquarters Agreement and not on the basis of customary international law; (b) the decision delivered by the Court of Appeal did not take account of the fact that IPGRI, contrary to the obligation enshrined in the Headquarters Agreement, did not make available or set up any judicial remedy for the resolution of employment disputes before January 2001, that is, when IPGRI recognized the jurisdiction of the Administrative Tribunal of the International Labour Organization; and (c) the customary international rule on the immunity of states was not applicable to international organizations with regard to employment disputes if the employee did not perform institutional functions.

**F4** Second, Mr Drago called for an evolutive interpretation of Law n 67 in order to exclude the jurisdictional immunity of IPGRI as a consequence of its failure to make available or set up an alternative independent and impartial remedy. For the same reason, that is, the lack of judicial protection against violations of employees' rights, Mr Drago alleged that Law n 67 was incompatible with Articles 6 and 13 of the Convention for the Protection of Human Rights and Fundamental Freedoms (4 November 1950) 213 UNTS 222, entered into force 3 September 1953 ('ECHR') and Article 47 of the Charter of Fundamental Rights of the European Union, OJ 200/C 364/01, European Union, 7 December 2000, which guarantee the right to a judge.

**Held**

**H1** IPGRI was not entitled to immunity in this instance because of its failure to provide an independent and impartial judicial remedy alternative to court proceedings in the host state for the resolution of employment disputes. Therefore, Italian jurisdiction was affirmed and the case was referred back to the Rome Tribunal for adjudication on the merits. (paragraphs 6.8, 7)

**H2** Under the well-established rule of customary international law *par in parem non habet jurisdictionem,* which was part of Italian law by virtue of Article 10 of the Italian Constitution, foreign states were entitled to immunity from court proceedings. Such immunity, however, was to be denied whenever foreign states engaged in acts having a purely private nature (*acta iure gestionis*) and not carried out in their capacity of sovereign entities (*acta iure imperii*).

**H3** The distinction between *acta iure gestionis* and *acta iure imperii* also applied to labour relationships. In various decisions, in fact, the Court of Cassation had clarified that Italian jurisdiction should be affirmed in relation to employment-related disputes which had no bearing on the organization and public functions of a foreign state. Instead, in the cases of disputes related to working relationships taking part in the sovereign functions of the state, jurisdiction should be declined. (paragraphs 6, 6.1, 6.2)

**H4** However, although international legal personality may have been attributed to international organizations by virtue of their constitutive treaties, it was not certain that the customary rule *par in parem non habet jurisdictionem* also applied to international organizations. Thus, the existence

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

of privileges and immunities to which an international organization might have been entitled before domestic courts could only be inferred from conventional instruments, such as the headquarters agreements signed by the organization and the host state. However, these treaties and the pertinent national measures of implementation must be in conformity with and, thus, should not prevail over, the principles of the constitutional legal order of the host state. (paragraphs 6.3, 6.5)

**H5**  In the case at hand, the relevant conventional rules conferring immunity from Italian jurisdiction to IPGRI were to be found in Article 5 of the Headquarters Agreement. This provision, as well as Law n 67, was not compatible with the fundamental right contained in Article 24 of the Italian Constitution (which established that everybody has the right to institute proceedings to protect his or her rights) because IPGRI did not fulfil its obligation, contained in Article 17 of the Headquarters Agreement, to provide an independent and impartial judicial remedy for the resolution of employment-related disputes. In the period prior to January 2001 (ie the period relevant on the facts of the case), when IPGRI accepted the jurisdiction of the Administrative Tribunal of the International Labour Organization, its employees, such as Mr Drago, could avail themselves only of an internal remedy that did not satisfy the fundamental requirements of independence and impartiality. (paragraphs 6.4–6.7)

Date of Report: 20 December 2007

**Reporter(s):** Alessandro Chechi

**Analysis**

**A1**  With this decision the Court of Cassation focused on the compatibility of the treaty provisions granting immunity from jurisdiction to international organizations with Article 24 of the Italian Constitution.

**A2**  The court affirmed Italian jurisdiction on the basis of an evolutive and articulated reasoning. First, it verified that, in the period under consideration, the members of IPGRI's staff did not have any effective remedies as an alternative to court proceedings in the host state for the protection of their rights. This meant, in the court's perspective, that the individual's right of access to a court conferred by the Italian Constitution was infringed. Second, the court used the result of its inquiry to interpret in an evolutive manner the law implementing the Headquarters Agreement: it affirmed that the fulfillment of the obligation to provide an alternative independent and impartial remedy was the *conditio sine qua non* for the application of the jurisdictional immunity. (paragraph 6.7)

**A3**  The Court of Cassation attempted to reconcile the fundamental principle of the protection of the rights and interests of individuals with the rule of immunity for international organizations. In doing so, it not only strengthened the existing jurisprudence, but it also increased dramatically the role of national judges. As a result, national judges were empowered to exclude on their own motion the application of the immunity rule whenever international organizations did not provide an independent and impartial remedy for the resolution of employment-related disputes, with no need to raise the matter before the Constitutional Court. Therefore, the organizations having their seats in Italy were now aware that their immunity from jurisdiction was subject to strict requirements and, if they wanted to benefit from it, they must comply with the conditions dictated by this judgment.

**A4**  Despite its merits, this decision lends itself to some criticisms. First, the application of this evolutive approach depends on the accuracy with which judges assess the existence, nature and effectiveness of the remedies set up by an organization for the resolution of labour disputes. Second, the court omitted to clarify whether the customary international rule on foreign state immunity could be applied in favour of the international organizations whose immunity was established in a multilateral treaty concluded by sovereign states and not by the organization itself. Third, the alleged violation of Articles 6 and 13 of the ECHR and of Article 47 of the Charter of Fundamental Rights of the European Union were not discussed, demonstrating that the Court preferred to resolve the questions at hand solely on the basis of the Italian Constitution.

Date of Analysis: 20 December 2007

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

Analysis by: Alessandro Chechi

**Instruments cited in the full text of this decision:**

*International*

Charter of Fundamental Rights of the European Union, OJ 200/C 364/01, European Union, 7 December 2000, p 1, Article 47

Agreement between the Italian Republic and the IPGRI relating to its Headquarters in Rome (10 October 1991), Articles 5, 17

Convention for the Protection of Human Rights and Fundamental Freedoms (4 November 1950) 213 UNTS 222; 312 ETS 5, entered into force 3 September 1953, Articles 6, 13

*Constitutions*

Constitution, 1948 (Italy), Articles 3, 10, 11, 24, 25, 36

**Cases cited in the full text of this decision:**

*Italian domestic courts*

Case concerning the constitutionality of Article 698, para 2, cod. proc. pen., and of Law n 225 of 26 May 1984, on extradition and protection of human rights, n 223 (Constitutional Court); RIDPP, 1996, 1119, 27 June 1996

*Food and Agriculture Organization of the United Nations v Colagrossi* , n 5942 (Court of Cassation, All Civil Sections); RDI, 1992, 407, 18 May 1992

*French Academy at Rome v Perrini* , n 5126 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 1994, 719; Foro it, 1994, I, 2074, 26 May 1994

*Secretariat to the Presidency of the Republic v Ruggi and anor* , n 12614 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 1998, 2592, 17 December 1998

*French School at Rome v Guadagnino* , n 120 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 1999, 546, 12 March 1999

*Piette v European University Institute* , n 149 (Court of Cassation, All Civil Sections); IYIL, 1999, 155, 18 March 1999

*Sovereign Military Order of Malta v Guidetti* , n 150 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 1999, 592; Foro i., 1999, I, 1822, 18 March 1999

*Kuna Kuwait Agency v Gitan Musa* , n 331 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 1999, 1342, 12 June 1999

*Centre International des Hautes Études Agronomiques Méditerranéennes (CIHEAM) v Anelli* , n 1150 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 2000, 2216, 7 November 2000

Carretti v Food and Agriculture Organization of the United Nations, n 1237 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 2004, 1, 23 January 2004

Opera Romana Pellegrinaggi v De Orsi, n 7791 (Court of Cassation, All Civil Sections); Giustizia Civile Massimario, 2005, 4, 15 April 2005

*Pistelli v European University Institute* , n. 20995 (Court of Cassation, All Civil Sections); ILDC 297 IT (2005); IYIL, 2005, 319, 28 October 2005

To access full citation information for this document, see the Oxford Law Citator record

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

**Decision - full text**

**Fatto**

Drago Alberto ha convenuto in giudizio l'IPGRI (Ente internazionale per le Risorse Fitogenetiche) esponendo di aver lavorato alle dipendenze di tale organismo internazionale con mansioni di segreteria, in base ad un contratto di lavoro che prevedeva la scadenza del rapporto al 30 aprile 1997, poi prorogata al 30 aprile 2000; con lettera del direttore generale dell'ente in data 28 gennaio 2000 gli era stata comunicata la cessazione del rapporto stesso alla suddetta scadenza. Il Drago ha chiesto al giudice adito di accertare, previa declaratoria dell'esistenza tra le parti di un rapporto di lavoro subordinato a tempo indeterminato, l'illegittimità del licenziamento così intimatogli, e di condannare l'IPGRI alla reintegrazione dell'attore nel posto di lavoro e al risarcimento del danno; in via subordinata, per l'ipotesi di difetto di giurisdizione del giudice italiano correlato alla domanda di reintegra, ha limitato la propria richiesta alla pretesa risarcitoria. Il Tribunale adito ha dichiarato il difetto di giurisdizione del giudice italiano, sul rilievo dell'immunità riconosciuta all'Istituto in base all'accordo ratificato con L. 15 gennaio 1994, n. 67; tale decisione è stata confermata dalla Corte di Appello di Roma con la sentenza oggi impugnata, motivata con il richiamo alla regola consuetudinaria che assimila le organizzazioni internazionali agli Stati esteri per l'immunità dalla giurisdizione, e quindi con l'affermazione del difetto di giurisdizione del giudice italiano in ordine alla controversia avente ad oggetto l'accertamento della illegittimità del licenziamento ai fini del ripristino del rapporto, anche se con domande di contenuto meramente patrimoniale, consequenziali all'accertamento dell'illegittimità del recesso. Avverso tale sentenza il Drago propone ricorso per cassazione con cinque motivi, al quale l'IPGRI resiste con controricorso. Le parti hanno depositato memorie.

**Diritto**

**1.** Con il primo motivo, mediante la denuncia di violazione e falsa applicazione degli artt. 10 e 24 Cost. e della norma di diritto consuetudinario sulla giurisdizione, si critica la decisione della Corte d'Appello, che ha erroneamente ravvisato la fonte della immunità dell'IPGRI in una norma consuetudinaria sorta precedentemente all'entrata in vigore della Costituzione Italiana (così da escludere ogni problema di compatibilità con i precetti costituzionali). Si osserva che la regola della immunità è invece posta da una norma pattizia, in relazione all'accordo di sede stipulato con l'organizzazione internazionale e ratificato con L. 15 gennaio 1994, n. 67. Contestata la prevalenza quale diritto speciale della pretesa norma consuetudinaria previgente alla Costituzione italiana, si ripropone, quindi, la questione di legittimità costituzionale della Legge citata, per contrasto con gli artt. 3, 11, 24, 25 e 36 Cost., in relazione alla impossibilità per l'attuale ricorrente di adire qualsiasi giudice diverso da quello italiano. Infatti per tutto il periodo di svolgimento del rapporto di lavoro e all'epoca della sua cessazione l'IPGRI non ha aderito ad alcun organismo internazionale di composizione delle controversie di lavoro con i propri dipendenti, nè ha costituito in seno alla propria organizzazione idonee forme di impugnazione dei provvedimenti adottati dal Direttore generale (essendo normativamente esclusa la possibilità di adire il Collegio arbitrale interno per questioni attinenti al rinnovo del rapporto di lavoro e ai provvedimenti disciplinari).

**2.** Con il secondo motivo, con cui si denuncia la violazione e falsa applicazione della L. 15 gennaio 1994, n. 67, si prospetta una interpretazione adeguatrice di tale normativa in relazione alla garanzia di valori costituzionalmente protetti, che condiziona l'immunità giurisdizionale riconosciuta all'IPGRI, da ritenersi pertanto inoperante per il periodo in questione a causa della inosservanza dell'obbligo dell'ente di individuare adeguate forme di tutela dei diritti dei propri dipendenti.

**3.** Con il terzo motivo, denunciandosi la violazione degli artt. 6 e 13 della Convenzione Europea dei diritti dell'uomo e dell'art. 47 della Carta dei diritti fondamentali dell'Unione Europea, si sostiene l'incompatibilità della L. n. 67 del 1994 con il diritto comunitario.

**4.** Con il quarto motivo viene denunciata la violazione e falsa applicazione della norma consuetudinaria relativa alla immunità giurisdizionale "ristretta", sostenendosi che nella specie sussiste comunque la giurisdizione del giudice italiano, avuto riguardo alla natura delle mansioni

svolte dal Drago che non comportavano alcuna partecipazione funzionale all'attività pubblicistica dell'ente– e alla limitazione dell'oggetto della domanda dell'attore.

**5.** Con l'ultimo motivo di ricorso si denuncia la contraddittorietà della motivazione della sentenza impugnata, che fa riferimento alla norma consuetudinaria generale relativa all'immunità degli stati esteri, mentre d'altro canto risolve la questione posta all'esame del giudice dell'appello in applicazione della norma pattizia.

**6.** I motivi, che vanno esaminati congiuntamente perchè attinenti all'unica questione della giurisdizione, meritano accoglimento per le seguenti considerazioni.

**6.1.** A norma dell'art. 10 Cost., comma 1, l'ordinamento giuridico italiano si conforma alle norme del diritto internazionale generalmente riconosciute e da questa norma la giurisprudenza fa derivare l'immunità degli Stati esteri dalla giurisdizione italiana, in base ad una consuetudine internazionale intesa al rispetto dell'altrui sovranità. Tale immunità riguarda i rapporti giuridici estranei all'ordinamento italiano, o perchè gli Stati stranieri agiscono come soggetti di diritto internazionale o perchè agiscono come titolari di una potestà di imperio nell'ordinamento proprio ossia come enti sovrani. L'immunità consuetudinaria si estende agli altri soggetti che rivestono, in senso ampio, la qualità di organi dello Stato estero (enti pubblici, comunque denominati: vedi Cass. Sez. Un. 18 marzo 1999, n. 150; 12 giugno 1999, n. 331), compresi, in particolare, gli enti e istituti di carattere culturale (vedi Cass. Sez. Un. 26 maggio 1994, n. 5126 – Accademie de France a Rome – 9 settembre 1997, n. 8768; 12 marzo 1999, n. 120 – Ecole francaise de Rome – 9 ottobre 1998, n. 9995 – The British Institute of Florence).

**6.2.** I confini dell'area dell'immunità sono segnati dalla non riconducibilità degli atti ai poteri sovrani, compiuti cioè non iure imperii ma iure gestionis. Con riguardo a questa distinzione e con specifico riferimento ai rapporti di lavoro, dopo alcune incertezze, la giurisprudenza di queste Sezioni unite si è orientata nel senso che, nei confronti degli enti estranei all'ordinamento italiano perchè enti di diritto internazionale e immuni dalla giurisdizione, il giudice italiano è titolare della potestà giurisdizionale per tutte le controversie inerenti a rapporti di lavoro che risultino del tutto esterni alle funzioni istituzionali e all'organizzazione dell'ente, costituiti, cioè, nell'esercizio di capacità di diritto privato (vedi Cass. Sez. Un. 7 novembre 2000, n. 1150); per gli altri rapporti, il medesimo giudice è carente della potestà giurisdizionale atta ad interferire nell'assetto organizzativo e nelle funzioni proprie degli enti, mentre può emettere provvedimenti di contenuto esclusivamente patrimoniale. Ed ha precisato ulteriormente che, tra i provvedimenti di natura esclusivamente patrimoniale, non può comprendersi la sentenza di condanna ad un pagamento che debba essere logicamente preceduta da un accertamento del danno da interruzione di un rapporto di lavoro a tempo indeterminato, con prestazioni lavorative attinenti ai fini istituzionali dell'ente datore di lavoro: infatti tale sentenza, una volta passata in giudicato, farebbe stato sia sull'obbligo di pagare, sia (questione pregiudiziale logica) sull'obbligo di ricevere a tempo indeterminato le prestazioni lavorative (Cass., Sez. Un. 15 aprile 2005, n. 7791).

**6.3.** Considerazioni diverse valgono per lo status giuridico di organizzazioni internazionali costituite dagli Stati, alle quali sia riconosciuta personalità di diritto internazionale e la conseguente capacità di instaurare rapporti giuridici anche con gli Stati. In difetto di esplicite definizioni pattizie, i caratteri distintivi della personalità vengono sovente individuati proprio nelle immunità e privilegi conferiti; si ritiene, tuttavia, che la capacità di partecipare a certe relazioni e di essere centro di imputazione di effetti nell'ordinamento internazionale, sulla base delle previsioni delle convenzioni istitutive, non comporta in tutti i casi l'equiparazione agli Stati, potendo anche accadere che all'organizzazione non sia garantita l'immunità dalla giurisdizione nazionale. Fondamento di tale convincimento è che, per le organizzazioni internazionali sicuramente in possesso della personalità di diritto internazionale, non è sicura la formazione di una consuetudine che permetta di estendere a tutte il principio par in parem non habet iurisdictionem, operante tra gli Stati e implicitamente richiamato nell'art. 10 Cost., comma 1. Nell'impossibilità di porre su un piano di parità assoluta Stati ed organizzazioni internazionali, privilegi ed immunità spettanti a queste possono derivare così solo da specifiche fonti scritte e per il tramite dell'art. 11 Cost. (v. in questo senso Cass. Sez. Un. 18 marzo 1999 n. 149, 28 ottobre 2005 n. 20995). Queste fonti sogliono consistere non soltanto in accordi tra Stati, ossia tra i soggetti che costituiscono l'organizzazione e

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

che vengono chiamati Stati contraenti, ma anche come nel caso di specie nei cosiddetti "accordi di sede", stipulati fra l'organizzazione, priva di un proprio territorio, e lo Stato in cui essa stabilisce la sua sede, principale o secondaria.

**6.4.** Con L. 15 gennaio 1994, n. 67 è stato ratificato l'accordo tra la Repubblica Italiana e l'Istituto internazionale per le risorse fitogenetiche (IPGRI) relativo alla sede centrale dell'IPGRI, fatto a Roma il 10 ottobre 1991, nonchè lo scambio di note effettuato tra le stesse parti l'8/9 febbraio 1993. L'art. 5 dell'accordo stabilisce che "l'Istituto godrà dell'immunità giurisdizionale di qualsiasi genere, con riferimento a qualsiasi atto sia di natura pubblica che privata, tranne in quei casi particolari in cui il Direttore Generale vi abbia rinunciato espressamente".

**6.5.** Occorre verificare la conformità di questa disposizione che riconosce univocamente l'immunità dell'ente dalla giurisdizione italiana estesa anche alle controversie relative ai rapporti di lavoro con i suoi dipendenti alla garanzia costituzionale della tutela giudiziaria, di cui all'art. 24 Cost., che rappresenta un principio cardine dell'ordinamento (cfr. Cass. Sez. Un. 17 dicembre 1998 n. 12614, n. 149/1999 cit.). Ora, tale principio cardine cede di fronte al principio consuetudinario par in parem non habet iurisdictionem, riferito agli Stati, in quanto il principio riflette l'eguale sovranità delle organizzazioni statuali che costituisce fondamento universalmente accettato dalla comunità internazionale, al quale la nostra Costituzione dichiara di sottomettersi (art. 10). Ma una tale prevalenza non ha più giustificazione quando il sacrificio del "principio cardine" della Costituzione discende, non già dal fondamento dello stesso ordine internazionale, ma da un impegno liberamente assunto dalla nostra Repubblica attraverso la sottoscrizione di una convenzione. In questo caso, proprio la necessità che l'impegno assunto si traduca in una legge di ratifica per essere vincolante per i giudici, porta in primo piano i principi fondamentali dell'ordinamento costituzionale, con i quali l'impegno deve essere compatibile, pena l'invalidità della legge di ratifica (vedi Corte cost. n. 223 del 1996). Di conseguenza, l'esclusione in radice del diritto degli interessati alla tutela giurisdizionale dinanzi ad un organo indipendente delle situazioni giuridiche nascenti in un certo ambito dei rapporti, deve indurre a dubitare della legittimità costituzionale della legge di ratifica di convenzioni recanti simili previsioni, ovvero, ove sia possibile, a pervenire a risultati interpretativi costituzionalmente orientati. Alla stregua di tali criteri, la giurisprudenza di questa Corte ha ritenuto che l'immunità riconosciuta ad un ente internazionale non ponga dubbi di legittimità costituzionale quando la convenzione che sottrae quelle situazioni alla cognizione del giudice italiano assicuri tuttavia la tutela giurisdizionale delle stesse dinanzi ad un giudice imparziale e indipendente, sia pure scelto con procedure e criteri diversi da quelli vigenti nell'ordinamento nazionale: cfr. Cass. Sez. Un. 18 maggio 1992 n. 5942, 23 gennaio 2004 n. 1237, in relazione all'attribuzione alla cognizione del Tribunale amministrativo dell'OIL delle controversie promosse dai dipendenti della FAO nei confronti del datore di lavoro per la tutela dei loro diritti; Cass. Sez. Un. 20995/2005 cit., con riguardo all'attuazione della convenzione istitutiva dell'Istituto Universitario Europeo mediante la previsione di uno strumento di composizione delle controversie dinanzi ad un'apposita Commissione (che non costituisce un mero rimedio interno, anche perchè la competenza di tale commissione può essere sostituita da quella della Corte di Giustizia delle Comunità Europee).

**6.6.** Nel caso in esame non si ravvisano, con riguardo al rapporto di lavoro di cui è causa, i presupposti di tale garanzia. E' pacifico, infatti, che solo nel gennaio 2001 l'IPGRI ha aderito all'OIL e al sistema giurisdizionale del Tribunale Amministrativo del Lavoro, al quale non potrebbe essere dunque sottoposto l'esame della controversia, posto che il regolamento di tale organismo prevede la irricevibilità dei ricorsi aventi ad oggetto diritti i cui fatti costitutivi siano anteriori alla adesione dell'ente. Un regolamento interno dell'ente (denominato in inglese Personnel Policy Manual, corrispondente a "regolamento del personale") prevede per il riesame dei provvedimenti disciplinari un organo, denominato Appeals Committee (in italiano "commissione per i reclami") al quale possono essere sottoposti anche reclami per questioni non disciplinari. Si tratta di un mero rimedio interno, mancando per tale strumento i caratteri propri di una tutela giurisdizionale nel senso sopra indicato. Va comunque rilevato che lo stesso manuale (par. 114.02) esclude espressamente la possibilità di affidare a questa istanza l'esame di reclami relativi alla scadenza del contratto di lavoro del dipendente ("action based on expiration of an appointment by its own terms is not disciplinary in character, nor may such action form the basis of grievance": tradotto in

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014

italiano, "l'azione basata sulla scadenza dell'incarico secondo le condizioni dello stesso non ha carattere disciplinare, nè tale azione può costituire la base di un reclamo).

**6.7.** L'incompatibilità della disciplina in esame con il principio costituzionale sopra richiamato, per l'esclusione del diritto dei dipendenti dell'ente alla tutela giurisdizionale dinanzi ad un organo indipendente, richiede di verificare se di tale normativa sia possibile un'interpretazione adeguatrice, secondo il canone ermeneutico preminente che prescrive al giudice, di optare, fra più soluzioni astrattamente possibili, per quella che rende la disposizione conforme a Costituzione (v. Corte Cost. nn. 113/2000, 277/2000, 316/2001, 198/2003). Tale interpretazione può essere raggiunta, in ossequio al principio di supremazia costituzionale, sulla base del dato normativo fornito dall'art. 17 dell'accordo ratificato con la L. n. 67/1994, che contiene la seguente previsione: "L'Istituto stabilirà procedure idonee per la soluzione delle controversie con il suo personale". E' dunque previsto uno specifico obbligo dell'Istituto stipulante l'accordo, obbligo da riferire necessariamente, per il rispetto della fondamentale garanzia costituzionale, alla realizzazione di strumenti di tutela giurisdizionale dinanzi ad un organo imparziale e indipendente; in base al medesimo principio si deve ritenere che l'osservanza di tale obbligo condizioni lo stesso riconoscimento dell'immunità ai sensi dell'art. 5 dell'accordo.

**6.8.** Conseguentemente, si deve affermare che la mancata attuazione dell'obbligo in questione nel periodo considerato (precludendo il ricorso a qualsiasi forma di tutela giurisdizionale di situazioni soggettive dei dipendenti dell'Istituto, come si è rilevato sub 6.6.), ha impedito l'operatività della previsione dell'immunità, sicchè la cognizione delle relative controversie tra le quali rientra quella promossa dal Drago resta attribuita al giudice italiano.

**7.** Va dunque dichiarata la giurisdizione del giudice italiano, restando assorbiti gli altri profili di censura. La sentenza impugnata deve essere cassata, con rinvio della causa al primo giudice, che dovrà provvedere anche sulle spese dell'intero giudizio.

## P.Q.M.

La Corte accoglie il ricorso. Dichiara la giurisdizione del giudice italiano. Cassa la sentenza impugnata e rinvia anche per le spese dell'intero giudizio al Tribunale di Roma. Così deciso in Roma, il 11 gennaio 2007. Depositato in Cancelleria il 19 febbraio 2007

From: Oxford Public International Law (http://opil.ouplaw.com). (c) Oxford University Press, 2013. All Rights Reserved. Subscriber: New York University; date: 31 March 2014