EXHIBIT 19

Document:-
**A/CN.4/120**

**Fourth report on the Law of Treaties by Mr. G. G. Fitzmaurice, Special Rapporteur**

Topic:
**Law of Treaties**

Extract from the Yearbook of the International Law Commission:-
**1959**, **vol. II**

*Downloaded from the web site of the International Law Commission
(http://www.un.org/law/ilc/index.htm)*

Copyright © United Nations

# LAW OF TREATIES

## [Agenda item 3]

### DOCUMENT A/CN.4/120

### Fourth report by Sir Gerald Fitzmaurice, Special Rapporteur

[*Original text: English/French*]
[*17 March 1959*]

## CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 39 |

### I. Text of articles

SECOND CHAPTER. THE EFFECTS OF TREATIES

*Part I. The effects of treaties as between the parties (operation, execution and enforcement)*
    Article 1. Scope of part I . . . . . . . . . . . . . . . . . . . . . . . 41

Division A. Operation and execution of treaties
  Section 1. Character, extent and limits of the treaty obligation
    Article 2. Fundamental principles governing the treaty obligation . . . . . . . . 42
  Sub-section i. Nature and extent of the treaty obligation
    Article 3. Obligatory character of treaties: *ex consensu advenit vinculum* . . . . 42
    Article 4. Obligatory character of treaties: *pacta sunt servanda* . . . . . . . . 42
    Article 5. Obligatory character of treaties: relationship of obligations to rights . . 42
    Article 6. Obligatory character of treaties: the principle of the unity and continuity of the State . . . . . . . . . . . . . . . . . . . . . . . 43
    Article 7. Obligatory character of treaties: the principle of the supremacy of international law over domestic law . . . . . . . . . . . . . . . . . 43
    Article 8. Obligatory character of treaties: the case of conflicting treaty obligations 43
  Sub-section ii. Limits of the treaty obligation (circumstances justifying non-performance)
  Rubric (*a*) General principles and classification
    Article 9. General definition of non-performance justified by operation of law . . 43
    Article 10. Scope of the present subsection . . . . . . . . . . . . . . . 44
    Article 11. Classification . . . . . . . . . . . . . . . . . . . . . 44
    Article 12. Certain general considerations applicable in all cases where a right of non-performance by operation of law is invoked . . . . . . . . . . . . . 44
  Rubric (*b*) Non-performance justified *ab extra* by operation of a general rule of international law
    Article 13. Acceptance of non-performance by the other party or parties . . . . 44
    Article 14. Impossibility of performance . . . . . . . . . . . . . . . . 44
    Article 15. Legitimate military self-defence . . . . . . . . . . . . . . . 45
    Article 16. Civil disturbances . . . . . . . . . . . . . . . . . . . . 45
    Article 17. Certain other emergency conditions . . . . . . . . . . . . . . 45
    Article 17A. Previous non-performance by another party . . . . . . . . . . 45
    Article 18. Non-performance by way of legitimate reprisals . . . . . . . . . 45
  Rubric (*c*) Non-performance justified *ab intra* by virtue of a condition of the treaty implied in it by international law
    Article 19. Scope of the present rubric . . . . . . . . . . . . . . . . 46
    Article 20. Conditions implied in the case of all treaties: condition of reciprocity or continued performance by the other party or parties . . . . . . . . . . . 46
    Article 21. Conditions implied in the case of all treaties: condition of continued compatibility with international law . . . . . . . . . . . . . . . . . 46
    Article 22. Conditions implied in the case of all treaties: condition of unchanged status of the parties . . . . . . . . . . . . . . . . . . . . . . . 46

|  | Page |
|---|---|
| Article 23. Conditions implied in the case of particular classes of treaties | 47 |

Section 2. Particular questions of treaty application

  Sub-section i. Temporal and territorial application of treaties

    Rubric (*a*) Temporal application

      Article 24. Beginning and duration of the treaty obligation . . . . . . . . . . 47

    Rubric (*b*) Territorial application

      Article 25. General principles . . . . . . . . . . . . . . . . . . . 47

      Article 26. Application to metropolitan territory . . . . . . . . . . . . . . 48

      Article 27. Application to dependent territories . . . . . . . . . . . . . . 48

      Article 28. Determination of the status of metropolitan and dependent territories . . 48

  Sub-section ii. Effect of the treaty on the internal plane

    Rubric (*a*) Effect of treaties on and respecting the institutions of the State

      Article 29. Relevance of the domestic aspects of treaty application . . . . . . 48

      Article 30. Duties of States in relation to their laws and constitutions . . . . . 49

      Article 31. Position and duties of particular organs of the State . . . . . . . 49

    Rubric (*b*) Effects of treaties on and in respect of private individuals and juristic entities within the State

      Article 32. Treaties involving obligations for private individuals or juristic entities 49

      Article 33. Treaties involving benefits for private individuals or juristic entitites . . 49

  Sub-section iii. Miscellaneous particular questions of treaty application . . . . . . 49

Division B. Consequences of and redress for breach of treaty

  Section 1. Consequences of breach of treaty

    Article 34. Basic principles . . . . . . . . . . . . . . . . . . . . . 49

    Article 35. Method of discharging the responsibility arising from breach of treaty 50

    Article 36. Consequences of breaches of treaties involving benefits for individuals 50

  Section 2. Modalities of redress for breaches of treaty

    Sub-section i. General statement of available remedies

      Article 37. Action by way of redress open to the parties . . . . . . . . . . 50

    Sub-section ii. Special procedural considerations affecting certain means of redress

      Article 38. Case (*c*) of Article 37 . . . . . . . . . . . . . . . . . . 51

      Article 39. Cases (*e*) and (*f*) of Article 37 . . . . . . . . . . . . . . . 51

**II. Commentary on the articles**

SECOND CHAPTER. THE EFFECTS OF TREATIES

*Part I. The effects of treaties as between the parties (operation, execution and enforcement)*

    Article 1. Scope of part I . . . . . . . . . . . . . . . . . . . . . 51

Division A. Operation and execution of treaties

  Section 1. Character, extent and limits of the treaty obligation

    Article 2. Fundamental principles governing the treaty obligation . . . . . . . 52

  Sub-section i. Nature and extent of the treaty obligation

    Article 3. Obligatory character of treaties: *ex consensu advenit vinculum* . . . . 53

    Article 4. Obligatory character of treaties: *pacta sunt servanda* . . . . . . . . 53

    Article 5. Obligatory character of treaties: relationship of obligations to rights . . 54

    Article 6. Obligatory character of treaties: the principle of the unity and continuity of the State . . . . . . . . . . . . . . . . . . . . . . . . . . 54

    Article 7. Obligatory character of treaties: the principle of the supremacy of international law over domestic law . . . . . . . . . . . . . . . . . . . 58

    Article 8. Obligatory character of treaties: the case of conflicting treaty obligations 61

  Sub-section ii. Limits of the treaty obligation (circumstances justifying non-performance)

    Rubric (*a*) General principles and classification

      Article 9. General definition of non-performance justified by operation of law . . 62

      Article 10. Scope of the present sub-section . . . . . . . . . . . . . . 62

      Article 11. Classification . . . . . . . . . . . . . . . . . . . . . 63

      Article 12. Certain general considerations applicable in all cases where a right of non-performance by operation of law is invoked . . . . . . . . . . . . . 63

    Rubric (*b*) Non-performance justified *ab extra* by operation of a general rule of international law

      Article 13. Acceptance of non-performance by the other party or parties . . . . 63

      Article 14. Impossibility of performance . . . . . . . . . . . . . . . . 64

      Article 15. Legitimate military self-defence . . . . . . . . . . . . . . . 64

      Article 16. Civil disturbances . . . . . . . . . . . . . . . . . . . . 65

      Article 17. Certain other emergency conditions . . . . . . . . . . . . . 66

      Article 17A. Previous non-performance by another party . . . . . . . . . . 66

      Article 18. Non-performance by way of legitimate reprisals . . . . . . . . . 66

*Page*

Rubric (c) Non-performance justified *ab intra* by virtue of a condition of the treaty implied in it by international law
    Article 19. Scope of the present rubric . . . . . . . . . . . . . . . . . . . . 70
    Article 20. Conditions implied in the case of all treaties: condition of reciprocity or continued performance by the other party or parties . . . . . . . . . . . 70
    Article 21. Conditions implied in the case of all treaties: condition of continued compatibility with international law . . . . . . . . . . . . . . . . . . . 71
    Article 22. Conditions implied in the case of all treaties: condition of unchanged status of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
    Article 23. Conditions implied in the case of particular classes of treaties . . . . 73

Section 2. Particular questions of treaty application
  Sub-section i. Temporal and territorial application of treaties
    Rubric (a) Temporal application
      Article 24. Beginning and duration of the treaty obligation . . . . . . . . . . 74
    Rubric (b) Territorial application
      Article 25. General principles . . . . . . . . . . . . . . . . . . . . . . . 74
      Article 26. Application to metropolitan territory . . . . . . . . . . . . . . . 74
      Article 27. Application to dependent territories . . . . . . . . . . . . . . . 75
      Article 28. Determination of the status of metropolitan and dependent territories . 76
  Sub-section ii. Effect of the treaty on the internal plane
    Rubric (a) Effect of treaties on and respecting the institutions of the State
      Article 29. Relevance of the domestic aspects of treaty application . . . . . . 76
      Article 30. Duties of States in relation to their laws and constitutions . . . . . 76
      Article 31. Position and duties of particular organs of the State . . . . . . . 78
    Rubric (b) Effects of treaties on and in respect of private individuals and juristic entities within the State
      Article 32. Treaties involving obligations for private individuals or juristic entities 78
      Article 33. Treaties involving benefits for private individuals or juristic entities . . 79
  Sub-section iii. Miscellaneous particular questions of treaty application . . . . . . . 79

Division B. Consequences of and redress for breach of treaty
  Section 1. Consequences of breach of treaty
    Article 34. Basic principles . . . . . . . . . . . . . . . . . . . . . . . . 80
    Article 35. Method of discharging the responsibility arising from breach of treaty . 80
    Article 36. Consequences of breaches of treaties involving benefits for individuals 81
  Section 2. Modalities of redress for breaches of treaty
    Sub-section i. General statement of available remedies
      Article 37. Action by way of redress open to the parties . . . . . . . . . . . 81
    Sub-section ii. Special procedural considerations affecting certain means of redress
      Article 38. Case (c) of Article 37 . . . . . . . . . . . . . . . . . . . . . 81
      Article 39. Cases (d), (e) and (f) of Article 37 . . . . . . . . . . . . . . . 81

## Introduction

1. In his three previous reports,[1] the Rapporteur covered the subjects of the conclusion and termination of treaties (formal and temporal validity), and also that of essential validity; and although he may wish to suggest modifications in some of the articles proposed and the views expressed in those reports, they complete a chapter on the general topic of validity for a Code on the Law of Treaties. It remains to deal with the rest of the subject. Having considered what brings a treaty into existence, what makes it valid, and what brings it to an end, it then becomes necessary to consider what effects it has during the period of its existence.

2. This is obviously a matter that depends primarily on the terms of the treaty itself, and which, in that sense, is peculiar to each individual treaty—or, up to a point, class of treaties. In that sense, no general rules can be formulated on the subject other than the rules of treaty interpretation—and these do not consist so much of rules as to what the effects of treaties in fact are, but rather of rules for (so to speak) deciding how to decide what is the effect of a particular treaty or treaty provision, or class of either. In short, rules of (or for) interpretation represent adjectival rather than substantive law. Moreover, such rules are necessary for determining not only the effect of a given treaty, but also questions relating to its conclusion and entry into force, its essential validity and its termination. In other words, the rules of treaty interpretation qualify the whole subject, and not merely that part of it that relates to the topic of the effects of treaties. Therefore, despite the fact that "interpretation" and "effects" are often coupled together—witness such phrases as "The interpretation and application of treaties"—the Rapporteur

---

[1] Document A/CN.4/101 in *Yearbook of the International Law Commission, 1956,* vol. II (United Nations publication, Sales No.: 1956.V.3, vol. II), p. 104; document A/CN.4/107 in *Yearbook of the International Law Commission, 1957,* vol. II (United Nations publication, Sales No.: 1957.V.5, vol. II), p. 16; document A/CN.4/115 in *Yearbook of the International Law Commission, 1958,* vol. II (United Nations publication, Sales No.: 58.V.1, vol. II), p. 20.

considers that they are separate, and must be separately dealt with. The subject of interpretation would accordingly form a separate and later chapter of the Code, the provisions of which would, so far as requisite, be relevant to and capable of use in connexion with all other parts of the Code.

3. But if the subject of interpretation must be treated separately from that of effects, and if also the effects of any given treaty depend primarily on the individual terms of that treaty, and to that extent cannot therefore be determined on an *a priori* basis, what then is left for a chapter on the "Effects of Treaties"? Clearly what will be left, and what will be comprised in such a chapter, will be all those rules which combine the two following characteristics, namely:

(*a*) Of depending not on the interpretation of the particular treaty, but on objective rules of general international law outside the treaty—rules that apply *to* treaties but do not derive *from* them;

(*b*) Of being applicable generally and indifferently, either to *all* treaties irrespective of their particular content; or, in some cases, only to certain well-defined classes of treaties—but again, irrespective of the particular content of the treaty within its class. Under these heads would come, first of all, an important set of general rules governing the juridical nature of the treaty obligation—its extent (i.e., in what circumstances and despite what conflicts or impediments it must always be performed or responsibility be incurred for non-performance); and its limits (i.e., in what circumstances non-performance will be justified and will not give rise to responsibility). Next there are rules governing more particular questions of application (but questions still common to all or most treaties) such as territorial application, application to and in respect of the individual organs or institutions of the State on the domestic plane, and application to and in respect of private individuals or entities within the State. Finally, there is the topic of the consequences of breach of a treaty obligation, and of redress for such breach (sometimes, though not very appropriately, known as "enforcement"). It can be maintained that this last topic is not really part of the subject of treaty "effects". Nevertheless, as will be seen, it is so closely linked to it as not in practice to be separable.

4. The topics just mentioned arise principally in the application of the treaty for, or as between, the actual parties to it. They are treated of in the present report as part I of a chapter on "The Effects of Treaties". There is, however, also the subject of the effects of treaties for and in relation to "third States", not parties to the treaty concerned. This will constitute part II of the chapter and will be covered by a later report.

5. The subject-matter of the present report has presented the Rapporteur with various difficulties. One of these (probably precisely because the effects of a treaty depend primarily on its particular terms, rather than on general rules of law) is that most authorities devote extremely little space to it, and few make any attempt to deal with it systematically—still fewer to treat of it comprehensively. Rousseau[2] is systematic and more comprehensive than most writers. The Harvard Volume on Treaties[3] deals fairly exhaustively with the positive aspects of the character of the treaty obligation, but hardly goes beyond that. Arnold D. McNair's Law of Treaties,[4] based on the opinions of the English Law Officers of the Crown, deals illuminatingly with a large number of miscellaneous points. Some of the private codes (Field, Fiore, Bluntschli, Bustamante, and others)[5] contain a number of provisions on the subject. Many writers, however, hardly touch on it, or do so only as part of the subject of treaty interpretation. The Rapporteur has therefore had to rely somewhat heavily on his own experience or inclinations for filling up gaps or dealing with obscurities.

6. Another difficulty is that, while the Rapporteur has tried to make the draft as comprehensive as possible, it is probable that further study of the matter might bring to light a considerable number of points which, if by no means pertinent to the subject of the effects of "all" treaties, might be relevant to a sufficiently large number (or to sufficiently prominent classes) of treaties, to warrant inclusion. But to take this further would require not only a systematic study of a great many individual treaties, but also, in all probability, information from Governments as to their practice in relation to these treaties or classes of treaties. The Rapporteur has not yet been able to make such a study; and further, although reference is made to the matter in the body of the report,[6] he doubts whether, for the immediate purposes of the present report, it is necessary to do so. It will be better to establish the more general principles first. If later it is thought desirable and practical to do so, it will always be possible to add one or more sections dealing with matters of detail arising with reference to the application of certain kinds or classes of treaties.

7. Then there are the usual difficulties of classification, arrangement and overlapping. These are, so to speak, both "internal" and "external". "Internally", parts of the present draft could be differently classified or arranged, and tend to overlap with others. For instance, the whole subject of the consequences of breach of treaty is closely linked to that of what justification there may be in certain cases for the non-observance of a treaty. Again, the more detailed aspects of the topic of the effect of a treaty on the domestic plane, in relation to its organs and governmental institutions, is really part of, and derives from, such general principles concerning the juridical character of the treaty obligation, as that of the supremacy of international over domestic law with reference to the discharge by a State of its international obligations. Yet again, there must be some doubt under precisely which head to classify the reciprocity principle in the application of treaties. All

---

[2] Charles Rousseau, *Principes généraux du droit international public* (Paris, Editions A. Pedone, 1944), vol. I, pp. 355-451.

[3] Harvard Law School, *Research in International Law*, III. *Law of Treaties*, Supplement to the *American Journal of International Law*, vol. 29, 1935, Washington, D.C., The American Society of International Law, ed., pp. 707-710.

[4] Oxford, Clarendon Press, 1938.

[5] The texts of some of these figure in the annexes to the Harvard Volume.

[6] See article 23, and paragraphs 113 and 162 of the commentary.

these matters are further discussed in the body of the report.[7] In general, the Rapporteur has, in matters of classification and arrangement, followed in the present report the system of Rousseau but is not satisfied that he (i.e., the Rapporteur) has made the best use of it. It may be possible to suggest improvements later, before the time when the Commission comes to deal with this part of the subject.

8. "Externally", there is inevitably some overlapping with previous reports. The whole subject of treaties is one that is rather specially susceptible to the possibility that theoretically distinct portions of it have strong practical affinities or relationships with others. Several of the general principles considered in the present report have already proved relevant in connexion with the subject-matter of previous reports. Again some of the grounds justifying non-performance of a particular treaty obligation are identical with some of those causing or justifying the *termination* of a treaty. Yet, for reasons fully explained in the body of the report,[8] the two subjects are quite distinct, if only because in the case of termination (considered in the Rapporteur's second report) the treaty ends altogether, while in the other (considered in the present report) it does not in general do so, and (if a paradox is permissible) the non-performance is not only justified, but "looks towards" a resumption of performance so soon as the factors causing and justifying the non-performance are no longer present, or have ceased to exist. It may eventually be possible to "marry" certain elements at present treated of in different reports, but for the moment this must await further consideration.

9. Finally, there are difficulties inherent in the whole subject, of a kind that has been mentioned in the introductions to previous reports—for instance, that of finding formulae or principles that really are applicable to all treaties, and the necessity for some purposes of distinguishing certain categories from others. Similarly, general phrases such as "breach of treaty" are constantly employed; but not all breaches or infractions are of the same order. Infractions may take such diverse forms as (*a*) failure by a party to perform some positive obligation which it is itself under a duty to perform; (*b*)—a subdivision or other aspect of (*a*)—failure or refusal to grant the other party treatment to which that party is entitled under the treaty; (*c*) failure or refusal to allow the other party to perform some act, or to exercise some right or licence, which, under the treaty, it is entitled to perform or exercise; (*d*) the taking of any action by one party which is subject to a treaty *prohibition*. At least for the purpose of dealing with the consequences of breach of treaty, it is necessary to distinguish between these different cases; a closer study might well show that this should also be done for certain other purposes.

10. In conclusion, the Rapporteur would like to say that he has followed the precedents of his previous reports in three respects: first, in drafting the articles not in the precise and rather tight language appropriate to such an instrument as an international convention, intended to be signed and ratified by States, but rather in the more colloquial and less formal language that (within certain limits, of course) is permissible, and up to a point desirable, in a code; secondly, in putting as much into the articles themselves as is reasonably possible without overloading them, so that they are relatively self-explanatory and could stand without a commentary, though the latter is in fact provided; and thirdly, in not shirking or minimizing, but rather attempting to bring out, the difficulties of the subject, which are often glossed over, or completely ignored.

11. With reference to the last of these points, the Rapporteur feels that it is only in the light of a full appreciation of the difficulties involved that the Commission will eventually be able to devise a satisfactory and probably simplified and much improved text. He has, therefore, in the present report as in previous ones, regarded it as part of his duty as Rapporteur to try and draw attention to all the relevant factors and aspects of the subject.

# I. TEXT OF ARTICLES

## Second Chapter. The effects of treaties

[1. The present report starts a second chapter of a draft Code on treaties, covering the effects of treaties. The Rapporteur's previous three reports (dated 1956-1958 inclusive) completed a first chapter on validity (formal, temporal and essential; or the conclusion, termination and essential validity of treaties).

2. Subject to possible modification later, the present (second) chapter, which is to be followed in due course by a third chapter on the interpretation of treaties, will consist of two main parts:

*Part I. The effects of treaties as between the parties (operation, execution and enforcement)*, which is the subject of the present report.

*Part II. The effects of treaties as regards third States*, to form the subject of a subsequent (1960 report.]

*Part I. The effects of treaties as between the parties (operation, execution and enforcement)*[9]

### Article 1. Scope of part I

1. The effect of a treaty as between the parties thereto depends primarily on the substantive content and terms of the treaty, as correctly interpreted and determined according to the principles of interpretation

---

[7] See paragraphs 172, 142 and 101 of the commentary.

[8] See paras. 55-57 and 67 of the commentary.

[9] The present part I has two main divisions:
  A. Operation and execution of treaties.
  B. Consequences of and redress for breach of treaty (enforcement).
These divisions are subdivided as follows:
Division A:
  Section 1. Character, extent and limits of the treaty obligation.
    Sub-section i. Nature and extent of the treaty obligation.
    Sub-section ii. Limits of the treaty obligation (circumstances justifying non-performance).

set out in chapter 3 of the present Code (which will form the subject of a later report). In consequence, the present chapter purports to contain only those general principles and rules relating to the effects of treaties which are applicable to all treaty instruments indifferently, and irrespective of the particular character of their content.

2. Except as regards the fundamental principles of treaty law set out in article 2 below, and further developed in certain subsequent articles, the application of any provision of this part of the present chapter may be negatived or modified by an express term of the treaty excluding it.

## DIVISION A. OPERATION AND EXECUTION OF TREATIES

### SECTION 1 : CHARACTER, EXTENT AND LIMITS OF THE TREATY OBLIGATION

*Article 2. Fundamental principles governing the treaty obligation*

1. In general, and subject to the specific provisions of this part of the present chapter, the effects of treaties (apart from such as are derived from the actual content of the treaty) depend on the application of, and on appropriate inferences to be drawn from, the following principles of general international law, namely:

(a) The principle of consent (*ex consensu advenit vinculum*);

(b) The principle *pacta sunt servanda*;

(c) The principle of the unity and continuity of the State;

(d) The principle of the supremacy of international law over domestic law;

(e) The principle *pacta tertiis nec nocent nec prosunt*.

---

        virtue of a condition of the treaty implied in it by international law.
    Section 2. Particular questions of treaty application.
        Sub-section i. Temporal and territorial application of treaties.
            Rubric (a). Temporal application.
            Rubric (b). Territorial application.
        Sub-section ii. Effect of the treaty on the internal plane.
            Rubric (a). Effect of treaties on and respecting the institutions of the State.
            Rubric (b). Effects of treaties on and in respect of private individuals and juristic entities within the State.
Division B:
    Section 1. Consequences of breach of treaty.
    Section 2. Modalities of redress for breaches of treaty.
        Sub-section i. General statement of available remedies.
        Sub-section ii. Special procedural considerations affecting certain means of redress.
            Rubric (a). General principles and classification.
            Rubric (b). Non-performance justified *ab extra* by operation of a general rule of international law.
            Rubric (c). Non-performance justified *ab intra* by

### SUB-SECTION I. NATURE AND EXTENT OF THE TREATY OBLIGATION

*Article 3. Obligatory character of treaties:* ex consensu advenit vinculum

1. The immediate foundation of the treaty obligation is the consent given to it by the parties, it being an antecedent principle of international law that consent finally and validly given creates a legally binding obligation.

2. The foundation of treaty rights is equally the consent given to the enjoyment of those rights, and the undertaking to accord them.

*Article 4. Obligatory character of treaties:* pacta sunt servanda

1. A treaty being an instrument containing binding undertakings and creative of vested rights, the parties are under a legal obligation to carry it out.

2. A treaty must be carried out in good faith, and so as to give it a reasonable and equitable effect according to the correct interpretation of its terms.

3. In relation to any particular treaty, the application of the foregoing provisions is conditional on the treaty possessing the necessary validity under chapter 1 of the present Code—that is to say, on its having been regularly concluded and come into force in accordance with the provisions of part I of that chapter; on its possessing essential validity under part II; and on its being still in force and not validly terminated in accordance with part III. In the case of multilateral treaties, these conditions must obtain not only in respect of the treaty itself, but also in respect of the participation of the particular party whose rights or obligations are in question.

4. It follows from the foregoing provisions of the present article that the existence of circumstances falling within one of the two following classes of cases cannot of itself justify non-performance of the treaty obligation:

(a) That there is a dispute or disagreement between the parties, or a state of strained relations, or that diplomatic relations have been broken off;

(b) That the treaty obligation has become difficult or onerous of execution for the party concerned, or is felt by that party to have become inequitable or prejudicial to its interests.

*Article 5. Obligatory character of treaties: relationship of obligations to rights*

1. In general, though with particular reference to the case of multilateral treaties:

(a) A party to a treaty has a duty towards the other party or parties to carry it out, irrespective of whether any direct benefits to such other party or parties will accrue therefrom; and correspondingly, any party to a treaty has, as the counterpart of its own obligation, the right to require due performance by any other party of its obligations under the treaty, irrespective of any such factor;

(b) Each party is under an obligation to refrain from applying a treaty in such a way, from taking such action in relation to it, or from otherwise so conducting itself, as may be calculated to impair the authority of the treaty as a whole, to diminish the force of the treaty obligation, or to prejudice the enjoyment of the rights or benefits the treaty provides for, whether on the part of the other party or parties as such, or of individual persons or entities.

*Article 6. Obligatory character of treaties: the principle of the unity and continuity of the State*

1. The rights and obligations provided for in the treaty attach to the parties to it as States, irrespective of the particular form or method of its conclusion. The Government or administration of the State for the time being, irrespective of the character of its origin, or of whether it came into power before or after the conclusion of the treaty, acts as the agent of a State to carry the treaty out, or to claim rights and benefits under it, as the case may be, and is bound or entitled accordingly.

2. In consequence, the treaty obligation, once assumed by or on behalf of the State, is not affected, in respect of its international validity or operative force, by any of the following circumstances:

(a) That there has been a change of government or régime in any State party to the treaty;

(b) That some particular organ of the State (whether executive, administrative, legislative or judicial) is responsible for any breach of the treaty;

(c) That a diminution in the assets of the State, or territorial changes affecting the extent of the area of the State by loss or transfer of territory (but not affecting its existence or identity as a State), have occurred, unless the treaty itself specifically relates to the particular assets or territory concerned.

In all such cases, the treaty obligation remains internationally valid, and the State will incur responsibility for any failure to carry it out.

*Article 7. Obligatory character of treaties: the principle of the supremacy of international law over domestic law*

1. In case of conflict, obligations arising under a treaty take precedence of, and prevail internationally over the provisions of the internal law or constitution of any party to it.

2. Accordingly, the treaty obligation, once assumed, is not affected in respect of its international validity and operative force by the existence of inconsistencies between it and the provisions of the internal law or constitution of the party concerned, whether these have been enacted previously or subsequently to the coming into force of the treaty; not by deficiencies or *lacunae,* or special features or peculiarities of the law or constitution or governmental organization of that party which may affect the performance of the obligation on the internal plane. In all such cases, the obligation remains internationally valid, and the State will incur responsibility for any failure to carry it out.

3. The foregoing provisions of the present article apply where any provision of the local law or constitution has the effect of defeating or preventing the performance of the treaty obligation, or of justifying its non-performance on the internal plane—irrespective of the particular subject-matter of that provision, and of whether it does or does not purport to relate specifically to the treaty or the class of matter covered by the treaty, or is said to have an object or purpose different from that of the treaty.

*Article 8. Obligatory character of treaties: the case of conflicting treaty obligations*

1. Except as provided in paragraph 3 below, a conflict between two treaties, both of them validly concluded, can in principle only be resolved on the basis that both have equal force and effect, in the sense that the parties incur international responsibility under each of them. In such a case, the question which of the two treaties is actually to be carried out, and which, by reason of the fact that it cannot be or is not carried out, gives rise to a liability to pay damages or make other suitable reparation for a breach thereof, is governed by the provisions of articles 18 and 19 of part II of chapter 1 of the present Code.

2. Accordingly, the mere fact that a treaty obligation is incompatible with obligations under another treaty is not in itself a ground justifying non-performance.

3. The foregoing provisions of the present article do not apply:

(a) Where an obligation under one treaty is superseded, cancelled, or replaced by an obligation under a later treaty between identical parties;

(b) As between States parties to both treaties, and having intended, as between themselves, to supersede, cancel, or replace the earlier obligation;

(c) Where, according to the provisions of article 18 of part II of chapter 1 of the present Code, one of the treaties or treaty obligations concerned is rendered null and void by reason of conflict with the other;

(d) By reason of Article 103 of the Charter of the United Nations:

(i) As between Member States of the United Nations, in respect of any treaty obligation in conflict with the obligations of the Charter;

(ii) As between a Member and a non-member State, as respects the performance of any such conflicting obligation, but not as respects international responsibility and liability for the resulting non-performance.

SUB-SECTION II. LIMITS OF THE TREATY OBLIGATION (CIRCUMSTANCES JUSTIFYING NON-PERFORMANCE)

RUBRIC (a). GENERAL PRINCIPLES AND CLASSIFICATION

*Article 9. General definition of non-performance justified by operation of law*

1. In certain special cases, international law operates to confer a right of non-performance where this would not otherwise have existed according to the actual terms, express or implied, of the treaty itself.