Case 1:13-cv-07146-JPO   Document 33-20   Filed 05/15/14   Page 1 of 6

2. In such cases, international law necessarily operates independently of the terms of the treaty, or of any special agreement between the parties as to non-performance, in the sense that it provides grounds of non-performance that may operate even though they are not specifically contemplated by the treaty or by the agreement of the parties.

### Article 10. Scope of the present sub-section

1. The present sub-section relates to the circumstances justifing *ad hoc* non-performance, either in whole, or as to a particular provision of the treaty—the latter being itself, and remaining, in full force. The separate, though related, question of the circumstances causing or justifying termination or indefinite suspension of a treaty, in whole or in part, is dealt with in part III of chapter 1 of the present Code.

2. It follows that, except in cases where the nature of the circumstances otherwise indicates (as may for instance happen under articles 21, 23 and 24), the present sub-section contemplates cases in which performance can and must be resumed so soon as the circumstances justifying non-performance have ceased to exist.

### Article 11. Classification

1. Non-performance may take place only under the treaty itself or by operation of law. It will therefore be justified if and only if:

(*a*) It occurs in circumstances specifically contemplated and specified by the treaty, or necessarily to be implied from its terms;

(*b*) The circumstances are such as to give rise to one of the situations provided for in articles 13 to 23 below.

2. It follows that, except where non-performance is contemplated by an express or implied term of the treaty, it can only be justified by operation of law, that is to say:

(*a*) Either *ab extra*, by the operation of a general rule of international law permitting non-performance in certain circumstances;

(*b*) Or *ab intra*, by the operation of a condition which, whether it is actually expressed in a treaty or not, is deemed by international law to be implied, either in all treaties, or in the particular class to which the treaty concerned belongs.

### Article 12. Certain general considerations applicable in all cases where a right of non-performance by operation of law is invoked

1. Where the provisions of the treaty specifically exclude any grounds of non-performance, such provisions will prevail, notwithstanding the fact that non-performance on these grounds would otherwise be justified by operation of law. The same applies where a treaty obligation is specifically entered into with reference (and is intended to apply) to a state of affairs that might otherwise give rise to a right of non-performance.

2. In those cases where the operation of international law gives a faculty of non-performance, such faculty must be exercised within a reasonable time after it is alleged to have arisen. Failure to do this will entitle the other party or parties to claim execution of the treaty in full, provided that the treaty is being duly executed by such party or parties.

3. Where the event, occurrence or circumstances giving rise to the ground of non-performance by operation of law has been directly caused or contributed to by the act or omission of the party invoking it (unless this act or omission was itself both necessary and legally justified), such party will either be precluded from invoking the ground in question, or (if the event, occurrence or circumstances nevertheless in their nature entail non-performance) will incur responsibility for any resulting damage or prejudice, and will be liable to make reparation therefor.

4. *Mutatis mutandis,* the case of non-performance of a treaty obligation by operation of law is subject to the same considerations and to the same rules as are set out in paragraph 5 of article 16 in part III of chapter 1 of the present Code for the case of the termination or suspension of a treaty by operation of law.

RUBRIC (*b*). NON-PERFORMANCE JUSTIFIED *ab extra* BY OPERATION OF A GENERAL RULE OF INTERNATIONAL LAW

### Article 13. Acceptance of non-performance by the other party or parties

1. Non-performance, or partial non-performance, of a treaty obligation will not, or will cease to constitute a breach of the treaty, if, either by express agreement, or else tacitly (e.g., by acquiescence or non-objection), the non-performance is accepted by the other party to the treaty, or, in the case of multilateral treaties, is accepted by all the other parties (unless, in the latter case, the obligation is owed to one or more parties only, when acceptance by such party or parties will suffice).

2. The acceptance, even though it may be tacit, must be clear and unmistakable, and must in effect indicate or warrant an inference of actual agreement to non-performance. The mere fact that a party does not seek redress in respect of the non-performance, or avail itself of remedies afforded by the treaty or otherwise, or take counter-action, does not *per se* amount to acceptance of, or acquiescence in, the non-performance.

### Article 14. Impossibility of performance

1. Temporary or *ad hoc* impossibility of performance [10] justifies non-performance of a treaty obligation provided that the impossibility is literal and actual, in the sense of imposing an insuperable obstacle or impediment to performance in the nature of *force majeure,* and not merely of rendering performance difficult, onerous or vexatious.

2. Performance of the treaty must be resumed immediately the obstacle to it is removed or performance otherwise becomes possible again.

---

[10] See article 10. A temporary or *ad hoc* impossibility is necessarily the only kind that can be relevant in the present context, since if it were permanent it would be a ground for the total termination, or at least the indefinite suspension of the treaty, or treaty obligation, and not merely for a particular non-performance. Impossibility leading to termination or indefinite suspension is dealt with in article 17 of part III of chapter 1 of the present Code.

3. Changed conditions falling short of rendering performance impossible do not in themselves justify non-performance. The principle *rebus sic stantibus* which may, in the circumstances and subject to the conditions stated in articles 21 to 23 of part III of chapter 1 of the present Code, justify the suspension and eventual termination of a treaty, has no application to the case of a particular non-performance of a treaty obligation.

### Article 15. Legitimate military self-defence

1. The requirements of legitimate military self-defence [11] justify the non-performance of a treaty obligation on such particular occasions as give rise to these requirements, provided:

(*a*) That, subject to the provisions of paragraph 3 below, actual naval, military or air operations are taking place or are in immediate contemplation;

(*b*) That the case is one of legitimate self-defence according to the recognized principles of international law and to any relevant conventional obligations;

(*c*) That the non-performance is essential in the circumstances, in the sense that performance would be incompatible with the necessities of self-defence or would seriously prejudice the defence operations involved;

(*d*) That the scope and area of non-performance are circumscribed as much as possible and confined to what is strictly necessary for the immediate purposes of self-defence.

2. Except in those cases where war or other hostilities justify the termination or permanent suspension of a treaty or treaty obligation, performance of it, or of any part of it which has not been performed, must be resumed as soon as the requirements of legitimate self-defence are met, or no longer necessitate non-performance, or if the circumstances giving rise to these requirements have ceased to exist.

3. A threat of war or other hostilities, or of the occurrence of events calling for the exercise of legitimate self-defence, will not justify non-performance of a treaty obligation except where the performance would itself directly contribute to such occurrence or to the materialization of the threat.

### Article 16. Civil disturbances

The provisions of article 15 apply, *mutatis mutandis*, to the case of riots and other civil disturbances, or of civil war.

### Article 17. Certain other emergency conditions

1. Under the same conditions, *mutatis mutandis*, as those specified in paragraph 1 (*c*) and (*d*) of article 15 above, non-performance of a treaty, or of some particular part of it, is justified if rendered absolutely necessary by a major emergency arising from natural causes, such as storm devastation, floods, earthquakes, volcanic eruptions, wide-spread epidemics or plant diseases on a national or quasi-national scale.

2. In order to justify non-performance in these cases, the circumstances must be such that performance would aggravate the emergency, or would be incompatible with the steps necessary to deal with it, or would render these ineffective or unduly difficult to take.

3. Except in those cases where the emergency renders further performance totally impossible and results on that account in the termination of the whole obligation, performance must be resumed as soon as the emergency is over or conditions make resumption of performance possible.

4. In the absence of emergency conditions of a character clearly affecting the performance of the treaty obligation in the manner specified by paragraphs 1 and 2, the fact that there are circumstances rendering performance difficult or onerous is not a ground justifying non-performance.

### Article 17A. Previous non-performance by another party

[See article 20 below. Although an article on this subject could figure there, it has seemed to the Rapporteur preferable, for the reasons given in paragraph 102 of the commentary, to place it in rubric (*c*).]

### Article 18. Non-performance by way of legitimate reprisals

1. In those cases where a reciprocal, equivalent and corresponding non-observance of a treaty obligation, following on a previous non-observance by another party to the treaty, as provided in article 20 below, would not afford an adequate remedy, or would be impracticable, the non-observance of a different obligation under the same treaty or, according to circumstances, of a different treaty may, subject to the provisions of paragraphs 3 and 4 below, be justified on a basis of legitimate reprisals.

2. The principle of reprisals may also be invoked, subject to the provisions of paragraphs 3 and 4 below, in order to justify the non-observance of a treaty obligation because of the breach by another party to the treaty of a general rule of international law.

3. Whatever the circumstances, action by way of reprisals may only be resorted to:

(*a*) If, as stated in paragraph 1 of this article, the matter cannot be dealt with by means of the application of the reciprocity rule as provided by article 20 below;

(*b*) If the breach of treaty or illegality against which the reprisals are directed has been established or is manifest;

(*c*) If prior negotiations or exchanges between the parties have not led to any solution or settlement, or if requests for negotiations, or for a resumption of performance or cessation of the treaty infraction, have been rejected or not responded to;

(*d*) If, in those cases where the counter-action does

---

[11] The case contemplated here is not the same as that of the termination or indefinite suspension of treaties or parts of treaties by reason of war or of hostilities amounting to war (see para. 70 of the commentary below).

not consist simply of a corresponding non-observance of the same obligation, it can be shown to be necessary in the circumstances, in order to provide adequate redress or avoid further prejudice;

(*e*) Provided that the treaty concerned is not a multilateral treaty of the "integral" type, as defined in article 19, head (*b*) of part II, and article 19, paragraph 1 (iv) of part III, of chapter 1 of the present Code, where the force of the obligation is self-existent, absolute and inherent for each party, irrespective and independently of performance by the others;[12]

(*f*) Provided the appropriate procedures set out in article 39 below have first been resorted to.

4. The particular reprisals resorted to must be appropriately related to the occasion giving rise to them, and must also be proportionate and commensurate in their effects to the prejudice caused by the previous non-observance of a treaty or international law obligation by the other State concerned, as well as limited to what is necessary in order to counter such non-observance. They must be conducted in accordance with the general rules of international law governing self-redress by way of reprisals.

5. Non-observance based on legitimate reprisals must cease so soon as occasion for it has ceased by reason of a resumption of performance by the other party or parties concerned.

RUBRIC (*c*). NON-PERFORMANCE JUSTIFIED *ab intra* BY VIRTUE OF A CONDITION OF THE TREATY IMPLIED IN IT BY INTERNATIONAL LAW

*Article 19. Scope of the present rubric*

1. Where a right not to perform a treaty obligation in certain particular circumstances can be derived, or is said to be derivable, by implication from one of the terms of the treaty, the existence and scope of the right depend on the correct interpretation of the treaty itself, and this is a matter governed by the general rules relating to the interpretation of treaties contained in chapter 3 of the present Code (which will form the subject of a later report). The present rubric relates only to the case of conditions implied in or attached to the treaty by operation of law.

2. Alternatively, it is implicit in the type of case treated of in the present rubric that, on the face of it, the treaty concerned creates a specific obligation, so that the question is whether international law implies a condition justifying the non-performance of that obligation in certain circumstances. Since the very issue, whether non-performance is justified, is one that assumes the existence of a *prima facie* or apparent obligation under the treaty, conditions expressed in or implied by the language of the treaty itself relate to the existence and scope of the obligation, not to the justification for its non-performance.

3. A condition implied by law as described in the preceding paragraphs may be implied in the case of all treaties or only of certain particular classes of treaties.

---

[12] An example of the type of treaty here contemplated would be those of the social or humanitarian kind, the principal object of which is the benefit of individuals.

*Article 20. Conditions implied in the case of all treaties of reciprocity or continued performance by the other party or parties*

1. By virtue of the principle of reciprocity, and except in the case of the class of treaties mentioned in paragraph 3 (*e*) of article 18, non-performance of a treaty obligation by one party to the treaty will, so long as such non-performance continues, justify an equivalent and corresponding non-performance by the other party or parties.

2. In the case of multilateral treaties, however, such non-performance will only be justified in relation to the particular party failing to observe the treaty.

3. Where a treaty provides for certain action to be taken by the parties jointly or in common, it does not follow that the failure or refusal of one party to take or co-operate in taking this action will entitle the other or others to take it alone. This is a matter depending on the interpretation of the particular treaty. However, a renunciation of or failure by a party to exercise a joint right does not affect the right of the other party or parties.

*Article 21. Conditions implied in the case of all treaties: condition of continued compatibility with international law*

1. A treaty obligation which, at the time of its conclusion, is incompatible with an existing rule or prohibition of general international law in the nature of *jus cogens*, lacks essential validity *ab initio*, with the consequences set out in articles 21 and 22 of part II of chapter 1 of the present Code. Accordingly, the case contemplated by the present article is that of supervening incompatibility with such a rule or prohibition of international law.

2. A treaty obligation the observance of which is incompatible with a new rule or prohibition of international law in the nature of *jus cogens* will justify (and require) non-observance of any treaty obligation involving such incompatibility, subject to the same conditions, *mutatis mutandis*, as are set out under case (vi) in article 17 of part III of chapter 1 of the present Code in respect of the termination or indefinite suspension of the treaty.

3. The same principle is applicable where circumstances arise subsequent to the conclusion of a treaty, bringing into play an existing rule of international law which was not relevant to the situation as it existed at the time of the conclusion of the treaty.

4. Where the circumstances do not involve incompatibility with a rule or prohibition in the nature of *jus cogens*, but merely a departure from, or variation by, the parties (for application *inter se*) of a rule in the nature of *jus dispositivum*, no ground for non-observance will exist.

*Article 22. Conditions implied in the case of all treaties: condition of unchanged status of the parties*

1. In those cases where one or both of the parties to a bilateral treaty lack treaty-making capacity, the treaty

will lack essential validity *ab initio*. In the case of multilateral treaties, the same principle applies to the validity of the participation in the treaty of any entity in this position. These cases are dealt with in article 8 of part II of chapter 1 of the present Code. The present article is accordingly confined to the case of supervening changes in the status of parties originally possessed of treaty-making capacity.

2. The case of an alteration in international status involving a change or total loss of identity of the party concerned, leading (subject to the rules of state succession) to the termination of the treaty as a whole, is governed by the provisions of case (i) in article 17 of part III of chapter 1 of the present Code.

3. Subject to the rules of state succession, a supervening change of international status not involving a complete loss or change of identity will justify non-performance of a treaty obligation in those cases where, as a result of the change, performance is no longer dependent on the sole will of the party concerned. In such circumstances, however, there may arise an obligation for another international entity to perform or ensure performance of the treaty obligation.

*Article 23. Conditions implied in the case of particular classes of treaties*

1. Certain classes of treaties or treaty obligations are to be regarded as being automatically subject to certain implied terms or conditions justifying their non-performance in appropriate circumstances, irrespective of their actual language, unless this language is such as expressly, or by necessary implication, to exclude any such term or condition.

2. The classes and the terms or conditions involved depend on the state of international law for the time being, and on the development of treaty practice and procedure, and cannot therefore be exhaustively enumerated. The following are given by way of example: [13]

(*a*) Treaties dealing with undertakings relating to topics of private international law are to be read as subject to the implied condition or exception of "*ordre public*"—i.e., that the parties are not obliged to implement the treaty in any case where to do so would be contrary to the juridical conceptions of "*ordre public*" as applied by their courts. No such term or condition is, in the absence of an express clause to that effect, to be read into treaties or treaty clauses not coming within this category.

(*b*) The establishment clauses of commercial treaties are normally to be read as subject to an implied condition to the effect that they do not prejudice the right of the local authorities to refuse admission to particular individuals, either on grounds personal to themselves, or in pursuance of a general immigration policy, or policy respecting the taking of employment, applied to all foreigners without discrimination; and similarly to expel or deport individuals.

(*c*) Commercial treaty clauses relating to the admission or import or export of goods and cargoes are normally to be read as subject to an implied condition enabling the local authorities to prohibit entirely, or to institute special regulations for, the importation or exportation of certain categories of articles on grounds of public policy, health or quarantine, such as arms, gold bullion, narcotic drugs, works of art, pest-carrying plants, etc.; or to do so on particular occasions if rendered necessary by local circumstances (e.g., to prohibit the importation of cattle coming from infected areas).

(*d*) The operation of treaties of guarantee is subject to an implied condition of appropriate conduct on the part of the State in whose favour the guarantee operates. Accordingly, the obligation to act in accordance with the guarantee will not be effective if the State in whose favour it was instituted has itself been responsible for the occurrence bringing the guarantee into play, or has refused or failed to take action, legally open to it, and possible, which would have rendered the implementation of the guarantee unnecessary, or materially less onerous.

SECTION 2. PARTICULAR QUESTIONS OF TREATY APPLICATION

SUB-SECTION I. TEMPORAL AND TERRITORIAL APPLICATION OF TREATIES

RUBRIC (*a*). TEMPORAL APPLICATION

*Article 24. Beginning and duration of the treaty obligation*

1. Subject to the provisions of articles 41 and 42 of part I of chapter 1 of the present Code, and unless the treaty itself otherwise provides, the binding effect of a treaty arises immediately on, and the obligation to carry it out dates from, its coming into force. The same applies to the faculty to claim rights under a treaty.

2. In the case of multilateral treaties, the relevant date is the coming into force of the treaty in respect of the party whose rights and obligations are in question, as provided by paragraph 4 of article 41 in part I of chapter 1 of the present Code.

3. Subject to the provisions of articles 27 to 31, inclusive, of part III of chapter 1 of the present Code, the rights and obligations provided for by a treaty continue until valid termination in accordance with the provisions of that part.

4. Unless a treaty specifically so provides, or a necessary implication to that effect is to be drawn from its terms, it cannot give rise to retroactive rights or obligations, and there exists a presumption against retroactivity.

RUBRIC (*b*). TERRITORIAL APPLICATION

*Article 25. General principles*

1. The provisions of the present sub-section have no

---

[13] Numerous categories of treaties are involved; e.g., air traffic conventions, maritime conventions, labour conventions, extradition treaties, etc. An exhaustive consideration of the matter (which the Rapporteur does not think it necessary to undertake at the present juncture) would require a detailed study of a large number of treaties and conventions belonging to each of the different classes, and also an inquiry of Governments concerning their practice in relation to the application of these treaties. Such a study would probably have to be based on information provided or collected by the Secretariat.

relevance to the case of those classes of treaties or treaty clauses that do not normally involve any question of territorial application, such as treaties of alliance, guarantee, collective self-defence, peace and friendship, recognition, institution of diplomatic relations, etc.

2. In those cases where the question of territorial application is relevant, the matter is governed primarily by the terms of the treaty itself, or of any ancillary instruments accompanying it; or, where the treaty so permits, of any declarations made by a party at the time of signature, ratification or accession.

3. In all other cases, and unless the application of a treaty is, by its terms, specifically confined (or by its nature can only relate) to a certain particular part of the territory, or of certain particular territories, of one or more of the contracting parties, its territorial application will be governed by the provisions of the remaining articles of the present rubric.

*Article 26. Application to metropolitan territory*

1. Unless a treaty otherwise provides, it applies automatically to the whole of the metropolitan territory (or to all territories forming part of the metropolitan territory) of each contracting party.

2. Subject to the provisions of paragraph 3 below, the term "metropolitan territory" is to be understood as denoting all those territories of a contracting party which are administered directly by its central government under the basic constitution of the State, in such a manner that this government is not subject, either in the domestic or in the international field, to any other or ulterior authority.

3. The constituent states, provinces or parts of a federal union or federation, notwithstanding such local autonomy as they may possess under the constitution of the union or federation, are considered to be part of its metropolitan territory for treaty and other international purposes.

*Article 27. Application to dependent territories*

1. The term "dependent territories" denotes any territories of a State that are not metropolitan territories as defined in paragraph 2 of the preceding article.

2. Subject to the provisions of paragraph 3 below, a treaty extends automatically to all the dependent territories of the contracting parties unless it otherwise provides, or unless it contains a clause permitting the separate extension or application of the treaty to such territories.

3. However, unless a treaty specifically provides to the contrary, it will have no automatic extension to dependent territories coming within any of the following classes:

(*a*) Territories which, though dependent in respect of the conduct of their foreign relations, are internally fully self-governing;

(*b*) Territories which, though not fully self-governing internally, are so in respect of the subject-matter or field to which the treaty relates;

(*c*) Territories which, though not fully self-governing, either generally, or in relation to the subject-matter or field of the particular treaty, possess their own quasi-autonomous or responsible local legislative or administrative organs; and where, according to the constitutional relationship between these territories and the metropolitan government, such organs must be consulted in regard to the application of any treaty; or where action on the part of such organs will be necessary to implement the treaty locally, if it becomes applicable to the territory.

4. In the cases covered by the preceding paragraph, the fact that the metropolitan government may possess, and may in the last resort be able to exercise, ulterior powers which would enable it to effect the compulsory application of the treaty to the territory concerned, is not a ground on which the automatic application of the treaty can be predicated.

*Article 28. Determination of the status of metropolitan and dependent territories*

1. The determination of the status of any territory, whether as a metropolitan or a dependent territory, is a question of law and fact depending on the correct interpretation of the relevant constitutional provisions and international instruments.

2. Subject to any relevant treaty provisions, and to any international right of recourse that may exist,

(*a*) Such determination is, in the first instance, one for the metropolitan government to make;

(*b*) The metropolitan government may also indicate what is covered, or not covered, as the case may be, by any particular territorial appellation or geographical description.

3. Any such determination or indication, where it purports to depart from the apparent geographical or political position as it exists at the time, must, in order to be applicable for the purposes of any particular treaty, be made and declared at the time of the conclusion of the treaty, unless it has already been notified or published in advance.

4. Paragraph 3 of the present article does not, however, as such, relate to any determination or indication resulting from a genuine change in the status or constitutional position of the territory concerned, or in the relations between it and the metropolitan government. In such cases, the applicability of the treaty in respect of the territory will depend on its terms and on the rules of (or on rules analogous to those of) state succession.

SUB-SECTION II. EFFECT OF THE TREATY
ON THE INTERNAL PLANE

RUBRIC (*a*). EFFECT OF TREATIES ON AND RESPECTING
THE INSTITUTIONS OF THE STATE

*Article 29. Relevance of the domestic aspects of treaty application*

The treaty obligation produces its effects primarily in the international field, it being the duty of the parties

to carry it out in that field. The question of its effects in the domestic field is relevant only in so far as it may affect the capacity of the parties to discharge this duty.

### Article 30. Duties of States in relation to their laws and constitutions

1. It is the duty of every State to order its law and constitution in such a way that it can, so far as that law and constitution are concerned, carry out any treaty it has entered into, and can give to any treaty obligation assumed by it such effect in its domestic field as the treaty or obligation may require.

2. From the international standpoint, the achievement of this object may result indifferently from the fact that the local law and constitution place no obstacles in the way of the due performance of the treaty obligation; or because, under the local law and constitution, treaties duly entered into are automatically applicable and self-executing domestically, without the intervention of any legislative or other specific internal action; or because the necessary legislative or other necessary steps have in fact been taken; or because the treaty is of such a character that it can be carried out without reference to the position under the domestic law or constitution concerned.

3. In those cases, however, where the treaty cannot be carried out without specific legislative, administrative or other action in the domestic field, a party to the treaty which finds itself in this position is under a duty to take such action.

4. A State having assumed a treaty obligation is equally under a duty not to take any legislative, administrative or other action, whether at the time of the entry into force of the treaty, or at any subsequent time while it remains in force, that would cause the obligation to cease to be capable of being carried out in the domestic field.

5. Provisions in treaties stating expressly that the parties undertake to take the necessary legislative and other measures necessary for the execution of the treaty are merely declaratory in their legal effect. The absence of such a provision from a particular treaty in no way absolves the parties to it from their obligations in this respect, which are inherent in the character of a treaty and in the general rules of international law applicable to treaties.

### Article 31. Position and duties of particular organs of the State

1. Internationally, and irrespective of whether its domestic constitution is a unitary or a federal one, a State constitutes a single indivisible entity, and it is on this entity that the duty to carry out treaty obligations rests. The agency or organ of the State responsible on the internal plane for carrying out the treaty, or for any failure to carry it out, as the case may be, is a matter of purely domestic, not international, concern.

2. It follows that the State, as an international entity, is, in respect of any treaty obligation undertaken by it, both internationally bound to secure due performance of the obligation on the part of its legislative, judicial and administrative or other organs, and also internationally responsible for any failure on their part to do so.

3. The fact that a particular organ of the State is, on the domestic plane, justified in not performing (and even possibly obliged not to perform) the treaty, in no way affects the international responsibility of the State.

RUBRIC (b). EFFECTS OF TREATIES ON AND IN RESPECT OF PRIVATE INDIVIDUALS AND JURISTIC ENTITIES WITHIN THE STATE

### Article 32. Treaties involving obligations for private individuals or juristic entities

In those cases where a treaty provides for duties to be carried out in their individual capacity by nationals (including juristic entities) of the contracting States, or imposes prohibitions or restrictions on specified kinds of individual conduct, the contracting States are under an obligation to take such steps as may be necessary in order to ensure that their nationals and national entities are free under the relevant domestic laws to carry out these duties or to observe these prohibitions or restrictions; and also that, in so far as may be necessary, they are obliged under those laws to do so.

### Article 33. Treaties involving benefits for private individuals or juristic entities

1. Subject to the provisions of paragraph 2 below, where a treaty provides for rights, interests or benefits to be enjoyed by private individuals (including juristic entities), or where the treaty otherwise redounds to their advantage, it is the duty of the contracting States to place no obstacle in the way of the enjoyment of these rights, interests, benefits or advantages by the individuals or juristic entities concerned, and to take all such steps as may be necessary to make them effective on the internal plane.

2. The provisions of the preceding paragraph do not affect the discretionary power of a State or Government to waive, compound or forgo rights, interests, benefits or advantages enjoyed by its nationals under a treaty to which it is a party. Private individuals and juristic entities may also, in so far as they are concerned, waive, compound or forgo rights, interests, benefits or advantages, reserved or accruing to them under or by reason of a treaty. Such action cannot, however, deprive their State or Government, as a party to the treaty, of the right to claim or insist on full performance of it.

SUB-SECTION III. MISCELLANEOUS PARTICULAR QUESTIONS OF TREATY APPLICATION

[Left blank for the time being for reasons stated in the commentary.]

## DIVISION B. CONSEQUENCES OF AND REDRESS FOR BREACH OF TREATY

SECTION 1. CONSEQUENCES OF BREACH OF TREATY

### Article 34. Basic principles

1. Failure to comply with the provisions of a treaty will constitute a breach of it, or alternatively involve an