fore to defer them until the chapter on that subject has been drafted.

# DIVISION B. CONSEQUENCES OF AND REDRESS FOR BREACH OF TREATY

SECTION 1. CONSEQUENCES OF BREACH OF TREATY

### Article 34. Basic principles

163. *Paragraph 1.* This requires no comment. A *justified non-performance* of a treaty obligation is clearly *not a breach of the treaty*. If, purely formally, it may be said to constitute one, no illegality in the sense of a breach of international law is thereby involved. Where international law itself excuses or justifies the breach, there can be no infraction of international law.

164. *Paragraph 2.* The second sentence is consequential upon the first and requires no comment. The first sentence itself reflects the finding of the Permanent Court of International Justice in the Chorzów Factory case (Claim for Indemnity) (Jurisdiction). In this case the Court said:

> "It is a principle of international law that the breach of an engagement involves an obligation to make reparation in an adequate form. Reparation, therefore, is the indispensable complement of a failure to apply a convention, and there is no necessity for this to be stated in the convention itself." [142]

165. "... irrespective of its character or gravity". The character or gravity of the breach of treaty is only material on the question of the nature or extent of the reparation due. It cannot affect the question of responsibility which exists, at any rate in principle, for any breach, however trivial.

166. *Paragraph 3.* Because a breach of treaty gives rise immediately to international responsibility on the part of the State committing the breach, there arises at once an obligation for that State to discharge this responsibility. This obligation, in principle at any rate, arises forthwith and is not dependent upon the taking of any specific steps by the other party or parties, or by any international institution. There may, of course, be a question whether there has in fact been a breach, and whether the existence of the breach is duly established, but that is another matter. Once it is established, responsibility exists, and the responsibility for discharging that responsibility, so to speak, rests upon the State concerned, which then has the duty, if necessary, of taking the initiative in effecting the necessary reparation.

167. *Paragraph 4.* If the responsibility arising from the breach is not discharged, then a right at once arises for the other party or parties to take remedial action and to seek such redress as may be open to them.

### Article 35. Method of discharging the responsibility arising from breach of treaty

168. *Paragraph 1.* In a number of cases, the penalties or the reparation due for breach of treaty is provided for in the treaty itself. If the treaty thus provides for penalties or reparation, then, subject to the correct interpretation of the treaty, it is probably a reasonable inference that the parties intended these particular penalties or means of reparation to exclude any others, so that in complying with the provisions concerned, the State which has committed the breach will fully discharge its responsibility.

169. In cases where the treaty is silent about the consequences of a breach, then, subject to the remaining provisions of this article, the general rules of international law relating to the method by which State responsibility must be discharged, will apply. A breach of treaty is simply one form of international wrong. In a certain sense, a breach of treaty is itself an infraction of a general rule of international law, namely the rule of law which enjoins that treaties regularly entered into must be carried out. Where there is no reason to apply any other rule, therefore, the general rules of international law concerning reparation, and the method of furnishing it, will be applicable.

170. *Paragraph 2.* Nevertheless, it seems desirable not to leave the matter entirely on this general footing and therefore to provide some specific rules for discharging responsibility arising from breach of treaty. They will vary according to the nature of the breach, and this paragraph lists the three main classes of cases into which breaches of treaty normally fall.

171. *Paragraph 3.* In this paragraph, an attempt is made, in relation to each of the three classes of cases mentioned in paragraph 2, to indicate what specific action is appropriate in order to discharge the resultant responsibility. The paragraph as a whole is based on the principle that reparation by way of payment of damages is not necessarily sufficient; and this view, which is of course well known in private law, also derives authority internationally from another part of the decision of the Permanent Court in the Chorzów Factory case, cited in paragraph 164 above. The Court said that reparation

> "must, as far as possible, wipe out all the consequences of the illegal act and re-establish the situation which would in all probability have existed if that act had not been committed." [143]

The sub-heads of this paragraph attempt to work out the practical consequences of this principle in relation to each of the classes of cases mentioned in paragraph 2.

172. *Paragraph 4.* In connexion with reparation, and in particular with damages, a number of incidental questions are liable to arise, such as the question of "remoteness", of whether interest is due, etc. Subject to any specific provisions of the treaty itself, all such questions must be governed by the rules of the ordinary international law of claims.

---

[142] Publications of the Permanent Court of International Justice, *Collection of Judgments*, series A, No. 9, p. 21.

[143] *Ibid.*, p. 47.

*Article 36. Consequences of breaches of treaties involving benefits for individuals*

173. The rule stated in this article represents a further aspect of a position already discussed in paragraph 161 above in connexion with paragraph 2 of article 33. According to a very well-established principle of international law, it is of course always the case that an injury to the national of a State, whether resulting from a breach of a general rule of international law or of a treaty, constitutes by that very fact an injury to the State itself; and where the injury to the individual represents the sole material consequence of the breach of law or treaty, such injury will normally constitute the measure of the damages due to the State. This is, however, subject to the rule already referred to, that any additional and independent injury caused to the State as such, e.g. through violation of its jurisdictional rights or through an offence caused to its flag, must be the subject of separate compensation. Furthermore, the Permanent Court, in another phase of the Chorzów Factory case (Claim for Indemnity) (Merits), considered that even in those cases where, ostensibly, only injuries to individuals had occurred, a separate damage to the State must still be presumed to exist, the damage to the individual affording merely a convenient method of calculating the reparation due to the State in respect of the injury to its national. The text of the relevant passage is worth quoting in full:

> "The reparation due by one State to another does not however change its character by reason of the fact that it takes the form of an indemnity for the calculation of which the damage suffered by a private person is taken as the measure. The rules of law governing the reparation are the rules of international law in force between the two States concerned, and not the law governing relations between the State which has committed a wrongful act and the individual who has suffered damage. Rights or interests of an individual the violation of which rights causes damage are always in a different plane to rights belonging to a State, which rights may also be infringed by the same act. The damage suffered by an individual is never therefore identical in kind with that which will be suffered by a State; it can only afford a convenient scale for the calculation of the reparation due to the State." [144]

SECTION 2. MODALITIES OF REDRESS FOR BREACHES OF TREATY

SUB-SECTION i. GENERAL STATEMENT OF AVAILABLE REMEDIES

*Article 37. Action by way of redress open to the parties*

174. The principal comment required on this article is to draw attention to the safeguards suggested in connexion with the taking of certain kinds of action by way of redress, and involving for the most part an offer of recourse to arbitration, or willingness to accept arbitration or judicial settlement as a condition of having recourse to the redress in question. In this connexion, it is necessary to draw a distinction between, on the one hand, the question which has been dealt with in earlier parts of this chapter, whether a non-performance of a treaty obligation in certain circumstances is justified in law and, on the other hand, the existence of any procedural conditions under which, in the circumstances, the non-performance (however justified) ought to be carried out. There can be no doubt, for instance, that if one party definitely fails to perform a treaty obligation, the other party will, subject to what has been said earlier, be justified in a corresponding or perhaps some other non-performance; or rather, more accurately, that such action on its part will not amount to an infraction of international law. Nevertheless, it may be desirable to subject the right to take such action to certain procedural conditions. These are considered in articles 38 and 39.

SUB-SECTION ii. SPECIAL PROCEDURAL CONSIDERATIONS AFFECTING CERTAIN MEANS OF REDRESS

*Article 38. Case (c) of Article 37*

175. As this case contemplates the total termination of the treaty obligation on grounds of fundamental breach, it is sufficient to refer back to the articles dealing with that matter in the Rapporteur's second (1957) report, in particular article 20 and the commentary thereon, dealing with the question of arbitration or judicial settlement.

*Article 39. Cases (d), (e) and (f) of Article 37*

176. *Paragraph 1.* Since counter-measures, in order to be effective, may have to be taken at very short notice, it would not be possible to make them conditional upon a prior offer or acceptance of arbitration or judicial settlement, but it can be laid down that they must be accompanied by an offer to that effect, or that an offer made by the other party must be accepted, as a condition of their continued validity.

177. *Paragraph 2.* This confers a general right on the tribunal, in the event of arbitration or judicial settlement, to suspend, if it thinks fit, any countermeasures which may already have been instituted. The only exceptions to this are those measures contemplated by sub-paragraph (*e*) of article 37. Here it would seem sufficient to provide that the measures in question can only take a blocking character pending the final outcome of the case, since in that case, the measures would merely be provisional and precautionary.

178. *Paragraph 3.* Sub-paragraphs (*a*) and (*b*) impose some general limitations on the taking of any counter-measures at all. These are believed to reflect ordinary principles of international law, but in view of the detailed provisions of article 18, it may be unnecessary to include mention of them here.

179. Sub-paragraph (*c*) provides for the cessation of the counter-measures so soon as the occasion for them is past. The same observation applies here (see paras. 55-57 and 67 above).

---

[144] *Ibid.*, No. 17, p. 28.