# EXHIBIT 21

21. As to the term 'essential', it may be assumed from a textual interpretation that it is meant to refer to a provision at the heart of a treaty, and without which the future performance of a treaty would be without interest to the parties.[56] In cases of treaties dealing with a limited subject matter, this test will usually lead to clear results. Hence, the duty to extradite would be essential to the accomplishment of an extradition treaty, as would the obligation to carry out works to a joint construction project. Outside these clear-cut cases, the meaning of the term is difficult to ascertain. The *travaux préparatoires* suggest that for a provision to be essential, it need not necessarily regulate the central purpose of the treaty. Rather, when replacing the term 'fundamental breach'—which had appeared in Fitzmaurice's draft Articles[57]—by 'material breach', the ILC intended to broaden the scope of the provision so as to cover provisions which the parties considered to be essential despite their ancillary character.[58] As a result of that change of wording, it seems for example that the violation of dispute-settlement provisions in a treaty otherwise concerned with different matters can constitute a 'material breach'.[59]

22. In international jurisprudence, very few decisions have undertaken a proper analysis of the content of Article 60, paragraph 3(b). In a number of instances, courts and tribunals have merely restated the necessity to distinguish between 'normal' and 'material' violations of a treaty.[60] Other decisions only highlight particular aspects of the problem. In the *Nicaragua* case, the Court had to decide which of the various actions undertaken by the United States amounted to material breaches of the 1956 Friendship, Commerce and Navigation (FCN) Treaty in force between both States. The Court did not follow the Nicaraguan allegation that all acts committed by the United States defeated the object and purpose of the treaty. Instead, it distinguished between, on the one hand, the mining of Nicaraguan ports and direct attacks on ports and oil installations and, on the other hand, the United States' drastic cuts in the import quotas for Nicaraguan sugar and its efforts to prevent international organizations from granting loans to Nicaragua. While the former acts constituted material breaches of the FCN treaties, a different conclusion was warranted for the latter.[61] From this, it may be inferred that flagrant violations of a generally formulated treaty obligation are likely to be seen as 'material breaches' in the sense of Article 60, paragraph 3(b). In addition, a decision of an Austrian court suggests that a provision, which in the initial treaty relation might have been only of limited importance, may acquire the status of an 'essential' provision if the other treaty provisions become obsolete due to subsequent developments.[62]

---

[56] M. Gomaa, *supra* n 27, p 31.

[57] His draft Art. 19, para. 2 of the Second Report of 1957, *YILC*, 1957, vol. II, p 31; see *supra* n 37.

[58] ILC Commentary, *YILC*, 1966, vol. II, p 255 (para. 9); see also Waldock's Second Report, *YILC*, 1963, vol. II, p 75 (para. 11).

[59] See Waldock, ibid; for a different interpretation of para. 3(b) see the statement of the Uruguayan delegate Jiménez de Aréchaga, A/CONF.39/11, para. 39 at p 356. Apart from the example of dispute-settlement clauses, no examples of such 'essential ancillary' character are given.

[60] See eg *Malachtou v Armefti and Armefti*, Judgment of the Cyprus Supreme Court of 20 January 1987, *ILR*, vol. 88, p 199, at p 210.

[61] *ICJ Reports 1986*, p 14, at p 138 (paras 275–6). It is not entirely clear from the Court's decision whether the US import cut and the opposition to loan grants actually constituted breaches of the FCN treaty.

[62] See the position taken by the Austrian government in a Swiss-Austrian dispute relating to the right to acquire real property under a Treaty of Establishment of 1875; noted by P. Fischer and G. Hafner, 'Austrian Practice in International Law', *ÖZöR*, 1976, vol. 26, p 301, at pp 345–6. The case is discussed in B. Simma, 'Termination and Suspension of Treaties. Two Recent Austrian Cases', *GYBIL*, 1978, vol. 21, p 74.

SIMMA/TAMS