

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

July 7, 2014

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
United States District Courthouse
500 Pearl Street
New York, NY 10007

                        Re:   *Georges v. United Nations, et al.*,
                                 13 Civ. 7146 (JPO)

Dear Judge Oetken:

      The United States of America, by and through its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this letter in further support of its Statement of Interest, dated March 7, 2014, concerning the defendants' immunity from legal process and suit.

      The United States makes this submission pursuant to 28 U.S.C. § 517, in furtherance of the United States' own interests, and consistent with the United States' obligations as host nation to the United Nations and as a party to treaties governing the affairs and immunities of the UN.[1] The member states of the UN have provided the UN with absolute immunity so that it can carry out its important work throughout the world without having to face the burdens and expenses of litigation in the courts of its many members. The United States has consistently asserted the absolute immunity of the UN to lawsuits filed against it in U.S. courts, and the courts have consistently upheld the UN's immunity. Moreover, the high-ranking officials who have been named as defendants also enjoy immunity from this lawsuit, and they and the UN itself are immune from service. Because the UN and its officials are immune from legal process and suit in this matter, the United States respectfully urges the Court to dismiss this action for lack of subject matter jurisdiction.

---

[1] The Government incorporates those abbreviations defined in its March 7, 2014, submission.

Hon. J. Paul Oetken
Page 2

### A. The Immunity of the UN and Its Officials Is Absolute and Unaffected by Any Alleged Breach of the General Convention or SOFA

Plaintiffs' argument that the UN's immunity from suit under the General Convention is conditioned on providing a mechanism to resolve Plaintiffs' tort claims is erroneous. Nothing in the General Convention, or in the Status of Forces Agreement between the UN and the Government of Haiti ("SOFA"), suggests that the UN's immunity is conditional. To the contrary, as reflected by the text and drafting history of the General Convention, and as confirmed by every court to have considered the issue, the UN's immunity is absolute.

The Executive Branch, and specifically the Department of State, is charged with maintaining relations with the United Nations, and so its views on the General Convention are entitled to deference. *See Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961); *Tachiona v. United States,* 386 F.3d 205, 216 (2d Cir. 2004). Such deference is particularly warranted where, as here, the Government's views are shared by the UN. *See* Docket No. 21, Exs. 1 and 2; *see also, e.g., Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 185 (1982). Because the Government's interpretation is supported by the General Convention's text and drafting history, as well as the courts (*see infra,* Points A.2-3), the Government's views are reasonable and accordingly entitled to "great weight." *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 399 (2d Cir. 2004) ("The government's interpretation of Article 17 is faithful to the Warsaw Convention's text, negotiating history, purposes, and the judicial decisions of sister Convention signatories; as such, we ascribe 'great weight' to the government's views concerning the meaning of that provision.") (citation omitted); *see also Fund for Animals v. Norton*, 365 F. Supp. 2d 394, 414 (S.D.N.Y. 2005) (when "faced with two opposing constructions," granting deference to Executive Branch's interpretation of a treaty which was consistent with language and history of the treaty), *aff'd*, 538 F.3d 124 (2d Cir. 2008). The Court should therefore conclude that the UN's immunity from suit bars this action.

#### 1. The Text of the General Convention Requires That A Waiver of Immunity Must Be Express

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín v. Texas*, 552 U.S. 491, 506 (2008). The UN Charter provides that the UN "shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment [sic] of its purposes." UN Charter, art. 105, § 1. The UN's General Convention, which the UN adopted shortly after the UN Charter, defines the UN's privileges and immunities, and specifically provides that "[t]he United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has *expressly waived* its immunity." General Convention, art. II, § 2 (emphasis added). The SOFA similarly provides that MINUSTAH "shall enjoy the privileges and immunities . . . provided for in the [General Convention]." SOFA, art. III, § 3.

Hon. J. Paul Oetken
Page 3

      The Second Circuit and other courts have uniformly construed the General Convention to mean exactly what the text states: any waiver of the UN's immunity must be express. *See, e.g., Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010) ("The United Nations enjoys absolute immunity from suit unless 'it has expressly waived its immunity.'") (citation omitted); *Emmanuel v. United States*, 253 F.3d 755, 756 n.2 (1st Cir. 2001) ("United Nations immunity is absolute unless expressly waived."); *Askir v. Brown & Root Servs. Corp.*, 95 Civ. 11008, 1997 WL 598587, at *6 (S.D.N.Y. Sept. 23, 1997) ("The [General] Convention . . . accords the United Nations immunity from suit except where the United Nations expressly waives it."); *Askir v. Boutros-Ghali*, 933 F. Supp. 368, 372 (S.D.N.Y. 1996) ("The U.N. Convention by its terms provides immunity from 'every form of legal process,' the only exception being express waiver by the United Nations itself."); *Boimah v. United Nations General Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y. 1987) ("Under the [General] Convention the United Nations' immunity is absolute, subject only to the organization's express waiver thereof in particular cases."). *Bisson v. United Nations*, No. 06 Civ. 6352 (PAC), 2007 WL 2154181, at *10 (S.D.N.Y. July 27, 2007) ("under the UN Convention, the United Nations' immunity is absolute, subject *only* to express waiver") (emphasis in original), *report and recommendation adopted by* 2008 WL 375094 (S.D.N.Y. Feb. 11, 2008).

      Plaintiffs' position that the UN's immunity under Section 2 is conditional on its providing appropriate modes of settling disputes of a private law character under Section 29[2] is contrary to the plain language of the General Convention, which provides that the UN "shall enjoy absolute immunity from every form of legal process *except* insofar as in any particular case it has expressly waived its immunity." General Convention § 2 (emphasis added). The word "except" is followed by a category of one: express waiver. The UN's obligation to provide for dispute resolution mechanisms for claims by third parties against it under Section 29(a) is not included in the category of the exceptions to immunity. Plaintiffs argue, in effect, that such an exception should exist, but the text of the General Convention makes clear that it does not.

      Nor has there been an express waiver by the UN of its immunity in this case. An express waiver of immunity "requires a clear and unambiguous manifestation of the intent to waive." *United States v. Chalmers*, 05 Cr. 59 (DC), 2007 WL 624063, at *2 (S.D.N.Y. Feb. 26, 2007); *see also Baley v. United Nations*, No. 97-9495, 1998 WL 536759, at *1 (2d Cir. June 29, 1998) (affirming dismissal where the UN "informed this Court by letter that it has not waived its immunity from suit" and plaintiff "presented no evidence of such a waiver"); *Van Aggelen v. United Nations,* No. 06 Civ. 8240 (LBS), 2007 WL 1121744, at *1 (S.D.N.Y. Apr. 12, 2007) ("[T]he U.N. has specifically invoked its immunity in this case by letter to the (then) U.S. Ambassador to the U.N. . . . Because the U.N. is immune from suit and has not waived its immunity the claims against it must

---

[2] Section 29(a) of the General Convention provides: "The United Nations shall make provisions for appropriate modes of settlement of: (a) disputes arising out of contracts or other disputes of a private law character to which the United Nations is a party."

be dismissed with prejudice."); *De Luca v. United Nations Org.*, 841 F. Supp. 531, 533 n.1 (S.D.N.Y. 1994) ("Plaintiff has not alleged that the U.N. has expressly waived its immunity in this instance and no evidence presented in this case so suggests."), *aff'd*, 41 F.3d 1502 (2d Cir. 1994); *Klyumel v. United Nations*, No. 92 Civ. 4231 (PKL), 1992 WL 447314, at *1 n.1 (S.D.N.Y. Dec. 4, 1992) ("There is no allegation in the complaint of any express waiver in the instant case, and the [UN's] rejection of attempted service on two occasions would appear to 'manifest [ ] an intent not to waive immunity in this particular instance.'") (citation omitted). As the D.C. Circuit has observed, "[t]he requirement of an express waiver suggests that courts should be reluctant to find that an international organization has inadvertently waived immunity when the organization might be subjected to a class of suits which would interfere with its functions." *Mendaro v. World Bank*, 717 F.2d 610, 617 (D.C. Cir. 1983).

Furthermore, it is plaintiff's burden to demonstrate that the UN has waived its immunity. *See Baley*, 1998 WL 536759, at *1; *D'Cruz v. Annan,* 05 Civ. 8918 (DC), 2005 WL 3527153, at *1-2 (S.D.N.Y. Dec. 22, 2005) (dismissing claims against the UN where "plaintiff has failed to allege facts demonstrating that immunity from suit has been waived"), *aff'd*, 223 F. App'x 42 (2d Cir. 2007); *Bisson*, 2007 WL 2154181, at *10 ("[t]he burden is on [plaintiff] to prove the [UN] waived immunity, [but plaintiff] has not met that burden"), *report and recommendation adopted by* 2008 WL 375094 (S.D.N.Y. Feb. 11, 2008).

### 2. The UN Has Not Expressly Waived, But Rather Has Expressly Asserted, Its Immunity in This Case

In this case, the UN has repeatedly asserted its immunity. *See* Exhibits 1 and 2 attached to the Government's March 7, 2014, submission (UN twice asserting its immunity in this case). Plaintiffs have not presented – and cannot present – any evidence to the contrary. Accordingly, the UN is entitled to absolute immunity from suit, and the Court lacks subject matter jurisdiction over this action. *See, e.g., Baley,* 1998 WL 536759, at *1; *Van Aggelen,* 2007 WL 1121744, at *1; *Bisson*, 2007 WL 2154181, at *4, 8 (finding the UN immune from suit because the "UN's letters [to the United States] asserted absolute immunity and clearly stated that the UN and the [World Food Programme ("WFP")] have not waived immunity from [plaintiff's] suit," the United States "submitted papers in support of the UN and WFP defendants' claim of absolute immunity," plaintiff did not "present[] any evidence of an express waiver," and plaintiff's "arguments suggesting implied waiver are not applicable against the UN").

Any purported inadequacies in the claims resolution process referred to in Section 29 of the General Convention, or even the absence of such a process, fails to establish that the UN has expressly waived its immunity from suit. That the UN allegedly has not complied with this obligation under the Convention does not amount to an express waiver of immunity. Indeed, as the Second Circuit has found, "crediting this argument would read the word 'expressly' out of the [General Convention]." *Brzak*, 597 F.3d at 112.

In *Bisson*, for example, the plaintiff, a UN employee, filed suit against the UN for injuries she sustained during an attack on a UN facility in Baghdad. *See* 2007 WL 2154181, at *1. The plaintiff alleged that "the staff compensation system through which the plaintiff ha[d] been trudging for nearly four years did not provide for compensation for personal injury claims," and that "*there is absolutely no system whatsoever through which a third party tort victim may resolve a claim with the United Nations*." *Id.* at *9 n.21 (emphasis in original). Because the UN had allegedly failed to provide an "appropriate mode of settlement" for her tort claim in violation of Section 29 of the General Convention, the plaintiff asserted that the UN had waived its immunity. *Id.* at *9. The court disagreed, holding:

> [S]ection 29(a) of the [General] Convention does not contain any language effecting an express waiver under any circumstances. Even assuming *arguendo* that the UN and the WFP have failed to provide an adequate settlement mechanism for Bisson's claims, such a failure does not constitute the equivalent of an express waiver of immunity. An express waiver may not be inferred from conduct.

*Id.* The court further noted that the fact that the plaintiff was an employee of the UN – and thus could avail herself of the staff compensation system – was not material to the question of waiver. *See id.* at *9 n.22 (concluding that the plaintiff's "relationship to the defendants is irrelevant. Even if she were not an employee of the WFP or the UN, both organizations would still be immune from suit by her, and [any failure to comply with] § 29(a) still would not constitute an express waiver.").

Indeed, every court to have evaluated the UN's immunity, including the Second Circuit, has based its determination on the unequivocal text of Article 2 of the General Convention, which grants immunity to the UN, and not on the existence or adequacy of an alternative redress mechanism. *See, e.g., Brzak*, 597 F.3d at 112 ("Although plaintiff[] argue[s] that purported inadequacies with the United Nations' internal dispute resolution mechanism indicate a waiver of immunity, crediting this argument would read the word 'expressly' out of the [General Convention]."); *Sadikoglu v. United Nations Development Programme*, No. 11 Civ. 0294(PKC), 2011 WL 4953994, at *5 (S.D.N.Y. Oct. 14, 2011) ("Nor does the contested status of the parties' efforts to arbitrate or settle the current dispute strip UNDP of its immunity. . . . [N]othing in [Section 29] or any other portion of the [General Convention] refers to or limits the UN's absolute grant of immunity as defined in article II – expressly or otherwise. Furthermore, any purported failure of UNDP to submit to arbitration or settlement proceedings does not constitute a waiver of its immunity under article II, section 2."); *Boimah*, 664 F. Supp. at 71 (noting that "[u]nder the Convention the United Nations' immunity is absolute, subject only to the organization's express waiver thereof in particular cases," and, without evaluating whether plaintiff had other avenues of relief, finding that the UN did not "expressly waive[] its immunity to employee actions brought pursuant to Title VII"). Therefore, the

existence or adequacy of an alternative remedy is irrelevant to the Court's immunity analysis.

Nor do allegations of wrongdoing or improper motivation alter the UN's absolute immunity under the General Convention.  *See Brzak*, 597 F.3d at 110, 112 (UN immune under the General Convention notwithstanding allegations of sex discrimination); *Boimah*, 664 F. Supp. at 70-71 (UN immune under the General Convention notwithstanding allegations of race discrimination); *Askir v. Boutros-Ghali*, 933 F. Supp. 368, 373 (S.D.N.Y. 1996) ("plaintiff's allegations of malfeasance do not serve to strip the United Nations or [the individual defendant] of their immunities afforded under the U.N. Convention"); *see also De Luca*, 841 F. Supp. at 535 (defendant retained immunity under the International Organizations Immunities Act ("IOIA") notwithstanding allegations of malfeasance); *Tuck*, 668 F.2d at 550 n.7 (IOIA immunity applied notwithstanding allegations of race discrimination); *Donald v. Orfila*, 788 F.2d 36, 37 (D.C. Cir. 1986) (allegations of improper motive did not strip individual of immunity under IOIA).[3]

Quite simply, the UN's immunity is "absolute," absent an "express" waiver.  *Brzak*, 597 F.3d at 112.  Because the UN has not expressly waived its immunity in this case, it is immune from this lawsuit.

### 3. The General Convention's Drafting History Confirms That the UN's Immunity Is Not Contingent on the Existence or Adequacy of a Dispute Resolution Mechanism

Although the UN's absolute immunity is established by the plain meaning of the treaty, the drafting history confirms that the UN's immunity is not contingent on whether or how it settles disputes.  Before the drafting history of the General Convention is addressed, it is important to note that the United States representative to the UN understood, from the date that the UN Charter was signed, that

---

[3] Because the General Convention provides the UN with absolute immunity, and the individual defendants with diplomatic immunity, Plaintiffs' argument that defendants' alleged malfeasance strips them of immunity fails as a matter of law.  In any event, plaintiffs are incorrect that the General Convention is *lex specialis* such that the IOIA has no application to this case.  *See* Pl. Memo at 36 n.9.  First, Plaintiffs' contention that the General Convention conflicts with the IOIA is without any support, and rests on the flawed premise that immunity under the General Convention is conditioned on providing dispute resolution mechanisms.  Because there is no conflict, the courts have considered the immunities of the UN and its officials under both the General Convention and the IOIA.  *See, e.g.*, *Brzak*, 597 F.3d at 112-13 (holding that the UN is immune under both the General Convention and the IOIA).  Second, even if Plaintiffs' theory of the General Convention were correct, such that it did not provide defendants in this case with immunity, the IOIA would still provide them with immunity.  *See id.*  The IOIA simply provides an additional set of immunities for the UN and its officials.

> [t]he United Nations, being an organization of all of the member states, is clearly not subject to the jurisdiction or control of any one of them and the same will be true for the officials of the Organization. The problem will be particularly important in connection with the relationship between the United Nations and the country in which it has its seat.

Report to the President on the Results of the San Francisco Conference by the Chairman of the United States Delegation, the Secretary of State (June 26, 1945), *reprinted in* 13 Digest of Int'l Law 37 (1963), attached hereto as Exhibit A. Thus, the work of building on the privileges and immunities provisions of the UN Charter, including the statement that the UN "shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment [sic] of its purposes[,]" Charter § 105(1), was undertaken with the understanding – at least as far as the United States was concerned – that the UN would be absolutely immune from the jurisdiction of all of its members.

Nonetheless, Plaintiffs assert that the UN's "founders . . . understood the importance of limiting UN immunity such that the organization could . . . fulfill its responsibilities to innocent third parties harmed by UN operations . . . ." Plaintiffs' Memorandum of Law in Opposition to the Government's Statement of Interest, dated May 15, 2014 ("Pl. Memo"), at 14. In support, Plaintiffs cite to a sentence in the report of the Executive Committee of the Preparatory Commission, which states, "It should be a principle that no immunities and privileges, which are not really necessary, should be asked for." Pl. Ex. 2, the Study on Privileges & Immunities, PC/EX/113/Rev.1, at 70, Nov. 12, 1945, art. 5. The sentence relied upon by Plaintiffs does not state, or even suggest, that the UN's immunity is contingent upon providing a mechanism for dispute resolution, nor does it suggest that the UN can implicitly waive its immunity. Moreover, the sentence refers to the immunities and privileges of "specialised agencies," such as the International Monetary Fund and the International Bank for Reconstruction and Development, which operate independently of the UN. *Id*.[4]

Plaintiffs also rely on the statement by the UN's Executive Committee of the Preparatory Commission to the effect that when the UN enters into contracts with private individuals or corporations, "it *should* include in the contract or arbitration disputes arising out of the contract, *if it is not prepared to go before the Courts*." Pl. Memo at 19-

---

[4] A different treaty governs the privileges and immunities of the specialized agencies. *See* Convention on the Privileges and Immunities of the Specialized Agencies of the United Nations 33 U.N.T.S. 261.The United States is not a party to the Convention on the Privileges and Immunities of the Specialized Agencies. *See* UN Treaty Collection, Status as of June 25, 2014, *available at* https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=III-2&chapter=3&lang=en. In the United States, the privileges and immunities of certain specialized agencies are governed by the IOIA, 22 U.S.C. §22 U.S.C. §§ 288-288*l*.

20 (citing Pl. Ex. 2) (first emphasis added). The use of the word "should" is hortatory and undermines plaintiffs' position that the UN's immunity is conditional on its providing a dispute resolution mechanism.

Nor do drafts of the General Convention state that providing access to alternative methods of dispute resolution is a "critical pre-condition to immunity," Pl. Memo at 20, as Plaintiffs argue. Although, as Plaintiffs point out (Pl. Memo at 20), Article 9 of the first draft of the General Convention was entitled "Control of Privileges and Immunities of Officials[,]" that article contained no mention of any pre-condition to the UN's immunity. *See* Pl. Ex. 9, art. 9. Moreover, the language regarding "[c]ontrol" disappeared in subsequent drafts of the General Convention. *See* Pl. Ex. 10-11. What is constant throughout the drafts is that they provide for absolute immunity for the UN, subject only to express waiver. Pl. Ex. 9, art 4(1); Pl. Ex. 10, art. 2 and 6 (providing that the UN "shall enjoy immunity from every form of judicial process except to the extent it express waives its immunity"); Pl. Ex. 11 (same). By the same token, the provisions for UN immunity and dispute resolution mechanisms remained in separate sections of the draft convention, and without any link between them. Nor is there any suggestion in the drafting history that the UN's immunity may be waived implicitly if the UN does not comply with another provision of the General Convention. To the contrary, the drafters made clear in the Convention that any waiver of the UN's immunity must be "express." Ex. 10, art. 2.

The clear and consistent intent of the drafters that any waiver be express is reflected in the drafters' repeated statements that only the Secretary-General can waive the immunity of UN officials. Pl. Ex. 19, art. 8; *see also* Pl. Ex. 2, art. 7 ("While it will clearly be necessary that all officials, whatever their rank, should be granted immunity from legal process in respect of acts done in the course of their official duties, . . . . the Secretary-General both can waive immunity and will in fact do so in every case where such a course is consistent with the interests of the United Nations."). The drafting history, therefore, does not indicate that the UN can implicitly waive its absolute immunity, or that its immunity is contingent on the existence or adequacy of dispute resolution mechanisms.

Finally, before the Preparatory Commission transmitted a draft convention to the General Assembly for its consideration, the Commission studied a set of precedents for the UN's privileges and immunities. *See* Report of the Preparatory Commission of the UN (Dec. 23, 1945), UN Doc. PC/20 ¶¶ 3 at 61, 64-71, excerpts of which are attached as Exhibit B hereto.[5] With respect to the International Monetary Fund (IMF), the relevant provision, entitled "Immunities from Judicial Process," stated that the IMF's "property and its assets, wherever located, and by whomsoever held, shall enjoy immunity from

---

[5] Plaintiffs cite to the Report of the Executive Committee of the Preparatory Commission (Pl. Memo at 19-20 & Ex. 2), which was addressed to the Preparatory Commission, which based much of its work on that of the Executive Committee. Ex. B at 5 ¶ 4.

every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract." *Id.* at 64 ¶ 6. By contrast, with respect to the International Bank for Reconstruction and Development, the relevant provision stated, "Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities." *Id.* ¶ 7. The Preparatory Committee ultimately chose to include language identical to that of the IMF immunity provision in the draft convention submitted to the General Assembly. *Id.* at 73 (draft Article 2). That is the same language used in Section 2 of the General Convention (except for the reference to contractual terms, which was presumably dropped as redundant of the waiver exception to immunity). Thus, this history demonstrates that the drafters of the General Convention were presented with a choice between absolute immunity subject only to waiver, and immunity subject to exceptions that would permit lawsuits in the national courts under various circumstances. The General Assembly, in approving the General Convention, chose the former.

The drafting history of the General Convention thus does not support Plaintiffs' position that the UN cannot enjoy immunity unless it provides for a dispute resolution mechanism. If anything, the drafting history reflects a bargain between the UN and its member states in which, in exchange for Section 2, which establishes the UN's absolute immunity, the UN, in Section 29, agreed to provide for dispute resolution mechanisms for third-party claims. But the drafting history does not reflect any intent to make the UN's immunity in any particular case legally contingent on the UN's providing a forum for, or satisfying the claims of, third parties in that case. In any event, however, the drafting history could not overcome the fact that the final text of the General Convention, as adopted by the General Assembly, and as ratified by the United States Senate, does not include any such condition.

> **4. The Foreign Authorities Cited by Plaintiffs Do Not Support Their Contention That a Breach of the General Convention Waives the UN's Immunity From Suit**

Plaintiffs and the putative *Amici Curiae* fail to cite any case in which a foreign court determined that the UN waived its immunity by purportedly breaching the General Convention.

In interpreting a treaty, "opinions of our sister signatories . . . are entitled to considerable weight." *Abbott v. Abbott*, 560 U.S. 1, 16 (2010). However, the cases cited by Plaintiffs are either inapposite or otherwise unsupportive of Plaintiffs' position:

- *Drago v. International Plant Genetic Resources Institute* (Sup. Ct. of Cassation, (Feb. 19, 2007),), *see* Pl. Memo at 23 & Ex. 16, does not involve the UN, but rather was a lawsuit against private corporation.

- *UNESCO v. Boulouis, Cour d'Appel*, Paris (Fr.), Jun. 19, 1998, *see* Pl. Memo at 22 & Ex. 14, does not analyze the UN's immunities under the General Convention. There, the French Court of Appeals examined a contract between a UN agency and a private party that contained an arbitration clause, and evaluated the UN agency's immunity pursuant to Article 12 of the France-UNESCO Agreement of July 2, 1954.

- *Human Rights and the Immunities of Foreign States and International Organizations, in Hierarchy in International Law: The Place of Human Rights* 71, Pl. Memo at 23 & Ex. 15 (in turn citing *Stavrinou v. United Nations* (1992) CLR 992, ILDC 929 (CU 1992) (Sup. Ct. Cyprus 17 July 1992), actually recognizes the UN's immunity. According to this article, the Cypriot court recognized the UN's immunity pursuant to the Convention and thereafter, apparently in dicta, "pointed out" that the UN's internal dispute resolution provided local personnel a remedy).

- *The Privileges and Immunities of International Organizations in Domestic Courts* 332 (August Reinisch ed., 2013), which states that in *Maida v. Admin. for Int'l Assistance* (Italian Court of Cassation (United Chambers) May 27, 1955), 23 ILR 510 (1955), the court found that the UN agency was not immune from suit because the personnel dispute process was "unlawful." Pl. Ex. 17 at 160. However, *Maida* was decided under an agreement between the International Refugee Organization (I.R.O.) and Italy, which referenced Italian law. 23 ILR 510 (attached hereto as Exhibit C). The reported decision makes no mention whatsoever of the General Convention (*see id.* at 510-15), which is not surprising, given that the I.R.O. – the precursor to the UN High Commission for Refugees – was a specialized agency of the UN, and thus its immunities were not governed by the General Convention. *See* Constitution of the International Refugee Organization art. 3 (providing for a future agreement between the I.R.O. and the UN to determine their relationship), *available at* http://avalon.law.yale.edu/20th_century/decad053.asp#1.

The putative *Amici Curiae* briefs likewise fail to cite any case in which a court has found that the UN's purported failure to provide alternative remedies acted as an "express[]" waiver of the UN's immunities under the General Convention. *See* Docket No. 31-1, Memorandum of Law of *Amici Curiae* International Law Scholars and Practitioners in Support of Plaintiffs' Opposition to the Government's Statement of Interest, dated May 15, 2014, at 4-5 (arguing that "the lack of an alternative and effective remedy for private law claims has been cited as grounds for courts to decline to recognize international organizations' immunity from suit," but acknowledging that such decisions "did not directly address the question of the UN's protections"); *see also* Docket No. 32-1, Memorandum of Law of *Amici Curiae* European Law Scholars and Practitioners in Support of Plaintiffs' Opposition to the Government's Statement of Interest, dated May

15, 2014 ("Eur. Amici Br."), at 2-5 (citing cases against a private corporation, Germany, the European Union, the African Development Bank, the Arab League, and the Permanent Court of Arbitration).

Instead, the European Scholars *Amici* point to a series of cases in which foreign courts invalidated local laws implementing UN sanctions resolutions; however, those courts also determined that they lacked jurisdiction to review the UN resolutions themselves.  *See Kadi v. Council & Comm'n*, 2008 E.C.R. I-06351, ¶¶ 287, 312 (European Court of Justice invalidated a regulation passed by the Council of the European Union to give effect to a UN resolution, but also found that it had no power to review the lawfulness of resolution adopted by the UN Security Council); *Nada v. Switzerland*, 2012 Eur. Ct. H.R. 1691, ¶ 212 (European Court of Human Rights found that it had jurisdiction to review the Swiss regulation implementing a UN resolution, but did not have jurisdiction to review the UN resolution itself); *Al-Dulimi & Mont. Mgmt. Inc. v. Switzerland*, 2013 Eur. Ct. H.R. 1173, ¶¶ 114, 134 (European Court of Human Rights invalidated a Swiss regulation passed in response to a UN resolution but did not opine on the UN resolution itself, despite noting that the UN resolution failed to create an alternative dispute resolution for individuals added to sanctions list).  In any event, none of these cases holds that the UN's alleged failure to provide for a dispute resolution mechanism deprives it of immunity under Section 2.

Therefore, while it is true, as the European Scholars *Amici* argue, that "encouraging respect for human rights is one of the purposes of the UN," Eur. Amici Br. at 11, the authorities cited by the *Amici Curiae* and Plaintiffs do not support their contention that the UN's immunity is conditional upon either upholding human rights or providing for a dispute resolution mechanism. Nor does the text of the General Convention, the drafting history of the General Convention, or the decision of any United States court to have considered the issue support Plaintiffs' argument.  The UN's immunity is simply not contingent upon any other section of the General Convention.

### B. Plaintiffs May Not Assert Breach Claims Against the UN, Including MINUSTAH

Even assuming, *arguendo*, that the UN did breach the General Convention or the SOFA by failing to provide Plaintiffs with a method for resolving their tort claims, the obligations under the General Convention and the SOFA are owed by the UN to the other parties to those agreements, not to the Plaintiffs.  It is those parties that have a right to invoke an alleged breach and to determine an appropriate remedy from among those legally available, not the Plaintiffs.  No party to these treaties has alleged that the UN has breached either the General Convention or the SOFA, and Plaintiffs may not independently assert an alleged breach and determine their own preferred remedy.

Because "a treaty is an agreement between states forged in the diplomatic realm and similarly reliant on diplomacy (or coercion) for enforcement," courts have "recognize[d] that international treaties establish rights and obligations between States-

parties and generally not between states and individuals, notwithstanding the fact that individuals may benefit because of a treaty's existence." *Mora v. New York*, 524 F.3d 183, 200 (2d Cir. 2008). As the Supreme Court explained:

> A treaty is primarily a compact between independent nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*Edye v. Robertson*, 112 U.S. 580, 598 (1884), *quoted in Mora*, 524 F.3d at 200. Because "the nation's powers over foreign affairs have been delegated by the Constitution to the Executive and Legislative branches of government," the Supreme Court "has specifically instructed courts to exercise 'great caution' when considering private remedies for international law violations because of the risk of 'impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs.'" *Mora*, 524 F.3d at 200 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727-28 (2004)).

Plaintiffs' arguments in this action about the alleged lack of a dispute resolution mechanism are derivative of potential claims of the parties to the General Convention. "[E]ven where a treaty provides certain benefits for nationals of a particular state, . . . it is traditionally held that any rights arising out of such provisions are, under international law, those of the states and . . . individual rights are only derivative through the states." *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir. 1975) (finding the fact that no states party argued that the United States violated the United Nations Charter was "fatal" to appellant's claim of violation of the treaty; "the failure of Bolivia or Argentina to object to [the U.S. actions] would seem to preclude any violation of international law").

Here, both the General Convention and the SOFA provide methods by which the member states or Haiti, respectively, may dispute the UN's interpretation of the UN's obligations under these agreements. The General Convention and the SOFA provide that any dispute between a state party and the UN shall be submitted to the International Court of Justice, *see* General Convention, art. VIII, § 30; SOFA art. VIII, § 58; and the SOFA provides that any dispute between MINUTSAH and the Government of Haiti shall be submitted to arbitration, *see* SOFA art. VIII, § 57. Accordingly, the treaties provide that the Government of Haiti – not private parties – can seek redress for any purported breach of the General Convention or of the SOFA.[6] But because Plaintiffs' claims are

---

[6] Separately, the UN and the Government of Haiti recently established the High Level Committee for the Eradication of Cholera to "address the underlying conditions that made the outbreak possible," and to "focus on the provision of social and economic

derivative of the Government of Haiti's, rather than arising out of Plaintiffs' own rights, Plaintiffs may not independently assert arguments based on the provisions of the General Convention or the SOFA. *See Lujan*, 510 F.2d at 67.

### C. Plaintiffs' Constitutional Arguments Are Unavailing

Plaintiffs' argument that the UN's immunity from legal process and suit deprives United States citizens of their constitutional right of access to the courts has already been considered and rejected by the Second Circuit.

In *Brzak*, the plaintiffs, one of whom was a United States citizen, argued that granting the UN absolute immunity would violate their procedural due process right to litigate the merits of their case and their substantive due process right to access the courts. *See* 597 F.3d at 113. The Second Circuit disagreed, noting: "The short – and conclusive – answer is that legislatively and judicially crafted immunities of one sort or another have existed since well before the framing of the Constitution, have been extended and modified over time, and are firmly embedded in American law." *Id.* (citing Act for the Punishment of Certain Crimes Against the United States, 25, 1 Stat. 112, 117-18 (1790) (acknowledging diplomatic immunity); *Schooner Exchange v. McFadden*, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812) (acknowledging foreign sovereign immunity); *Tenney v. Brandhove*, 341 U.S. 367, 376-77 (1951) (acknowledging legislative immunity); *Barr v. Matteo*, 360 U.S. 564, 573 (1959) (acknowledging executive official immunity); *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (acknowledging judicial immunity); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (acknowledging prosecutorial immunity) (further citations omitted)). The court concluded that "[i]f appellants' constitutional argument were correct, judicial immunity, prosecutorial immunity, and legislative immunity, for example, could not exist," and accordingly upheld the UN immunity from suit. *Brazk*, 597 F.3d at 113.

Even before the Second Circuit issued the *Brzak* decision, district courts routinely found that the UN was immune from suits brought by United States citizens. *See, e.g., De Luca*, 841 F. Supp. at 533 (acknowledging UN's immunity where plaintiff was a

---

assistance to affected communities, with special emphasis on persons affected by the disease." Letter from Miguel de Serpa Soares, Under Secretary-General for Legal Affairs and United Nations Legal Counsel, to Samantha Power, Permanent Representative of the United States to the United Nations, dated May 12, 2014, at 5, attached hereto as Exhibit D (explaining that in December of 2012, the UN launched an effort "to support the Initiative by the Governments of Haiti and the Dominican Republic for the Elimination of Cholera in the Island of Hispaniola," and that in December of 2013, "the Secretary-General appointed a Senior Coordinator for the Cholera Response in Haiti").

United States citizen); *Bisson*, 2007 WL 2154181, at *2 (same).[7] Plaintiffs' access to the courts argument is therefore refuted by the case law.

### D. The Secretary-General and Assistant Secretary-General Are Also Immune from Suit

As explained in the Government's Statement of Interest, the UN Charter, the General Convention, and the Vienna Convention on Diplomatic Relations provide immunity from legal process and suit for high-level UN officials such as Secretary-General Ban and Assistant Secretary-General Mulet. *See* Docket No. 21, at 6-8. Plaintiffs point to no support whatsoever for their novel theory that the UN's purported breach of the General Convention or the SOFA renders void the Secretary-General and Assistant Secretary-General's immunity. To the contrary, the Second Circuit has recognized that, under the Vienna Convention, subject only to exceptions that do not apply in this case, "current diplomatic envoys enjoy absolute immunity from civil and criminal process . . . ." *Brzak*, 597 F.3d at 113. Because such immunity is absolute, it is necessarily not contingent on the UN's provision of dispute resolution mechanisms. Accordingly, Secretary-General Ban and Assistant Secretary-General Mulet are also immune from this lawsuit.[8]

\*\*\*

---

[7] Plaintiffs cite two cases – a New York City criminal court decision from 1976 and a Westchester County decision from 1946 – in which a court found that a UN official's immunity was inconsistent with the Constitution, but neither case is relevant. In *People v. Weiner*, 378 N.Y.S.2d 966, 975-76 (N.Y. City Crim. Ct. 1976), the court held that the UN employee could not seek to testify against a defendant while simultaneously refusing to submit to cross-examination – a situation not at issue in this case. *Westchester County on Complaint of Donnelly v. Ranollo*, 67 N.Y.S.2d 31, 32 (N.Y. City Ct. 1946), in which the court declined to grant diplomatic immunity to a UN employee who was charged with violating the speed limit, was decided before the United States' ratification of the General Convention.

[8] Plaintiffs fail to address the United States' argument (Docket No. 21, at 8-9) that service of process on the defendants in this case was ineffectual; rather, they simply assert that defendants lack immunity from service for the same reasons that they are not immune. Pl. Memo at 29, 35-49. These assertions, derivative of Plaintiffs' underling arguments on immunity, fail for the same reasons. Moreover, plaintiffs do not even acknowledge the United States' arguments about the inviolability of the UN headquarters district under the Headquarters Agreement, or the inviolability of Ban and Mulet under the VCDR. Those arguments should be deemed to be conceded. *See, e.g., Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010).

In light of each defendant's immunity, the Court lacks subject matter jurisdiction over this matter, and this action should be dismissed.  See *Brzak*, 597 F.3d 107; *see also* Fed. R. Civ. P. 12(h)(3).

We thank the Court for its consideration of this submission.

                        Respectfully,

                        PREET BHARARA
                        United States Attorney

By:    */s/ Ellen Blain*
        ELLEN BLAIN
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.   (212) 637-2743
        Fax   (212) 637-2730

Hon. J. Paul Oetken
Page 16

cc:    <u>By Electronic Mail</u>
       Beatrice Lisa Young Lindstrom, Esq.
       Institute For Justice & Democracy In Haiti
       666 Dorchester Ave.
       Boston, MA 02127
       (404) 217-1302
       Email: beatrice@ijdh.org

       Ira Jay Kurzban, Esq.
       Kurzban Kurzban Weinger Tetzeli & Pratt, P.A.
       2650 S.W. 27th Avenue, Second Floor
       Miami, FL 33133
       (305) 444-0060
       Email: ira@kkwtlaw.com