# EXHIBIT B

# REPORT

### OF THE

# PREPARATORY COMMISSION

# OF THE UNITED NATIONS



Published   for   THE   UNITED   NATIONS
by   HIS   MAJESTY'S   STATIONERY   OFFICE
London   -   -   -   -   -   -   1946

PC/20
23 December, 1945

# REPORT OF THE PREPARATORY COMMISSION OF THE UNITED NATIONS

## TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION .. .. .. .. .. .. | 5 |

*Chapter I*  The General Assembly

Section 1. Recommendations Concerning the General Assembly — 7
Section 2. Provisional Agenda for the First Part of the First Session of the General Assembly .. .. — 7
Section 3. Provisional Rules of Procedure for the General Assembly .. .. .. .. .. ., — 8
Section 4. Committee Structure of the General Assembly .. — 21

*Chapter II*  The Security Council

Section 1. Recommendations Concerning the Security Council — 24
Section 2. Provisional Agenda for the First Meetings of the Security Council .. .. .. — 24
Section 3. Draft Directive to the Military Staff Committee .. — 25
Section 4. Provisional Rules of Procedure for the Security Council .. .. .. .. — 25

*Chapter III*  The Economic and Social Council

Section 1. Recommendations Concerning the Economic and Social Council and Observations on Relationships with Specialized Agencies .. .. .. — 28
Section 2. Provisional Agenda for the First Session of the Economic and Social Council .. .. — 29
Section 3. Provisional Rules of Procedure for the Economic and Social Council .. .. — 29
Section 4. Considerations and Recommendations Concerning the Organization of the Economic and Social Council — 34
Section 5. Observations on Relationships with Specialized Agencies .. ·.. .. ., — 40

*Chapter IV*  The Trusteeship System

Section 1. Draft Resolution for the General Assembly .. .. — 49
Section 2. Provisional Rules of Procedure for the Trusteeship Council .. .. .. .. — 50

*Chapter V*  The International Court of Justice

Section 1. Report Concerning the Nomination of Candidates for the Election of Members of the International Court of Justice .. .. .. .. — 57
Section 2. Report Concerning the Dissolution of the Permanent Court of International Justice .. .. .. — 57
Section 3. Report Concerning the steps to be taken for the Convening of the International Court of Justice .. — 58

*Chapter VI*  Treaties and International Agreements
Recommendation Concerning the Registration and Publication of Treaties and International Agreements .. .. — 59

*Chapter VII*  Privileges, Immunities and Facilities of the United Nations

Section 1. Recommendations Concerning Privileges and Immunities .. .. .. .. — 60
Appendix A. Study on Privileges and Immunities .. — 61
Appendix B. Draft Convention on Privileges and Immunities .. .. .. — 72
Appendix C. Draft Treaty to be Concluded by the United Nations with the United States of America for the Location of the Headquarters of the United Nations .. .. .. — 75

*Section* 1. Recommendations Concerning the Organization of
the Secretariat .. .. .. .. .. 81
*Section* 2. Report on the Organization of the Secretariat .. 84
*Section* 3. Draft Provisional Staff Regulations .. .. .. 95
*Section* 4. Draft Provisional Staff Rules . .. .. 98
Annex. Recommendations of the Technical Advisory
Committee on Information .. .. .. 102

*Chapter IX* Budgetary and Financial Arrangements

*Section* 1. Recommendations Concerning Budgetary and Finan-
cial Arrangements .. .. .. .. 104
*Section* 2. Report on Budgetary and Financial Arrangements 106
Annex. Draft Provisional Financial Regulations for the
United Nations .. .. .. .. 111

*Chapter X* The Permanent Headquarters of the United Nations

*Section* 1. Recommendations Concerning the Location of the
Headquarters of the United Nations .. .. 114
*Section* 2. Report Concerning the Establishment of an Interim
Committee for the Selection of a Definite Site .. 114
*Section* 3. Recommendations Concerning the Establishment of
a Planning Commission .. .. .. 115

*Chapter XI* The League of Nations

*Section* 1. Functions and Powers Belonging to the League of
Nations under International Agreements .. 116
*Section* 2. Non-Political Functions and Activities of the League
of Nations other than those Mentioned in
Section 1 .. .. .. .. .. 117
*Section* 3. Recommendation Concerning the Transfer of the
Assets of the League of Nations to the United
Nations .. .. .. .. .. 118

## APPENDICES

I. (a) Language Rules Adopted at San Francisco by the United
Nations Conference on International Organization .. 119
(b) Language Rules proposed in the Report by the Executive
Committee to the Preparatory Commission .. 119
(c) Extract from the Summary Record of the Twelfth Meeting
of the Technical Committee on the General Assembly, at
which Language Rules were Discussed .. .. 121
(d) Extract from the Summary Record of the Eighth Meeting of
the Technical Committee on the Security Council at which
Language Rules were Discussed .. .. .. 122

II. Report of the Chairman of the Sub-Committee on the General
Committee of the General Assembly .. .. 123

III. Extract from the Summary Record of the Fourth, Sixth and
Seventh Meetings of the Technical Committee on the Security
Council, Concerning Rule 31 of the Rules of Procedure 125

IV. Observations on the Organization of the Statistical Work of the
Secretariat .. .. .. .. .. .. 130
(a) By the Committee of the Executive Committee on the
Economic and Social Council .. .. .. 130
(b) By the Delegation of the United States of America .. .. 130

V. (a) Report of the Advisory Group of Experts to the Administra-
tive and Budgetary Committee .. .. .. 132
(b) Proposed Alternative Bases for Allocation of Advances by
Members to Working Capital Fund .. .. 136

Executive Committee : List of Delegations and of Chairmen of
Committees .. .. .. .. .. .. 137
Preparatory Commission : List of Delegations .. .. 138
Interim Arrangements Concluded by the Governments Represented
at the United Nations Conference on International Organization 143
INDEX TO THE REPORT .. .. .. 145
The Charter of the United Nations with the Statute of the
International Court of Justice .. .. *follows* 151

## INTRODUCTION

1. With the completion of this Report by the Preparatory Commission the fourth stage in the work of establishing the United Nations has come to an end. The first stage was completed when the Dumbarton Oaks Proposals, which were agreed to in October, 1944, were supplemented by decisions made at the Yalta Conference in February, 1945. The end of the second stage was reached at San Francisco on 26th June, 1945, when the Charter of the United Nations was signed and the Preparatory Commission was established. The Preparatory Commission held its first session on the following day. Seven weeks later, on 16th August, the third stage of the work began with the meeting in London of the Executive Committee of the Preparatory Commission.

2. The Executive Committee was composed of representatives of the Governments of Australia, Brazil, Canada, Chile, China, Czechoslovakia, France, Iran, Mexico, the Netherlands, Union of Soviet Socialist Republics, United Kingdom, United States of America and Yugoslavia. After nine weeks' intensive work it adopted a Report to the Preparatory Commission covering Items 1 and 4 (b)–(g) of the Interim Arrangements. This Report took the form of a number of recommendations with attached material, such as draft rules of procedure, and agenda, supplemented by appendices. These recommendations and other material were submitted to the Second Session of the Preparatory Commission, which opened in London on Saturday, 24th November, 1945.

3. At the second meeting of this session, held on Monday, 26th November, the Preparatory Commission adopted its agenda and rules of procedure, and elected as Chairman Mr. Eduardo Zuleta-Angel (Colombia), and as Vice-Chairmen, Dr. D. Z. Manuilsky (Ukrainian S.S.R.) and Monsieur P. H. Spaak (Belgium). The Report of the Executive Committee was then presented to the Preparatory Commission by Senhor de Freitas-Valle (Brazil) and was remitted for detailed consideration to eight Technical Committees. The eight Technical Committees, with their Chairmen and Vice-Chairmen, are listed below :—

Committee 1.  Chairman :        H.E. M. Erik Colban (Norway).
              Vice-Chairman :  Senor Manuel Perez Guerrero (Venezuela)

Committee 2.  Chairman :        H.E. M. Zygmunt Modzelewski (Poland).
              Vice-Chairman :  Mr. G. Heaton Nicholls (South Africa).

Committee 3.  Chairman :        Sir Ramaswami Mudaliar (India).
              Vice-Chairman :  M. Frantz Hvass (Denmark).

Committee 4.  Chairman :        H.E. Dr. Guillermo Belt (Cuba).
              Vice-Chairman :  H.E. M. Kuzma V. Kiselev (Byelo-Russian S.S.R.).

Committee 5.  Chairman :        H.E. Dr. Abdel Hamid Badawi Pasha (Egypt).
              Vice-Chairman :  H.E. Senor Ricardo Rivera Schreiber (Peru).

Committee 6.  Chairman :        H.E. M. Th. Aghnides (Greece).
              Vice-Chairman :  Dr. R..M. Campbell (New Zealand).

Committee 7.  Chairman :        H.E. Dr. Najeeb al Armanazi (Syria).
              Vice-Chairman :  H.E. M. Cevad Acikalin (Turkey).

Committee 8.  Chairman :        H.E. Senor Dr. don R. E. Maceachen (Uruguay).
              Vice-Chairman :  H.E. Blatta Ephrem Tewelde Medhen (Ethiopia).

4. The Executive Committee's Report to the Preparatory Commission is not included, as such, in the present Report. It has served as the basis of the Preparatory Commission's work, but there is too much identical material on the one hand and too many differences exist on the other, to justify its inclusion *in extenso*.

recommendations of the Executive Committee. That was scarcely to be expected. But, on the other hand, the work of the Executive Committee has played an indispensable part in the whole preparatory process. Without the detailed and comprehensive reports furnished by the Executive Committee, the Preparatory Commission could not possibly have accomplished its own task in the time available.

6. Consideration of the Report of the Executive Committee by the Technical Committees began on 28th November and was completed, after less than four weeks' work, on 22nd December. The work of the Technical Committees has now been embodied in the present Report, in the form primarily of recommendations to the United Nations. Attached to these recommendations are a number of positive proposals integrally connected with them, such as the draft provisional staff regulations, the provisional rules of procedure for the General Assembly, the Security Council, the Economic and Social Council and the Trusteeship Council and the draft agenda for the first meetings of the first three of these organs. There are also a number of reports and memoranda setting out the views of the Preparatory Commission and of special expert bodies on certain matters dealt with in the recommendations. Certain supplementary material, including extracts from the summary records of the proceedings of some Technical Committees, appears in the Appendix.

7. With the adoption by the Preparatory Commission of the present Report, we are about to enter, therefore, on the final stage in the establishment of the United Nations, namely, the First Session of the General Assembly and the inauguration of the various Councils, the International Court of Justice and the Secretariat. The omens are good, for there have been no formal reservations attached to the main proposals of the Preparatory Commission. As the result of close and fruitful debate, unanimity has been reached on such contentious matters as the organization of the Secretariat, the committee structure of the General Assembly, the trusteeship system and the choice of the United States of America as the country in which the permanent seat of the Organization should be located, all of which a few weeks ago seemed likely to be obstacles to the early and successful conclusion of the Commission's work.

8. It is encouraging that such unanimity should have been achieved; it is still more encouraging that it should have been achieved so quickly. At the time of the Yalta Conference few would have dared to predict that in less than a year the World Organization would actually come into effective operation. Fewer still would have maintained at the opening of the San Francisco Conference on 25th April last that it was possible for fifty-one independent states to agree, before the turn of the year, not only on a Charter, but also on long and detailed organizational plans. That all this was possible in the event, and that all these fifty-one states have now ratified the Charter, is certainly due in the first instance to the determination of the peoples of the United Nations to combine their efforts to accomplish the high aims of the Charter.

9. If the spirit in which this last task has been accomplished is any guide, the United Nations will be successfully and happily inaugurated; and if by its early actions the new Organization can capture the imagination of the world it will surely not belie the expectations of those who see in it the last chance of saving themselves and their children from the scourge of war. It is in this confident hope that the Preparatory Commission presents its Report to the United Nations.

# CHAPTER VII

## PRIVILEGES, IMMUNITIES AND FACILITIES OF THE UNITED NATIONS

### Section 1: Recommendations Concerning Privileges and Immunities

1. THE PREPARATORY COMMISSION REPORTS to the General Assembly that it has instructed the Executive Secretary to invite the attention of the Members of the United Nations to the fact that, under Article 105 of the Charter, the obligation of all members to accord to the United Nations, its officials and the representatives of its members all privileges and immunities necessary for the accomplishment of its purposes, operates from the coming into force of the Charter and is therefore applicable even before the General Assembly has made the recommendations or proposed the conventions referred to in paragraph 3 of Article 105.

2. THE PREPARATORY COMMISSION RECOMMENDS that the General Assembly, at its First Session, should make recommendations with a view to determining the details of the application of paragraphs 1 and 2 of Article 105 of the Charter, or propose conventions to the Members of the United Nations for this purpose.

3. THE PREPARATORY COMMISSION TRANSMITS for the consideration of the General Assembly the attached study on privileges and immunities and the attached draft convention on privileges and immunities.

4. THE PREPARATORY COMMISSION CONSIDERS that the details of diplomatic privileges and immunities to be accorded to members of the International Court of Justice when engaged upon the business of the Court, and the privileges and immunities of agents, counsel, and advocates of parties before the Court, necessary to the independent exercise of their duties, at the seat of the Court and elsewhere, should be determined after the Court has been consulted, and that until further action has been taken the rules applicable to the members of the Permanent Court of International Justice should be followed.

5. THE PREPARATORY COMMISSION RECOMMENDS to the General Assembly that the privileges and immunities of specialized agencies contained in their respective constitutions should be reconsidered. If necessary, negotiations should be opened for their co-ordination in the light of any convention ultimately adopted by the United Nations with regard to the considerations set forth in the following extract from the appendix to Section 5 of Chapter V of the Report by the Executive Committee, to which a few words in italics have been added:

> " 5. There are many advantages in the unification, as far as possible of the privileges and immunities enjoyed by the United Nations and the various specialized agencies. On the other hand, it must be recognized that not all specialized agencies require all the privileges and immunities which may be needed by others. No specialized agency would, however, require greater privileges than the United Nations itself. *Certain of the specialized agencies may, by reason of their particular functions, require privileges of a special nature which are not required by the United Nations.* The privileges and immunities, therefore, of the United Nations might be regarded as a maximum within which the various specialized agencies should enjoy just such privileges and immunities as the proper fulfilment of their respective functions may require. It should be a principle that no immunities and privileges, which are not really necessary, should be asked for."

## Appendix A : Study on Privileges and Immunities

*Provisions of the Charter*

1. Chapter XVI of the Charter contains the following provisions :

" *Article* 104

The Organization shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfilment of its purposes."

" *Article* 105

*1.* The Organization shall enjoy in the territory of each of its members such privileges and immunities as are necessary for the fulfilment of its purposes.

*2.* Representatives of the Members of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization.

*3.* The General Assembly may make recommendations with a view to determining the details of the application of paragraphs *1* and *2* of this Article or may propose conventions to the Members of the United Nations for this purpose."

*Privileges and Immunities at the seat of the Organization and elsewhere*

2. The question of privileges and immunities for the United Nations is of the greatest importance in connection with the country in which the United Nations has its seat. In the case of the League of Nations, including the International Labour Organization, the Covenant of the League contains only the following short provision in Article 7 :

" Representatives of the Members of the League and officials of the League, when engaged on the business of the League, shall enjoy diplomatic privileges and immunities."

As a result, all the detailed arrangements for the privileges and immunities of the League of Nations and the I.L.O. were worked out in agreements concluded between the Secretary-General of the League and the Swiss Government. It would seem desirable that the working out of the detailed privileges and immunities of the United Nations should be deferred until the question of its seat has been decided.

3. However, although the question of privileges and immunities arises in the greatest degree as between the United Nations and the country in which it has its seat, the same question arises as between the Organization and all its Members. The difference is one of degree rather than one of kind. The United Nations may have offices elsewhere than at its seat. The officials of the Organization may be travelling on its business in any part of the world. The United Nations may wish to conclude contracts and hold funds or property elsewhere than at its seat. For these and similar reasons, therefore, the Organization will require, in the territories of all Members, the same kind of privileges and immunities as it has in the country of its seat.

*Precedents afforded by the Constitutions of Specialized Agencies*

4. A number of specialized agencies is already in existence. Their constitutions, or the agreements under which they are set up, have for the most part detailed provisions with regard to privileges and immunities based to a large extent on the arrangements made between the League of Nations and the Swiss Government. These specialized agencies include the following : The International Monetary Fund (Article IX), the International Bank for Reconstruction and Development (Article VII), United Nations Relief and Rehabilitation Administration (Resolutions Nos. 32, 34 and 36 of the first session of the Council), Food and Agriculture Organization (Articles VIII and XV), European Central Inland Transport Organization (Article VIII, paragraphs 13, 14, 15, 16, 17). These provisions are on the same lines in each case, though in some instances they have been worked out in more detail than in others.

*Co-ordination of the Privileges and Immunities of the United Nations with those of Specialized Agencies*

5. There are many advantages in the unification, as far as possible, of the privileges and immunities enjoyed by the United Nations and the various specialized agencies. On the other hand, it must be recognized that not all specialized agencies require all the privileges and immunities which may be

the various specialized agencies and associated such greater privileges and immunities as the proper fulfilment of their respective functions may require. It should be a principle that no immunities and privileges, which are not really necessary, should be asked for. An example of a case where a differentiation has been made between immunities, for practical reasons, may be seen by comparing Section 3 of Article IX of the Articles of Agreement of the International Monetary Fund, and Section 3 of Article VII of the Articles of Agreement of the International Bank for Reconstruction and Development. There are certain privileges and immunities which probably every specialized agency would require as well as the United Nations itself, such as recognition that it possesses legal capacity to contract and to hold property, and to be a party to legal proceedings, the immunity of its premises and papers, and the granting of travelling facilities to its officials. When the privileges and immunities of the United Nations have been determined in detail, and the specialized agencies are being brought into relationship with the United Nations, reconsideration of the privileges and immunities accorded to such specialized agencies may be desirable if it is found that they enjoy privileges and immunities in excess of those to be given to the United Nations or of what is really required.

*Creation of an International Passport*

6. In order to facilitate the travelling of officials it may be found desirable to institute an international passport issued by the Organization, describing the holder as its official. The United Nations might issue such passports also to the senior officials of specialized agencies. The creation of this passport would not, of course, impair the sovereign rights of members of the United Nations in respect of the granting of visas. It might, however, be hoped that any necessary visas would be granted speedily. Member governments are already required to grant visas speedily under the constitutions of some specialized agencies. It may be desirable to confine the holding of these special passports to superior officials.

*Privileges and Immunities*

7. In this report the expression " diplomatic privileges and immunities " is used for convenience to describe the whole complex of privileges and immunities which are in fact accorded to diplomatic envoys. While it will clearly be necessary that all officials, whatever their rank, should be granted immunity from legal process in respect of acts done in the course of their official duties, whether in the country of which they are nationals or elsewhere, it is by no means necessary that all officials should have diplomatic immunity. On the contrary, there is every reason for confining full diplomatic immunity to the cases where it is really justified. Any excess or abuse of immunity and privilege is as detrimental to the interests of the international organization itself as it is to the countries who are asked to grant such immunities. In the case of existing specialized agencies, the practice has up to now been to confine diplomatic immunity to the senior official of the agency concerned and those of his assistants, whose rank is equivalent to that of Assistant Secretary-General. (In the case of the I.L.O. the range of officials to whom diplomatic immunity has been accorded is somewhat wider.) It is also a principle that no official can have, in the country of which he is a national, immunity from being sued in respect of his non-official acts and from criminal prosecution. It is further most desirable that both the United Nations and all specialized agencies should adopt the principle that privileges and immunities are only given to their officials in the interests of the Organization in whose service they are, and in no way for the benefit of the individual concerned, and that, in consequence, the Secretary-General both can waive immunity and will in fact do so in every case where such a course is consistent with the interests of the United Nations. This rule has long been in force in the International Labour Organization. It has been accepted by most of the new specialized agencies which have come into being. Similarly, it is desirable that where the United Nations or a specialized agency concludes contracts with private individuals or corporations, it should include in the contract an undertaking to submit to arbitration disputes arising out of the contract, if it is not prepared to go before the Courts. Most of the existing specialized agencies have already agreed to do this.

*Taxation of Officials in the State of which they are nationals*

8. The provisions in the agreements or constitutions of the new specialized agencies, while providing in general that no taxation should be levied on the salaries of officials, leave complete latitude to governments to tax the salaries of officials who are their own nationals or persons resident in their territory. As a result, the Act of Parliament of the United Kingdom which was passed to enable the United Kingdom to give effect to its obligations as regards privileges and immunities for international organizations (the Diplomatic Privileges Extension Act, 1944) excepts from the immunity from income tax the salaries of those international officials who are both British subjects and whose usual place of abode is in the United Kingdom. A similar practice has been followed

in certain other countries. It is, however, a matter for consideration whether this latitude or this exception are really sound. One of its effects is that some of the members of the staff have salaries which are tax free, because being resident outside their own states they do not fall under the income tax provisions of their own state, while other officials doing the same work for the same nominal salary are subject to income tax. This has led to certain administrative difficulties and has indeed raised the question whether the United Nations should not pay some special allowance to those of its employees who are paying income tax, in order to produce equality.

### The International Court of Justice

9. The above paragraphs do not apply to the International Court of Justice. The Statute of the Court provides:

> *Article 19*
>
> "The members of the Court, when engaged upon the business of the Court, shall enjoy diplomatic privileges and immunities."
>
> *Article 32—Paragraph 8*
>
> "The above salaries, allowances and compensation shall be free of all taxation."
>
> *Article 42—Paragraph 3*
>
> "The agents, counsel, and advocates of parties before the Court shall enjoy the privileges and immunities necessary to the independent exercise of their duties."

When the first and second of these paragraphs (which correspond to the provisions of the Statute of the Permanent Court, whereas the third is new) are compared with paragraph 2 of the above quoted Article 105 of the Charter of the United Nations, it seems clear that the members of the Court, when engaged in the business of the Court, are to enjoy diplomatic privileges and immunities in the fullest sense. This has been the case with the members of the Permanent Court. For that institution the details of the privileges and immunities to be accorded at the seat of the Court were settled by negotiations between the Court itself and the Netherlands Government. It would seem desirable to postpone consideration of the subject until the Court can be consulted. It is therefore suggested that, for the first session of the Court, the rules applicable to the members of the Permanent Court should be observed, and that the new Court should then be invited to state whether changes are in their opinion required and, if this be the case, whether they wish the General Assembly to act on their behalf.

It would also appear expedient to consult the Court upon the privileges and immunities necessary for its members when engaged on the Court's business outside the country of its seat.

Finally, the question of the privileges and immunities of agents, counsel and advocates of parties before the Court would seem to be a matter which should only be taken up after it has been possible to consult the Court. It is not likely to arise at the first session.

---

## Annex to Study on Privileges and Immunities

IMMUNITIES AND PRIVILEGES GRANTED TO THE ORGANIZATION, REPRESENTATIVES OF THE MEMBERS, AND OFFICIALS IN ACCORDANCE WITH THE CONSTITUTIONS OF THE INTERNATIONAL MONETARY FUND—THE INTERNATIONAL BANK OF RECONSTRUCTION AND DEVELOPMENT — UNITED NATIONS RELIEF AND REHABILITATION ADMINISTRATION — FOOD AND AGRICULTURE ORGANIZATION OF THE UNITED NATIONS— AND EUROPEAN CENTRAL INLAND TRANSPORT ORGANIZATION

### Status of the Organization

*Purposes of the Immunities and Privileges*

1. International Monetary Fund (Article IX—Section 1) and International Bank for Reconstruction and Development (Article VII—Section 1):

> "To enable the Fund/Bank to fulfil the functions with which it is entrusted the status, immunities and privileges set forth in this Article shall be accorded to the Fund in the territories of each member."

2. United Nations Relief and Rehabilitation Administration (Resolution 32):

> "WHEREAS the Council is desirous of insuring to the Administration and its agents the independence necessary for the efficient performance of the duties entrusted to them, and of avoiding the imposition of financial burdens upon the funds contributed by member governments to the

Bank for Reconstruction and Development (Article VII—Section 2):

"The Fund/Bank shall possess full juridical personality, and, in particular, the capacity: (i) to contract; (ii) to acquire and dispose of immovable and movable property; (iii) to institute legal proceedings."

4. Food and Agriculture Organization (Article XV):

"1. The Organization shall have the capacity of a legal person to perform any legal act appropriate to its purpose which is not beyond the powers granted to it by this Constitution."

5. European Central Inland Transport Organization (Article 8—paragraphs 1 and 3):

"Every member Government shall recognize the international personality and legal capacity which the Organization possesses."

*Immunities from Judicial Process*

6. International Monetary Fund (Article IX—Section 3):

"The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract."

7. International Bank for Reconstruction and Development (Article VIII—Section 3):

"Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities. No actions shall, however, be brought by members or persons acting for or deriving claims from members. The property and assets of the Bank shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Bank."

8. United Nations Relief and Rehabilitation Administration (Resolution 32—paragraph 1—point 1 (*a*)):

"That the Council recommends:

1. That the member governments accord to the Administration the facilities, privileges, immunities and exemptions which they accord to each other, including: (*a*) Immunity from suit and legal process except with the consent of, or so far as is provided for in any contract entered into by or on behalf of, the Administration."

9. Food and Agriculture Organization (Article XV—paragraph 2):

"Each member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Organization all the immunities and facilities which it accords to diplomatic missions, including inviolability of premises and archives, immunity from suit, and exemptions from taxation."

10. European Central Inland Transport Organization (Article 8—paragraph 3 (*a*)):

"Every member Government shall accord to the Organization the privileges, immunities, and facilities which they grant to each other, including in particular: (*a*) immunity from every form of legal process."

*Immunities from Search, Requisition, Confiscation, Expropriation, or any other Form of Seizure*

11. International Monetary Fund (Article IX—Section 4) and International Bank for Reconstruction and Development (Article VII—Section 4):

"Property and assets of the Fund/Bank, wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation, or any other form of seizure by executive or legislative action."

12. United Nations Relief and Rehabilitation Administration (Resolution 32):

"I. That the Council recommends:

1. That the member governments accord to the Administration the facilities, privileges, immunities and exemptions which they accord to each other including: (*b*) inviolability of premises occupied by and of the archives of the Administration."

13. Food and Agriculture Organization (Article XV—Section 2):

"Each Member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Organization all the immunities and facilities which it accords to diplomatic missions, including inviolability of premises and archives, immunity from suit and exemptions from taxation."

14. European Central Inland Transport Organization (Article 8—paragraph 3 (c)):

"Every member Government shall accord to the Organization the privileges, immunities and facilities which they grant to each other, including in particular: (c) inviolability of premises occupied by, and of the archives and communications of the Organization."

*Inviolability of Archives*

15. International Monetary Fund (Article IX—Section 5) and International Bank for Reconstruction and Development (Article VII—Section 5):

"The archives of the Fund/Bank shall be inviolable."

16. United Nations Relief and Rehabilitation Administration (Resolution 32):
"I. That the Council recommends:
1. That the member governments accord to the Administration the facilities, privileges, immunities and exemptions which they accord to each other including: (b) Inviolability of premises occupied by and of the archives of the Administration."

17. Food and Agriculture Organization (Article XV—Section 2):

"Each member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Organization all the immunities and facilities which it accords to diplomatic missions, including inviolability of premises and archives, immunity from suit, and exemptions from taxation."

18. European Central Inland Transport Organization (Article 8—paragraph 4 (c)):

"Every member Government shall accord to the Organization the privileges, immunities and facilities which they grant to each other, including in particular: (c) inviolability of premises occupied by, and of the archives and communications of the Organization."

*Immunity of Assets from Restrictions*

19. International Monetary Fund (Article IX—Section 6):

"To the extent necessary to carry out the operations provided for in this Agreement, all property and assets of the Fund shall be free from restrictions, regulations, controls and moratoria of any nature."

20. International Bank for Reconstruction and Development (Article VII—Section 6):

"To the extent necessary to carry out the operations provided for in this Agreement and subject to the provisions of this Agreement, all property and assets of the Bank shall be free from restrictions, regulations, controls and moratoria of any nature."

*Immunity from taxation*

21. International Monetary Fund (Article IX—Section 9a and c):

"(a) The Fund, its assets, property, income and its operations and transactions authorized by this agreement, shall be immune from all taxation and from all customs duties. The Fund shall also be immune from liability for the collection or payment of any tax or duty.

(c) No taxation of any kind shall be levied, on any obligation or security issued by the Fund, including any dividend or interest thereon, by whomsoever held (i) which discriminates against such obligations or security solely because of its origin; or (ii) if the sole jurisdictional basis for such taxation is the place or currency in which it is issued, made payable or paid, or the location of any office or place of business maintained by the Fund."

22. International Bank for Reconstruction and Development (Article VII—Section 9a, c, d):

"(a) The Bank, its assets, property, income and its operations and transactions authorized by this Agreement, shall be immune from liability for the collection or payment of any tax or duty."

"(c) No taxation of any kind shall be levied on any obligation or security issued by the Bank (including any dividend or interest thereon) by whomsoever held (i) which discriminates against such obligation or security solely because it is issued by the Bank; or (ii) if the sole jurisdictional basis for such taxation is the place or currency in which it is issued, made payable or paid, or the location of any office or place of business maintained by the Bank."

"(d) No taxation of any kind shall be levied on any obligation or security guaranteed by the Bank (including any dividend or interest thereon) by whomsoever held (i) which discriminates against such obligation or security solely because it is guaranteed by the Bank; or (ii) if the sole jurisdictional basis for such taxation is the location of any office or place of business maintained by the Bank."

23. United Nations Relief and Rehabilitation Administration (Resolution 32):

"I.   That the Council recommends:

1. That the member governments accord to the Administration the facilities, privileges, immunities, and exemptions which they accord each other, including:

(c) Exemptions from taxation, including customs duties."

24. Food and Agriculture Organization (Article XV—paragraph 2):

"Each member nation undertakes, insofar as it may be possible under its constitutional procedure, to accord to the Organization all the immunities and facilities which it accords to diplomatic missions, including inviolability of premises and archives, immunity from suit, and exemptions from taxation."

25. European Central Inland Transport Organization (Article 8—paragraph 3b):

"Every member government shall accord to the Organization the privileges, immunities and facilities which they grant to each other, including in particular: (b) exemption from taxation and customs duties."

*Immunity from Foreign Exchange Controls*

26. International Monetary Fund (Article VII—Section 6) and International Bank for Reconstruction and Development (Article VII—Section 6):

"To the extent necessary to carry out the operations provided for in this Agreement all property and assets of the Fund/Bank shall be free from restrictions, regulations, controls and moratoria of any nature."

27. United Nations Relief and Rehabilitation Administration (Resolution 32):

"I. That the Council recommends:

1. That the member governments accord to the Administration the facilities, privileges, immunities, and exemptions which they accord to each other, including:

(d) exemptions from or facilities in respect of foreign exchange controls.

*Privileges of the Organization*

28. International Monetary Fund (Article IX—Section 7) and International Bank for Reconstruction and Development (Article VII—Section 7):

"The official communications of the Fund/Bank shall be accorded by members the same treatment as the official communications of other members."

*Whereas :*

The Council recognizes the need for expenditure, economy and secrecy in the transmission of the official correspondence of the Administration ; it is therefore

*Resolved :*

That the Council recommends :

1. That the member governments accord to the official correspondence of the Administration :

(*a*) the same treatment as is accorded by them to the official correspondence of other member governments, including :

(i) priorities for telephone and telegram communications, whether cable or radio, and for mail transmitted by pouch or by courier ;

(ii) government rebates for official telegrams ;

(iii) diplomatic status for couriers and pouches of the Administration ;

(iv) under appropriate safeguards, exemption from censorship of the official correspondence of the Administration ; and

(v) appropriate arrangements for the use of codes and of cable addresses for the telegraphic correspondence of the Administration.

(*b*) appropriate postal facilities, including such franking privileges or arrangements for the use of specially printed or overprinted stamps as may be possible.

30. Food and Agriculture Organization (Article XV—Section 2) :

" Each member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Organization all the immunities and facilities which it accords to diplomatic missions, including inviolability of premises and archives, immunity from suit, and exemption from taxation."

31. European Central Inland Transport Organization (Article 8, paragraph 3) :

" Every member government shall accord to the Organization the privileges, immunities and facilities which they grant to each other."

### Status of Representatives of the Members

32. United Nations Relief and Rehabilitation Administration (Resolution 32) :

" I. (3). That member governments accord to representatives of member governments on the Council and its committees and to the officials and employees of the Administration when engaged on the business of the Administration, the following privileges and immunities in their respective territories :

(*a*) immunity from legal process of any kind in respect of acts performed by them in their official capacity and falling within their functions as such ;

(*b*) immunity from taxation on official salaries, allowances, or other emoluments as representatives, officials, or employees of the Administration ;

(*c*) the same immunities from immigration restrictions, alien registration and military service obligations and the same facilities as regards exchange restrictions as are accorded to representatives, officials and employees of similar rank of other member governments ; and

(*d*) any further privileges and immunities that the Director-General may request as necessary to safeguard representatives, officials or employees in the territories of any member government where they are engaged and particularly those engaged in field operations in the areas in which the Administration may be undertaking relief and rehabilitation."

Provided that each member government shall determine to what extent the above recommendations shall apply to its own nationals, and to non-nationals in permanent residence in its territories."

graph 4) :

> " Every member government shall accord diplomatic privileges and immunities to persons appointed by other members as their representatives in or to the Organization, to the members of the Executive Board, and to the higher officials of the Organization not being their own nationals."

## Status of Officers and Employees

*Immunity from legal process*

34. International Monetary Fund (Article IX—Section 8 (i)) and International Bank for Reconstruction and Development (Article VII—Section 8) :

> " All governors, executive directors, alternate officers and employees of the Fund/Bank (i) shall be immune from legal process with respect to acts performed by them in their official capacity except when the Fund/Bank waives this immunity."

35. United Nations Relief and Rehabilitation Administration (Resolution 32) :

> " I. (3). That member governments accord to representatives of member governments on the Council and its committees and to the officials and employees of the Administration the following privileges and immunities in their respective territories : (*a*) immunity from legal process of any kind in respect of acts performed by them in their official capacity and falling within their functions as such ; . . . Provided that each member government shall determine to what extent the above recommendations shall apply to its own nationals, and to non-nationals in permanent residence in its territories."

36. Food and Agriculture Organization (Article VIII—paragraph 4) :

> " Each member nation undertakes in so far as it may be possible under its constitutional procedure, to accord to the Director-General and senior staff diplomatic privileges and immunities and to accord to other members of the staff all facilities and immunities accorded to non-diplomatic personnel attached to diplomatic missions, or alternatively to accord to such other members of the staff the immunities and facilities which may hereafter be accorded to equivalent members of the staffs of other public international organizations."

37. European Central Inland Transport Organization (Article 8) :

> " Every member government shall accord diplomatic privileges and immunities to persons appointed by other members as their representatives in or to the Organization, to the members of the Executive Board, and to the higher officials of the Organization not being their own nationals.
>
> " Every member government shall accord to all officials and employees of the Organization : (*a*) immunity from suit and legal process relating to acts performed by them in their official capacity. . . ."

*Immunity from immigration restrictions, alien registration, national service obligations, and exchange restrictions.*

38. International Monetary Fund (Article IX—Section 8) and International Bank for Reconstruction and Development (Article VII—Section 8) :

> " All governors, executive directors, alternate officers and employees of the Fund/Bank . . . (ii) not being local nationals, shall be granted the same immunities from immigration restrictions, alien registration requirements and national service obligations and the same facilities as regards exchange restrictions as are accorded by members to the representatives, officials and employees of comparable rank of other members."

39. United Nations Relief and Rehabilitation Administration (Resolution 32) :

> " 1. (3). That member governments accord to representatives of member governments on the Council and its committees and to the officials and employees of the Administration when engaged on the business of the Administration, the following privileges and immunities in their respective territories . . . (*c*) the same immunities from immigration restrictions, alien registration and military service obligations and the same facilities as regards exchange restrictions as are accorded to representatives, officials and employees of similar rank of other member governments. . . .
>
> " Provided that each member government shall determine to what extent the above recommendations shall apply to its own nationals, and to non-nationals in permanent residence in its territories."

4. Each Member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Director-General and senior staff diplomatic privileges and immunities and to accord to other members of the staff all facilities and immunities accorded to non-diplomatic personnel attached to diplomatic missions, or alternatively to accord to such other members of the staff the immunities and facilities which may hereafter be accorded to equivalent members of the staffs of other public international organizations."

41. European Central Inland Transport Organization (Article 8) :
   " Every member government shall accord diplomatic privileges and immunities to persons appointed by other members as their representatives in or to the Organization, to the members of the Executive Board, and to the higher officials of the Organization not being their own nationals."

*Travel Facilities*

42. International Monetary Fund (Article IX—Section 8) :
   " All governors, executive directors, alternate officers and employees of the Fund . . . (iii) shall be granted the same treatment in respect of travelling facilities as is accorded by members to representatives, officials and employees of comparable rank or other members."

43. International Bank for Reconstruction and Development (Article VII—Section 8) :
   " All Governors, executive directors, alternates, officers and employees of the Bank . . . (iii) shall be granted the same treatment in respect of travelling facilities, as is accorded by members to representatives, officials and employees of comparable rank or other members."

44. United Nations Relief and Rehabilitation Administration (Resolution 36):

*Whereas*

the Council has in mind the importance of securing the expeditious and unhindered travel of officials and employees of the Administration necessary to permit the prompt fulfilment by the Administration of the urgent tasks entrusted to it ; it is therefore

*Resolved*

That the Council recommends :

   1. That the Director-General issue to officials and employees of the Administration for use when travelling on official business a document identifying the official or employee and requesting in the name of the Administration that all appropriate facilities be granted to the bearer.

   2. That all member governments give full recognition to such documents and instruct their diplomatic, consular, customs and immigration services, and any other services which may be concerned, to recognise such documents as entitling the bearer to all appropriate facilities.

   3. That in respect to passports and visas, the member governments accord to the officials and employees of the Administration the same treatment as is accorded to the officials and employees of comparable rank of their own or other governments.

   4. That all member governments take the necessary steps to grant all appropriate and, possible priorities for the travel of the officials of the Administration on official business and government rebates for such travel.

45. Food and Agriculture Organization (Article VIII—paragraph 4) :
   " Each member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Director-General and senior staff diplomatic privileges and immunities and to accord to other members of the staff all facilities and immunities accorded to non-diplomatic personnel attached to diplomatic missions, or alternatively to accord to such other members of the staff the immunities and facilities which may hereafter be accorded to equivalent members of the staff of other public international organizations."

46. European Central Inland Transport Organization (Article 8) :
   " Every member government shall accord to all officials and employees of the Organization : . . . (b) all such facilities for their movements and for the execution of their functions, as are deemed necessary by the Organization for the speedy and effective fulfilment of their official duties. . . ."

47. International Monetary Fund (Article IX—Section 9) :

" No tax shall be levied on or in respect of salaries and emoluments paid by the Fund to executive directors, alternates, officers or employees of the Fund who are not local citizens, local subjects, or other local nationals."

48. International Bank for Reconstruction and Development (Article VII—Section 9) :

" (b) No tax shall be levied on or in respect of salaries and emoluments paid by the Bank to executive directors, alternates, officials or employees of the Bank who are not local citizens, local subjects, or other local nationals."

49. United Nations Relief and Rehabilitation Administration (Resolution 32):

" 3. That member governments accord to representatives of member governments on the Council and its committees and to the officials and employees of the Administration when engaged on the business of the Administration, the following privileges and immunities in their respective territories. . . . (b) immunity from taxation on official salaries, allowances or other emoluments as representatives, officials, or employees of the Administration. . . . Provided that each member government shall determine to what extent the above recommendations shall apply to its own nationals, and to non-nationals in permanent residence in its territories."

50. Food and Agriculture Organization (Article VIII—Section 4) :

" Each member nation undertakes, in so far as it may be possible under its constitutional procedure, to accord to the Director-General and senior staff diplomatic privileges and immunities accorded to non-diplomatic personnel attached to diplomatic missions, or alternatively to accord to such members of the staff the immunities and facilities which may hereafter be accorded to equivalent members of the staffs of other public international organizations."

51. European Central Inland Transport Organization (Article 8) :

" Every member government shall accord diplomatic privileges and immunities to persons appointed by other members as their representatives in or to the Organization, to the members of the Executive Board, and to the higher officials of the Organization not being their own nationals.

" Every member government shall accord to all officials and employees of the Organization . . . (c) except in the case of their own nationals, exemption from taxation of their official salaries and emoluments."

*Additional Privileges*

52. United Nations Relief and Rehabilitation Administration (Resolution 32):

" I. (3). That member governments accord to representatives of member governments on the Council and its committees and to the officials and employees of the Administration when engaged on the business of the Administration, the following privileges and immunities in their respective territories : . . . (d) any further privileges and immunities that the Director-General may request as necessary to safeguard representatives, officials, or employees in the territories of any member government where they are engaged and particularly those engaged in field operations in the areas in which the Administration may be undertaking relief and rehabilitation.

" Provided that each member government shall determine to what extent the above recommendations shall apply to its own nationals, and to non-nationals in permanent residence in its territories."

53. European Central Inland Transport Organization (Article 8) :

" Every member government shall accord to all officials and employees of the Organization . . . (b) all such facilities for their movements and for the execution of their functions, as are deemed necessary by the Organization for the speedy and effective fulfilment of their official duties."

*Disputes relating to the conditions and terms of appointment of members of the staff*

54. Food and Agriculture Organization (Article XV—paragraph 3) :

" The Conference shall make provision for the determination by an administrative tribunal of disputes relating to the conditions and terms of appointment of members of the staff."

55. United Nations Relief and Rehabilitation Administration (Resolution 32):

  I. (2). "That member governments take any steps that they may consider necessary to enable the Administration to exercise within their jurisdiction the powers conferred on it by Article I, paragraph 1, of the Agreement."

56. European Central Inland Transport Organization (Article 8):

  " Every member government shall respect the exclusively international character of the members of the Executive Board, the chief officer and the staff of the Organization."


## Application of Aforesaid Provisions

57. International Monetary Fund (Article IX—Section 10):

  "Each member shall take such action as is necessary in its own territories for the purpose of making effective in terms of its own law the principles set forth in this Article and shall inform the Fund of the detailed action which it has taken."


58. United Nations Relief and Rehabilitation Administration:

(Resolution 32):

  " I. (4). That the member governments make any necessary arrangements with the Director-General for the application of the foregoing recommendations.

  II. That the Council requests the Director-General:

  1. To initiate immediate negotiations with member governments to bring such arrangements into operation as rapidly as possible.

  2. Wherever appropriate, to approach non-member governments with a view to their granting such of the above-mentioned facilities, privileges, immunities and exemptions as may be desirable to facilitate the work of the Administration."


(Resolution 34):

  " I. (2). That the member governments make any necessary arrangements with the Director-General for the application of the foregoing recommendations.

  II. That the Council requests the Director-General:

  1. To initiate immediate negotiations with member governments to bring such arrangements into operation as rapidly as possible.

  2. Wherever appropriate, to approach non-member governments with a view to their granting such of the above-mentioned facilities, privileges, immunities, and exemptions as may be desirable to facilitate the work of the Administration."


(Resolution 36):

  " I. (5). That the member governments make any necessary arrangements with the Director-General for the application of the foregoing recommendations.

  II. To initiate immediate negotiations with member governments to bring such arrangements into operation as rapidly as possible.

  2. Wherever appropriate, to approach non-member governments with a view to their granting such of the above-mentioned facilities, privileges, immunities, and exemptions as may be desirable to facilitate the work of the Administration."

## Appendix B: Draft Convention on Privileges and Immunities

WHEREAS Article 104 of the Charter of the United Nations provides that the Organization shall enjoy in the territory of each of its Members such legal capacity as may be necessary for the exercise of its functions and the fulfilment of its purposes and

WHEREAS Article 105 of the Charter of the United Nations provides that the Organization shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfilment of its purposes and that representatives of the Members of the United Nations and officials of the Organization shall similarly enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the Organization and

WHEREAS by a resolution of the General Assembly adopted on. . . . . . . . . . . . . . . . . . . . . . . . . . . .it was decided to propose a convention with a view to determining the details of the application of the aforesaid Articles and

WHEREAS the present convention was drawn up and approved by a resolution of the General Assembly adopted on. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Introductory Article

1. The present convention is open to accession on behalf of every Member of the United Nations.

2. Accession shall be effected by a deposit of an instrument with the Secretary-General of the United Nations and the convention shall take effect as regards each Member as from the date of deposit of its instrument of accession.

3. The Secretary-General shall inform all Members of the United Nations of the deposit of each accession.

4. It is understood that, when an instrument of accession is deposited on behalf of any Member, this Member will have taken such action as is necessary in its own territories for the purpose of giving effect under its own laws to the terms of the present convention.

5. The present convention shall continue in force as between the Organization and every Member which has deposited an instrument of accession for so long as that Member remains a Member of the Organization unless, by agreement, other provisions are substituted for the provisions of the present Convention. The Secretary-General may conclude with any Member or Members supplementary agreements, approved in each case by the General Assembly, amending, so far as that Member or those Members are concerned, the provisions of the present Convention.

### Article 1

The Organization shall possess full juridical personality and in particular, the capacity :

    (a) to contract ;

    (b) to acquire and dispose of immovable and movable property ; and

    (c) to institute legal proceedings.

### Article 2

1. The Organization, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that in any case it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract.

2. The premises of the Organization shall be inviolable. The property and assets of the Organization wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation and from any other form of seizure, whether by executive, administrative or legislative action or otherwise.

3. The archives of the Organization and in general all documents, belonging to it or held by it, shall be inviolable wherever located.

4. (a) Without being restricted by financial controls, regulations or moratoria of any kind :

    (i) the Organization may hold funds or currency of any kind and operate accounts in any currency ; and

    (ii) the Organization shall be free to transfer its funds from one country to another or within any country and to convert any currency held by it into any other currency.

    (b) In exercising its rights under (a) above, the Organization shall pay due regard to any representations by the national authorities of any Member insofar as effect can be given to such representations without detriment to the financial interests of the Organization.

1. The Organization, its assets, income and other property shall be :

(a) exempt from all direct taxes* ; it is understood, however, that the Organization cannot claim exemption from taxes which are, in fact, no more than charges for services rendered ; and

(b) exempt from customs duties in respect of articles imported by the Organization for its official use and in respect of publications issued by it. It is, however, understood that articles imported free of customs duty will not be sold in the country into which they were imported except under conditions agreed with the authorities of that country.

2. While the Organization cannot in principle claim exemption from sales taxes and excise duties, which form part of the price of goods sold, nevertheless in cases where the Organization is making large purchases for official use of goods on which such taxes and duties have been charged or are chargeable, Members will, whenever possible, make appropriate administrative arrangements for the remission or return of the amount of tax or duty.

## Article 4

Provisions regarding communication facilities and facilities for purchases. (*See* Annex to Appendix C of this chapter).

## Article 5

1. Representatives of Members to the principal and subsidiary organs of the United Nations and to conferences convened by the Organization shall be accorded, while exercising their functions and during their journey to and from the place of meeting, the following privileges and immunities :

(a) immunity from legal process of any kind ;

(b) immunity from immigration restrictions, alien registration and national service obligations ;

(c) the same facilities as regards exchange restrictions as are accorded to representatives of the Governments of Members visiting the country ; and

(d) the same immunities and facilities as regards their personal baggage as are accorded to diplomatic envoys.

2. As a means of securing complete freedom of speech and independence in the discharge of their duties, the representatives of Members to the principal and subsidiary organs of the United Nations and to conferences convened by the Organization shall be accorded immunity from legal process in respect of all acts done and words spoken or written by them in the discharge of their duties as such.

3. The provisions of paragraphs 1 (a) and (b) and of paragraph 2 of this Article cannot be invoked by any persons against the authorities of the country of which he is a national or of which he is or has been the representative, nor when the Member which he represented has waived the immunity in question.

4. In this Article the expression representatives shall be deemed to include all Delegates and Deputy Delegates, advisers, technical experts, and secretaries.

## Article 6

1. All officials† of the Organization shall :

(a) be immune from legal process with respect to acts performed by them in their official capacity ;

(b) be exempt from taxation on the salaries and emoluments paid to them by the Organization ;

(c) be immune from national service obligations ;

(d) be immune, together with their spouses and minor children, from immigration restrictions and alien registration ;

(e) be accorded the same privileges as regards exchange facilities as are accorded to the officials of comparable ranks forming part of the diplomatic missions to the government of x ; and

(f) be given together with their spouses and minor children the same repatriation facilities as diplomatic agents in time of international crisis.

2. In addition the Secretary-General, all Assistant Secretaries-General, their spouses and minor children shall be accorded the privileges and immunities, exemptions and facilities accorded to diplomatic envoys, their spouses and minor children in accordance with international law, but shall not be entitled to invoke immunity from legal process as regards matters not connected with their official duties, before the courts of the country of which they are nationals.

---

\* The sub-committee considered that it may be desirable to define the expression '' direct taxes,'' but did not feel able to perform this task, which requires the assistance of revenue experts.

† By this word it is intended to cover all ranks of the Secretariat and all those who have to make the declaration of loyalty to the Organization (Chapter VIII, Section 3,

1. The Organization may issue United Nations passports to its officials.* All United Nations passports shall be recognized and accepted as passports.

2. Applications for visas from the holders of such passports when accompanied by a certificate that they are travelling on the business of the Organization, shall be dealt with with the minimum of delay. In addition the holders of United Nations passports shall be granted facilities for speedy travel.

3. Similar facilities to those specified in paragraph 2 above shall be accorded to experts and other persons who, though not officials of the United Nations, have a certificate that they are travelling on the business of the Organization.

4. The Secretary-General, Assistant Secretaries-General, and Directors travelling on United Nations passports on the business of the Organization shall be granted the same facilities as are accorded diplomatic envoys.

## Article 8

1. It is understood that privileges and immunities are granted to officials in the interests of the Organization and not for the benefit of the officials themselves. The Secretary-General shall have the right and the duty to waive the immunity of any official in any case where, in his opinion, such immunity can be waived without prejudice to the interests of the Organization.

2. The Organization shall co-operate at all times with the appropriate authorities to facilitate the proper administration of justice, secure the execution of police regulations and prevent the occurrence of any abuse in connection with the privileges, immunities and facilities mentioned in this convention. In particular the Secretary-General will ensure that the drivers of all official motor cars of the Organization and all officials who own or drive motor cars shall be properly insured against third party risks.†

3. The Organization shall make provision for appropriate modes of settlement of :

(a) disputes arising out of contracts or other disputes of a private law character to which the Organization is a party ; and

(b) disputes involving any official of the Organization, who by reason of his official position enjoys immunity, if such immunity has not been waived by the Secretary-General.

## Article 9

Freedom of travel to the seat of the Organization for the press, representatives of non-governmental Organizations and private individuals. (See Annex to Appendix C of this chapter).

## Article 10

The provisions of Article 7 may be applied to the comparable officials of specialized agencies if the agreements for relationship made under Article 63 of the Charter so provide.

## Article 11

All differences arising out of the interpretation or application of the present Convention shall be referred to the International Court of Justice, unless in any case it is agreed by the parties to have recourse to another mode of settlement. If the dispute is between the Organization on the one hand and a Member on the other hand, a request shall be made for an advisory opinion in accordance with Article 96 of the Charter and Article 65 of the Statute of the Court. The advisory opinion of the Court shall be accepted by the parties to the dispute as a binding decision in the same manner as a judgment.

---

* See footnote to Article 6.

† If it is decided that the internal regulations of the Organization shall contain provisions to this effect this sentence could be omitted.