# EXHIBIT C

submit to the jurisdiction of another State for imposition of a fine should, even where it is agreed by a treaty, be recognized only when such willingness is clearly manifested. The provision of paragraph 4 of Article XV should not be interpreted to mean that the Japanese courts can impose a fine on an agency of the Government of the United States for violation of the labor laws and regulations.

" Besides, in view of the absence of any evidence in the instant case that the United States has agreed to submit to the jurisdiction of the Japanese courts, this Court is not entitled to exercise jurisdiction to impose a fine on the United States or the Officers' Club in this case."

[Report: *Japanese Annual of International Law*, No. 2 (1958), p. 140.]

**Jurisdiction—Exemptions from—Foreign Armed Forces—United States Military Base in Italy—Whether Department of United States Army Exempt from Jurisdiction of Italian Courts in Respect of Contracts of Employment at Military Base—The Law of Italy.**

See p. 201 (*Department of the United States Army* v. *Savellini*).

(e) MISCELLANEOUS

**Jurisdiction—Exemptions from—International Organizations—The United Nations.**

See p. 509 (*Wencak* v. *United Nations*).

**Jurisdiction—Exemptions from—International Organizations—International Refugee Organization.**

See p. 510 (*Maida* v. *Administration for International Assistance*).

**Jurisdiction—Exemptions from—Agency of Occupant in Occupied Territory—Occupation of Germany—Joint Export-Import Agency—Counterclaim against Successor of Joint Export-Import Agency—Whether German Courts Competent to Determine Counterclaim.**

See p. 783 (*Joint Export-Import Agency (Germany) Case*).

**Jurisdiction—Exemptions from—Consuls—Acts in Performance of Official Functions—What Constitutes Such Acts—The Law of France.**

See p. 445 (*Boyer and Another* v. *Aldrete*).

sense the successor of Unrra but did undertake to administer the liquidation of that organization. The administration was not an assumption of liabilities upon succession to the assets as is frequently found with business corporations. By treaty dated September 27, 1948, the United Nations agreed to settle such claims as were on the books of Unrra's administrator for liquidation and other claims if there were sufficient funds and it believed the claim to be just. The liquidation lasted some months and the books were closed March 31, 1949. Assuming that these facts might show a cause of action against the United Nations it is clear that such action arose after the immunity statute was in force. Plaintiff claims that there is a different theory of sovereign immunity to-day than existed some years ago. No doubt that is true. But immunity remains a political rather than a legal question, and the extent of it is for the Department of State rather than the courts. As regards this action the department has indicated no limitation of the immunity to be conferred."

[Report: *New York Law Journal*, January 19, 1956, p. 6, col. 7.]

## B—THE UNITED NATIONS

### I.—Legal Nature of the United Nations. Membership

**International Organization—In General—Exemption of International Organizations from Local Jurisdiction—International Refugee Organization—Contract of Employment between International Refugee Organization and Citizen of Host State—Whether Contract Subject to Jurisdiction of Courts of Host State—The Law of Italy.**

Maida *v.* Administration for International Assistance.

*Italy, Court of Cassation (United Chambers). May 27, 1955.*

The Facts.—An Agreement between the International Refugee Organization (I.R.O.) and Italy provided for the usual immunities of the I.R.O. from the jurisdiction of the Italian courts. The Staff Regulations of the I.R.O. provided for arbitration by the Italian Chamber of Advocates in cases of dispute between the I.R.O. and its employees but laid down that, in so far as the Regulations themselves made no provision for the settlement of such disputes, the employees of the I.R.O. " were to refer to the relevant Italian legislation on private employment ". The plaintiff, an Italian citizen, was employed by the I.R.O. as a doctor. A dispute arose between the parties, and the plaintiff brought an action against the I.R.O. in the Civil Labour Court of Naples. That Court, while of opinion that the I.R.O. was not immune from the jurisdiction of the

Italian courts in respect of disputes arising out of contracts of employment between the I.R.O. and its employees, declared itself incompetent and took the view that the case fell within the competence of the Italian administrative courts.

On appeal, the parties agreed that the administrative courts were not competent, but they disagreed on the question of jurisdiction generally. The plaintiff contended that the civil courts were competent whereas the I.R.O. contended that the Italian courts in general were not competent, and that the case could only be determined by arbitration as provided in the Staff Regulations of the I.R.O.

*Held:* (i) that as the Staff Regulations merely provided for arbitration by the Italian Chamber of Advocates and did not contain any specific provision as to the number of arbitrators or the manner of their appointment, the constitution of an arbitral tribunal was impossible and there could accordingly be no arbitration.

(ii) As the Staff Regulations provided for the subsidiary application of the " relevant Italian legislation on private employment ", such application would result in the competence of the Italian courts.

(iii) The most suitable Italian court to deal with the present dispute was the competent Civil Labour Court and not an administrative court, because administrative courts—so far as concerned labour disputes—were competent to deal only with disputes arising out of contracts of employment with the Italian Government and not those with international organizations.

The Court said: " The parties, Dr. Maida and the Administration for International Assistance (A.A.I.)—the latter being substituted for the International Refugee Organization (I.R.O.) for the purposes of this action—agree that, contrary to the finding of the lower Court, the I.R.O. is not subject to the jurisdiction of the Italian administrative courts in respect of the contract of employment here in issue. On the other hand, they disagree on the finding of the lower Court in the following respect, that whereas the plaintiff contends that the Labour Division of the Civil Court is competent, the A.A.I. contends that the Italian courts in general have no jurisdiction. The A.A.I. says that the plaintiff can have recourse only to the special form of arbitration provided for in Article 9 of the I.R.O. Staff Regulations and entrusted to the Italian Chamber of Advocates (Organo Avvocatura dello Stato italiano). We must draw a distinction, firmly embedded in our jurisprudence and confirmed in recent judgments of this Court, between cases in which a subject of international law acts as such and remains on the plane of international relations in performing sovereign functions incidental to such relations, and cases in which it performs acts of a private character within the ambit of the legal order of another State. In the former case, it must enjoy immunity from the jurisdiction; in

512        INTERNATIONAL ORGANIZATION

the latter, it acts *jure privatorum* and is therefore subject to the
jurisdiction of the State in which it has carried on its commercial
activity. This rule must be interpreted in the sense that the exemp-
tion from the jurisdiction applies unless the subject of international
law has waived it. If, on the other hand, it is alleged that the activity
is of a commercial character which belongs to the realm of private
law, then it must be governed by a treaty or agreement of an
international character. On the basis of this rule, and while there is
no need to add to the finding of the lower Court that the I.R.O. is
a subject of international law, it cannot be said that the contract of
employment between the plaintiff and the I.R.O. is inherent in the
performance of the official functions of the latter and within its
institutional purposes. These purposes consist of a programme of
assistance, maintenance, rehabilitation and repatriation of certain
classes of refugees from various countries who have come to Italy
[and other countries] as a result of the vicissitudes of the last war
and for whose benefit a suitable international organization was set
up which is recognized by the various States, including Italy. Italy
has undertaken to co-operate in the achievement of these purposes
by undertaking specific duties and granting various facilities and
benefits on Italian territory (Decree Law No. 468 of March 6, 1948).
In order to render material assistance to the refugees, Italy has pro-
vided medical personnel (doctors and nurses) to serve in the medical
establishments of the Organization in the areas in which the latter
performs its functions. The contract of employment of these doctors
is directly linked with the institutional purposes of the I.R.O., the
doctor being appointed for the performance of tasks [sanitary
services] within the specific scope for which the Organization has
been established. The transaction [contract of employment
between the plaintiff and the I.R.O.], therefore, of which the contract
to perform professional work forms part, is—so to speak—merged
in the public purposes of the international organization, and the rule
of exemption from the jurisdiction should accordingly apply unless
the I.R.O. has waived its immunity. In the present case the plain-
tiff contends that the I.R.O. has waived its immunity. This is
strongly contested by the A.A.I., respondents herein, who also say
that the acceptance of the jurisdiction of the Italian courts by the
I.R.O. would not make the plaintiff's claim admissible. This Court
is of opinion that everything in this case suggests that we are con-
cerned with a special régime governing a subject of international
law which differs from the general rule governing sovereign States
and other subjects of international law, whose autonomy—at least
in principle—in the exercise of their public functions in the territory
of another State we have preserved intact. This special régime is
inherent in the special nature of the aims pursued by the I R.O. and
which the Italian Government, in active co-operation with the other
member States, intended to further on Italian territory.

INTERNATIONAL REFUGEE ORGANIZATION    513

" By means of the aforementioned Decree Law No. 468 of March 6, 1948, the Italian Government gave legislative recognition to the international character of the I.R.O. and granted to its director and chief executive officers of other than Italian nationality who were not permanently resident in Italy the immunities, facilities and privileges normally enjoyed by diplomatic missions. In order to ' co-operate in the programme of the I.R.O. within the limits of its own jurisdiction ', the Italian Government granted facilities of the most varied kind: free use of immovable and movable property (in respect of which it undertook to bear the whole cost), immunity from taxes and duties, railway facilities, and other services. All this was inherent in the discharge of the functions of this international organization. Further, to facilitate the discharge of the functions of the I.R.O., the Italian Government also ensured the latter's protection from suit, whether as plaintiff or defendant, in all actions concerning the Organization itself or its personnel in Italy so far as concerns the official functions of the Organization. However, while giving all effective assistance to the I.R.O. by means of the above-mentioned Agreement (sic) of March 6, 1948, provision was made that the functions and activities of the I.R.O. were to be carried out in accordance with the laws and international obligations undertaken or to be undertaken by Italy, and that the I.R.O. would be responsible for all damage resulting, within the meaning of Italian law, from the negligence of its own personnel or the refugees. As the I.R.O., for the purpose of carrying out its functions, employed many persons of different callings [manual and other workers], and as the Italian Government undertook to give to the I.R.O. every possible assistance in the selection and appointment of qualified Italian citizens, it was provided that there should be applicable to these all the privileges of social insurance provided by Italian law for employees of private Italian firms. The I.R.O. then laid down in detail, in its Internal Staff Regulations of April 13, 1951, the conditions of employment and provided that, in so far as no provision was made in these Regulations, the Organization or the employees should refer to the relevant Italian legislation on private employment. It accordingly follows that the I.R.O., notwithstanding that it is a subject of international law, placed itself indirectly and in a subsidiary manner under Italian law in certain respects. This fact must serve as a guide in the present case to determine the competent body which can decide the dispute between the I.R.O. and the plaintiff. Article 9 of the above-mentioned Staff Regulations provides that in cases of dispute between the employee and the Organization, the employee may present his case to the Personnel Office of the Organization and, if he does not accept its decision, ' may submit a request for arbitration to the Italian Chamber of Advocates '.

" The present serious and irreconcilable dispute between the

514    INTERNATIONAL ORGANIZATION

parties turns on the nature and compulsory character of this arbi-
tration. The defendants contend that this arbitration automatically
excludes the jurisdiction of the Italian courts and that the I.R.O.
has created its own special tribunal for the determination of disputes
with its personnel, within the framework of its own public organiz-
ation. The plaintiff, on the other hand, denies the effect of the
Internal Regulations of the I.R.O., which have been laid down
unilaterally and cannot bind the Italian State; Italian law need
not recognize such Regulations as would be contrary to Articles 24
and 25 of the Constitution whereby all persons are entitled to invoke
the jurisdiction of the courts for the protection of their rights and
nobody can be deprived of the right to appeal to the Judge appointed
by law. According to the plaintiff, the arbitration here relied upon
is therefore only voluntary [the employee ' may . . .'], and, in partic-
ular, arbitration is prohibited in cases concerning contracts of em-
ployment [Article 806 of the Code of Civil Procedure]. The Court is
of opinion that the contentions of the plaintiff lose their force where
we are concerned, as is undoubtedly the case here, in regard to
services which are inherent in the performance of the public func-
tions of an international person which, within the framework of its
own organization, has provided for a method of solving such dis-
putes. No valid argument can be derived from the word ' may ' in
order to prove the voluntary nature of the arbitration in the present
case; once the sovereign will of the I.R.O. has been recognized in
respect of contracts with its own personnel, the procedure laid down
by the I.R.O. would be the only means open to an employee to assert
his rights. Lastly, the exclusion of the right to settle by arbitration
labour disputes which are or may be governed by collective agree-
ments, however binding in municipal law, cannot be binding in all
cases concerning international relations. Italian law governing private
employment can be relied upon in so far as the internal law of the
international person makes no other provision. It seems to the
Court that the decisive factor militating against the legality of the
arbitration in the present case, as provided in Article 9 of the Staff
Regulations of the I.R.O., is the fact that it is contrary to the basic
requirements underlying the constitution of any arbitral tribunal. In
fact, the arbitration in the present case is entrusted [as the Regula-
tions provide] ' to the Italian Chamber of Advocates '. Nothing
further is said, and in particular there is no provision as to whether
there shall be a sole arbitrator or several arbitrators (in the latter
case the number of arbitrators should have been stated), and by
whom the arbitrators are to be appointed. These particulars are
indispensable because the Italian Chamber of Advocates consists of
a large elected body . . ."
    The Court then dealt in greater detail with those aspects of
Italian law which caused it to conclude that an arbitral tribunal as
provided for in the Staff Regulations of the I.R.O. could not be

constituted. As, according to those Regulations, Italian law was to apply to the extent that the Regulations themselves made no provision, the Court then had to determine the question whether jurisdiction was vested in the administrative or the civil courts. The Court continued: " As disputes concerning contracts of employment with the Italian State are made subject to the jurisdiction of the administrative courts and as in this case one of the parties is a subject of international law which is outside the administrative organization of that State, this Court considers it more consonant with principle to refer this case to the ordinary courts, having regard to the universal character of the jurisdiction of those courts which is limited only in so far as the law expressly precludes it.

The question of jurisdiction must be determined in this sense and the finding of the labour Tribunal of Naples modified in so far as it declared itself incompetent (and held jurisdiction to be vested in the administrative courts).

[Report: *Rivista di Diritto internazionale*, 39 (1956), p. 546.]

**United Nations—Legal Nature of—United Nations Korean Reconstruction Agency—Capacity to Institute Legal Proceedings in a National Court—Subjection to Same Requirements as Citizens of Nation Concerned—The Law of the United States of America.**

UNITED NATIONS KOREAN RECONSTRUCTION AGENCY *v.* GLASS PRODUCTION METHODS, INC., *ET AL.*

*United States, District Court, Southern District, New York.*

*August 3, 1956.*

THE FACTS.—This was an action by an international organization against a corporation domiciled in New York and against three individuals, two of whom were residents of Connecticut. 22 U.S.C. § 288a, 59 Stat. 669, accords the privilege of instituting legal proceedings in courts of the United States to international organizations designated by the President.[1]

The plaintiff contended that the Federal District Court had jurisdiction of the action by virtue of 28 U.S.C. § 1331, 62 Stat. 930, which granted to that Court original jurisdiction of all civil actions wherein the matter in controversy exceeded $3,000 in value and arose under the Constitution, laws, or treaties of the United States. A venue requirement was imposed by 28 U.S.C. 1391 (b), 62 Stat. 935, which provided that a civil action wherein jurisdiction was not based solely on diversity of citizenship could be brought only in the judicial district where all the defendants resided.

The individual defendants, who were residents of Connecticut,

[1] The United Nations had been so designated by Executive Order No. 9698 of February 19, 1946 (11 Fed. Reg. 1809 (1946)).