**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Delama GEORGES, *et al.* | Civil Action No.   1:13-cv-07146-JPO |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW** |
| United Nations, *et al.* | Oral Argument Requested |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER OPPOSITION TO
THE GOVERNMENT'S STATEMENT OF INTEREST**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

I.    JURISDICTION OVER THIS CASE DOES NOT TURN ON THE UN'S
WAIVER OF IMMUNITY. .................................................................................2

      A.    Waiver Is a Wholly Distinct Legal Concept from Conditionality and
Breach, and Is Not Alleged by Plaintiffs.....................................................2

      B.    Exceptions to Immunity Are Wholly Distinct from Conditions Precedent
to Asserting Immunity. ...............................................................................5

      C.    The Government's Decontextualized Reading of Section 2 Does Not Merit
Deference. ...................................................................................................6

II.    DEFENDANTS' FAILURE TO SATISFY THE REQUIREMENTS OF
SECTION 29 RENDERS IMMUNITY UNENFORCEABLE.............................7

      A.    Section 2 and Section 29 Are Expressly Linked in the CPIUN's Text. ......7

      B.    The CPIUN's Drafting History Confirms that Section 29 Is a Material
Term and a Condition Precedent to Section 2 Immunity. ...........................8

      C.    The Provision of Alternative Dispute Resolution Is Universally
Understood to Be Material to Immunity. ....................................................9

III.    PLAINTIFFS HAVE STANDING TO ASSERT RESPONSIVELY THAT
DEFENDANTS HAVE BREACHED THE CPIUN. ...........................................14

IV.    DEFENDANTS' BAD FAITH ACTS BAR ENFORCEMENT OF IMMUNITY.
....................................................................................................................16

V.    THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN OF PROVING
THAT APPLYING IMMUNITY WOULD COMPORT WITH PLAINTIFFS'
FUNDAMENTAL RIGHT OF ACCESS. ...........................................................17

VI.    DEFENDANTS BAN AND MULET ARE NOT ENTITLED TO IMMUNITY
UNDER THE CPIUN, THE UN CHARTER, OR THE VCDR.............................18

CONCLUSION ......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Abbott v. Abbott*, 560 U.S. 1 (2010) ........................................................................9

*Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986) ..............................................15

*ACLU v. Department of Defense*, 543 F.3d 59 (2d Cir. 2008), *vacated on other grounds*, 558 U.S. 1042 (2009) ...........................................................................7

*Askir v. Boutros-Ghali*, 933 F. Supp. 368 (S.D.N.Y. 1996)....................................5

*Beck v. Coats*, No. 11-420, 2012 WL 2990017 (N.D.N.Y. July 19, 2012) ..................18

*Bisson v. United Nations*, No. 06-6352, 2007 WL 2154181 (S.D.N.Y. July 27, 2007)........................................................................................................................4

*Boimah v. United Nations General Assembly*, 664 F. Supp. 69 (E.D.N.Y. 1987) .........4

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010)..........................20

*Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010)........................................*passim*

*Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301 (2d Cir. 2000)............................6

*Cook v. United States*, 288 U.S. 102 (1933)............................................................16

*DIC Animation City, Inc. v. McNaught Syndicate, Inc.*, No. 92-4859, 1993 WL 77377 (S.D.N.Y. Mar. 15, 1993).......................................................................3

*Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342 (S.D.N.Y. 2013)..................5

*Edye v. Robertson*, 112 U.S. 580 (1884) ................................................................15

*Emmanuel v. United States*, 253 F.3d 755 (1st Cir. 2001) ....................................5, 15

*Flores v. Southern Peru Copper Corp.*, 414 F. 3d 233 (2d Cir. 2003) ........................19

*Indemnity Insurance Co. v. Pan American Airways, Inc.*, 58 F. Supp. 338 (S.D.N.Y. 1944)................................................................................................15

*Johnson v. California*, 543 U.S. 499 (2005)............................................................18

*Mora v. New York*, 524 F.3d 183 (2d Cir. 2008)....................................................14

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415 (N.Y. 1995)..........................................................................................................3

*Sadikoglu v. United Nations Development Programme*, No. 11-0294, 2011 WL 4953994 (S.D.N.Y. Oct. 14, 2011) .................................................................. 6

*Sillman v. Twentieth Century-Fox Film Corp.*, 3 N.Y.2d 395 (1957) ..................... 3

*Standt v. City of New York*, 153 F. Supp. 2d 417 (S.D.N.Y. 2001) ........................ 15

*Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176 (1982) .......................... 6

*Swarna v. Al-Awadi*, 622 F. 3d 123 (2d. Cir. 2010) ............................................ 14

*United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975) ................. 14, 15

*United States v. Al Liby*, No. S10 98 Crim. 1023, 2014 WL 2135939 (S.D.N.Y. May 22, 2014) ....................................................................................... 19

**INTERNATIONAL CASES**

*Al-Dulimi v. Switzerland*, 2013 Eur. Ct. H.R. 1173 ......................................... 13

*Drago v. International Plant Genetic Resources Institute*, No. 3718/07, ILDC 827 (It.) (Feb. 19, 2007) .......................................................................... 10

Joined Cases C-402/05 & C-415/05 P, *Kadi v. Council*, 2008 E.C.R. I-06351 .......... 13

*Maida v. Administration for International Assistance*, (1956) RDI 575, 23 ILR 510 (Court de Cassazione) [Supreme Court] (It.) (May 27, 1955) ................. 12

*Nada v. Switzerland*, 2012 Eur. Ct. H.R. 1691 ................................................ 13

*Stavrinou v. United Nations* (1992) CLR 992, ILDC 929 (CY 1992) (Sup. Ct. Cyprus 17 July 1992) .................................................................... 10

*UNESCO v. Boulois*, Cour d'Appel [CA] [regional court of appeal] Paris, 14e Ch. A, June 19, 1998, Revue de l'Arbitrage 1999, II, 343 (Fr.), *translated in* 1999 Y.B. Com. Arb. XXIV 294) .................................................. 10, 11, 12

**FEDERAL STATUTES**

28 U.S.C.

§ 1346(b)(1) ........................................................................................ 5
§ 2675 ................................................................................................ 5
§ 2680 ................................................................................................ 5

**TREATIES**

Agreement Between France and UNESCO Headquarters, Fr.-U.N., July 2, 1954 ...... 11

Agreement Between the United Nations and the Government of Haiti Concerning the Status of the United Nations Operations In Haiti, U.N.-Haiti, July 9, 2004 .........................*passim*

Charter of the United Nations .................................................................................. 14, 19

Convention Against Torture Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* Dec. 10, 1984, 1465 U.N.T.S. 85, S. Treaty Doc. No. 100-20 (1980) ................................................................. 15

Convention on Privileges & Immunities of the United Nations, *adopted* Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 16 ....................................................... *passim*

Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95 ................................................................................................ 19

Vienna Convention on the Law of Treaties, *opened for signature* May 23, 1969, 1155 U.N.T.S. 331 (entered into force Jan. 27, 1980) ...................................... 6

UNITED NATIONS

Report of the Special Rapporteur on the Human Right to Safe Drinking Water and Sanitation, Common Violations of the Human Right to Water, Human Rights Council, UN Doc. A/HRC/27/55 (June 30, 2014). .................................. 4

OTHER AUTHORITIES

Williston on Contracts (4th ed. 2014) ........................................................................... 5

Black's Law Dictionary (10th ed. 2014) ....................................................................... 5

Chen, Bin, *General Principles of Law as Applied by International Courts and Tribunals* (Cambridge Univ. Press 1994) ....................................................... 16

Constitution of the International Plant Genetic Resources Institute (1996) ................. 10

Hathaway, Oona, *et al.*, *International Law at Home: Enforcing Treaties in U.S. Courts*, 37 Yale J. Int'l L. 51 (2012) ........................................................ 15, 16

International Court of Justice, *Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights*, *Verbatim Record* (Dec. 10, 1995), http://www.icj-cij.org/docket/files/100/5913.pdf ....................................................................... 9

Study on Privileges & Immunities in Prep. Comm. Doc. PC/EX/113/Rev.1 Nov. 12, 1945) ................................................................................................. 8

Vazquez, Carlos Manuel, *Treaty-Based Rights and Remedies of Individuals*, 92 Colum. L. Rev. 1082 (1992) ..................................................................... 16

## INTRODUCTION

Plaintiffs respectfully submit this response to the Government's Letter in Further Support of its Statement of Interest (the "Reply") in this case seeking to hold the United Nations and its officers accountable for their role in precipitating the ongoing cholera epidemic in Haiti.

The Government's Reply mischaracterizes the core issues before this Court as turning on whether Defendants have waived immunity under Section 2 of the CPIUN, *adopted* Feb. 13, 1946, 21 U.S.T. 1418, 1 U.N.T.S. 16.[1]  Waiver is not at issue here.  The core issue for this Court to decide is whether Defendants may enjoy immunity under Section 2 of the CPIUN when they have materially breached the treaty and refused to satisfy a condition precedent to the treaty's immunity provisions.

The Government concedes that the CPIUN imposes an "obligation" on Defendants to provide a forum for Plaintiffs to assert their claims, and does not dispute that the Defendants have breached that obligation.  Reply at 4.  Yet the Government asks the Court to disregard the legal consequences of Defendants' breach on the grounds that: 1) the violation does not prove that Defendants waived immunity under Section 2, and 2) Plaintiffs lack standing to assert the breach because they are not parties to the CPIUN.  Both arguments are unavailing.

Section 29's condition that the UN "shall" provide modes of settlement of private law claims is mandatory and without exception under the plain text of the CPIUN, and constitutes a material term that cannot simply be ignored.  It is well established that a party that breaches or fails to satisfy a condition precedent of a contract cannot then enjoy the benefits of its bargain.  Here, Defendants may not selectively choose among the CPIUN's benefits and obligations to evade accountability for private law torts.  Additionally, Plaintiffs have standing to assert that

---

[1]    Plaintiffs incorporate the abbreviations defined in their Memorandum of Law in Opposition to the Government's Statement of Interest, filed on May 15, 2014 (hereinafter "Opposition").

Defendants have committed this breach because they do so now in response to the Government's claim of immunity, not as a basis for relief.

Accordingly, the Court should deny the Government's request that this case be dismissed on the ground of immunity and affirm that service of process is proper.

## ARGUMENT

### I. JURISDICTION OVER THIS CASE DOES NOT TURN ON THE UN'S WAIVER OF IMMUNITY.

In its Reply, the Government sidesteps Plaintiffs' core argument against a ruling of immunity. The Government's primary response to Plaintiffs' Memorandum of Law in Opposition to the Government's Statement of Interest (hereinafter "Opposition") is that Defendants retain their immunity because their failure to comply with Section 29 of the CPIUN does not constitute an express waiver of immunity under Section 2 of the treaty. Reply at 4-5. That contention fails entirely to rebut Plaintiffs' arguments, which are in no way based on, or affected by, the presence or absence of a waiver by the UN or its officers.

#### A. Waiver Is a Wholly Distinct Legal Concept from Conditionality and Breach, and Is Not Alleged by Plaintiffs.

As Plaintiffs have consistently explained, Defendants do not have immunity from suit and service of process in this case because they have failed to perform their duty under Section 29 of the CPIUN to provide alternative modes of settlement for private law claims against them. Pls.' Opp'n at 13 *et seq.* This breach of the CPIUN prohibits Defendants from enjoying immunity in this case for at least two reasons: 1) Defendants have thereby failed to satisfy a condition precedent to receiving immunity; and 2) Defendants may not affirmatively enforce the immunity provision of a treaty that they have materially breached. *Id.* These arguments have nothing to do with waiver.

Waiver is an established legal concept defined as the intentional relinquishment of a known and otherwise enforceable legal right.  *See DIC Animation City, Inc. v. McNaught Syndicate, Inc.*, 92-4859, 1993 WL 77377, at *3 (S.D.N.Y. Mar. 15, 1993) (citing *Sillman v. Twentieth Century-Fox Film Corp.,* 3 N.Y.2d 395, 403 (1957)).  Plaintiffs do not assert that Defendants intended to relinquish enforceable immunity rights under the CPIUN when they rejected Plaintiffs' claims.  Rather, by refusing to comply with Section 29, Defendants have failed to satisfy an underlying condition upon which the enforceability of immunity depends.

It is well established that failure to comply with a condition precedent in an agreement prevents a party from taking advantage of a right provided under the same agreement.  *See, e.g.*, *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) ("A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises…. Conditions can be express or implied.") (citation and internal quotation marks omitted).  Here, Defendants can only take advantage of the CPIUN's immunity if they have met their own obligation to provide a mode of settling private law claims outside of the judicial process, as required by Section 29.  *See* Pls. Opp'n at 18-24, 30.  Defendants' failure to perform means that immunity is not enforceable here, and there is thus no immunity to waive.

Section 29 is not only a condition precedent to Section 2, but also a material term to the CPIUN as a whole.  By refusing to receive Plaintiffs' claims as required by Section 29, Defendants materially breached the CPIUN.[2]  Under both U.S. and international law, a party in

---

[2]    The Government observes in a footnote that the UN and Haitian Government have established a "High Level Committee for the Eradication of Cholera."  Reply at 12 n.6. There is no basis in the record to suggest that this committee—which was first announced in October 2013 and has yet to publicly announce a single initiative—has any bearing on the UN's CPIUN and SOFA obligations to establish a standing claims commission for victims of cholera.

material breach of an agreement is no longer entitled to performance of duties owed to it under the same agreement. *See* Pls.' Opp'n at 31-32. Thus, the breach of a material term to the CPIUN, such as Section 29, has the legal consequence of making immunity unenforceable. This is wholly unrelated to whether Defendants have or have not waived immunity.

The Government cites no case holding that UN immunity is enforceable despite the UN's breach of Section 29. Nor does such a case exist. The cases cited by the Government in its Statement of Interest, and repeated in its Reply, are not on point because they relate to the standard for establishing an *express waiver* of immunity within the meaning of Section 2. *See, e.g.*, *Brzak v. United Nations*, 597 F.3d 107, 112 (2d Cir. 2010) (rejecting UN employees' argument that "purported inadequacies with the United Nations' internal dispute resolution mechanism indicate a waiver of immunity" and stressing the requirement that Section 2 waivers be express); *Bisson v. United Nations*, No. 06-6352, 2007 WL 2154181, at *9 (S.D.N.Y. July 27, 2007) (rejecting the plaintiff's argument that the UN employee compensation system did not adequately satisfy Section 29 and therefore constituted an express waiver of immunity under Section 2); *Boimah v. United Nations General Assembly*, 664 F. Supp. 69, 71 (E.D.N.Y. 1987) (holding that allegations of racial discrimination in hiring practices did not indicate an intent to expressly waive immunity). None of these cases considers whether compliance with Section 29 is a condition precedent to Section 2 immunity, or whether the UN may enjoy immunity under the CPIUN when in breach of its duties under the same treaty. These are questions of first impression for this Court.

---

Indeed, since the establishment of the committee, the UN's own human rights experts have repeatedly and publicly stressed that the UN continues to be in violation of its duties to cholera victims such as Plaintiffs. Most recently, the UN Special Rapporteur on the Human Right to Clean Water and Sanitation wrote in her official report that the UN must "ensure the alleged [cholera] victims' right to a remedy" by "establish[ing] appropriate accountability mechanisms, including compensation, if warranted." Report of the Special Rapporteur on the Human Right to Safe Drinking Water and Sanitation, Common Violations of the Human Right to Water, Human Rights Council, U.N. Doc. A/HRC/27/55, ¶¶ 33-34 (June 30, 2014).

**B. Exceptions to Immunity Are Wholly Distinct from Conditions Precedent to Asserting Immunity.**

The Government argues that immunity cannot be conditioned on compliance with Section 29 because such noncompliance "is not included in the category of the exceptions to immunity." Reply at 3. This argument conflates exceptions with conditions precedent.

By definition, conditions precedent and exceptions are not mutually exclusive—the former prevent the operation of a provision in a contract or statute until a specific act or event has occurred, while the latter exclude something from the scope of the provision. *See Eastman Kodak*, 936 F. Supp. 2d 342, 348 (S.D.N.Y. 2013); 13 Williston on Contracts § 38:5 (4th ed. 2014); Black's Law Dictionary 355, 682-83 (10th ed. 2014) (defining "condition precedent" and "exception"). There is nothing unusual about a provision, such as Section 2, that contains an exception and is also subject to a condition precedent. The Federal Tort Claims Act, for example, provides that the United States may be subject to tort suits, 28 U.S.C. § 1346(b)(1), except in certain enumerated circumstances, 28 U.S.C. § 2680, but also requires that plaintiffs meet certain conditions precedent before initiating such suits, 28 U.S.C. § 2675. Similarly, the fact that Section 2 contains an express exception to immunity (waiver) has no bearing on whether compliance with Section 29 is a condition precedent to Section 2 immunity.

The Government cites cases stating that immunity under Section 2 is subject to an express exception in the form of waiver. Reply at 3, 5. But those cases are not relevant to whether Defendants may enforce the protections of Section 2 against Plaintiffs when Defendants have breached their obligation under Section 29 to provide appropriate modes of settlement. *See Emmanuel v. United States*, 253 F.3d 755, 756 n.2 (1st Cir. 2001) (considering whether a prior UN-Haiti SOFA applies to individuals, and discussing, by way of footnote, the immunity generally enjoyed by the UN under Section 2 of the CPIUN); *Askir v. Boutros-Ghali*, 933 F.

Supp. 368, 372 (S.D.N.Y. 1996) (restating the text of Section 2 as a starting point for considering whether the UN's unauthorized occupation of certain premises could be considered an activity that may fall outside the scope of immunity); *see also Sadikoglu v. United Nations Development Programme*, No. 11-0294, 2011 WL 4953994 (S.D.N.Y Oct. 14, 2011) (finding that the scope of Section 2 immunity is absolute and not functional, and subject only to waiver).  As argued more fully in Plaintiffs' Opposition, the relevant text and drafting history of the CPIUN, as well as the historical background of the UN's founding, all establish that compliance with Section 29 must be interpreted as a condition precedent to UN immunity.  The Government has made no showing to the contrary.

### C.  The Government's Decontextualized Reading of Section 2 Does Not Merit Deference.

By focusing solely on Section 2 and ignoring Section 29, the Government offers an unreasonably fragmented reading of the CPIUN.  In so doing, the Government departs from well-established rules of treaty interpretation requiring provisions to be read in the context of the treaty as a whole.  *See* Vienna Convention on the Law of Treaties (hereinafter "VCLT") art. 31, *opened for signature* May 23, 1969, 1155 U.N.T.S. 331 (treaties should be interpreted in accordance with the ordinary meaning to be given to the terms in their context, including the full text read in the light of its object and purpose); *see also Chubb & Son, Inc. v. Asiana Airlines*, 214 F.3d 301, 308-10 (2d Cir. 2000) (interpreting treaties and stating that U.S. courts should apply the rules found in the VCLT, which provides "an authoritative guide to the customary international law of treaties").

The Government's views on how to interpret treaty provisions, though generally given "great weight," are not conclusive.  *See generally Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982).  No deference is due when the Government's interpretation is

unreasonable. *ACLU v. Dep't of Defense*, 543 F.3d 59, 88 (2d Cir. 2008) ("[R]espect is

ordinarily due the *reasonable* views of the Executive Branch concerning the meaning of an

international treaty...") (emphasis added) (internal quotation marks omitted), *vacated on other*

*grounds*, 558 U.S. 1042 (2009); *see also* Pls.' Opp.'n at 13-14 (collecting cases where courts

have disregarded the Government's views). The Government's selective reading of the CPIUN

is unreasonable and, therefore, not entitled to deference.

## II. DEFENDANTS' FAILURE TO SATISFY THE REQUIREMENTS OF SECTION 29 RENDERS IMMUNITY UNENFORCEABLE.

### A. Section 2 and Section 29 Are Expressly Linked in the CPIUN's Text.

The Government's assertion that the right to immunity in Section 2 and the obligation to

provide dispute resolution in Section 29 exist "without any link between them" conflicts with the

plain text of the treaty. Reply at 8. Section 29(b) explicitly links immunity with the obligation

to provide modes of settlement, stating that the UN "shall make provisions for appropriate modes

of settlement of … disputes involving any official of the United Nations who by reason of his

official position enjoys immunity…." Section 29(a) concerning disputes with the UN implicitly

contains the same link. Immunity is not expressly mentioned there because it would be

unnecessary to do so, given that the CPIUN grants the UN immunity for all claims provided that

it complies with Section 29. In contrast, the CPIUN grants UN officers immunity only for

official acts. Therefore, the CPIUN specifies that there is an obligation to settle claims under

Section 29(b) only if the officer enjoys immunity for that claim. The SOFA's dispute resolution

clause affirms that the obligation to settle claims is directly related to immunity, stating that "any

dispute or claim of a private-law character … to which MINUSTAH or any member thereof is a

party and over which the courts of Haiti *do not have jurisdiction because of any provision of the*

*present Agreement* shall be settled by a standing claims commission to be established for that purpose."  SOFA, U.N.-Haiti, July 9, 2004, ¶ 55 (emphasis added).

### B. The CPIUN's Drafting History Confirms that Section 29 Is a Material Term and a Condition Precedent to Section 2 Immunity.

The drafters of the CPIUN understood immunity to be conditioned on compliance with the obligation to provide modes of settlement for disputes.  Pls.' Opp'n at 19-20.  The drafters stated that the provision of alternative modes of dispute settlement is a necessary condition that must be met "if [the UN] is not prepared to go before the Courts."  Pls.' Opp'n. Ex. 2 (Study on Privileges & Immunities *in* Prep. Comm. Doc. PC/EX/113/Rev.1, at 70, Nov. 12, 1945).  Following this instruction, the drafters imposed on the UN an unequivocal obligation to settle claims in every draft of the treaty, including the final version now in force.  The language they chose is mandatory ("shall")—requiring that the UN provide dispute settlement mechanisms.  The language is in no way hortatory or discretionary, as the Government suggests.  Reply at 7-8.

Significantly, the Government admits that "the drafting history reflects a bargain between the UN and its member states in which, in exchange for Section 2, which establishes the UN's absolute immunity, the UN, in Section 29, agreed to provide for dispute resolution mechanisms for third-party claims."  Reply at 9.  As explained in Plaintiffs' Opposition, it is well established under both U.S. and international law that a party that fails to satisfy its own duties under a treaty is no longer able to claim the reciprocal benefits of that bargain.  Pls.' Opp'n at 31-32.  Further, Section 29 is material to the object and purpose of the CPIUN.  Pls.' Opp'n at 31-32.  If this Court were to enforce immunity when the UN has not complied with its obligations under Section 29, the Court would effectively nullify the bargain contained in the CPIUN.  It would also undermine the treaty's object and purpose of granting the UN broad immunities while

ensuring that such immunities do not amount to impunity.[3] *See* Difference Relating to Immunity from Legal Process of a Special Rapporteur of the Commission on Human Rights, Verbatim Record, ¶ 13 (Dec. 10, 1995, 10 a.m.), http://www.icj-cij.org/docket/files/100/5913.pdf (stating that "[t]he immunity of the United Nations, or its agents, does not leave a plaintiff without remedy" because "in the event that immunity is asserted, a claimant seeking a redress against the Organization shall be afforded an appropriate means of settlement [under Section 29]"); *Brzak v. United Nations*, No. 06-3432, Dkt. 19, Memorandum of Law In Support of the Motion of the United Nations to Dismiss and to Intervene, at *4-5 (S.D.N.Y. Oct. 2, 2007) (noting that Section 29 "eliminates the prospect of impunity" that would attach to unfettered immunity). Defendants' material breach of the CPIUN thus renders the treaty's immunity provisions inapplicable here—a point which the Government entirely fails to address in its Reply.

### C.  The Provision of Alternative Dispute Resolution Is Universally Understood to Be Material to Immunity.

This case presents an issue of first impression in U.S. courts, but foreign signatories to the CPIUN have repeatedly held that the availability of alternative dispute settlement is a material condition to international organizations' enjoyment of immunity. Although these foreign courts' views are not binding on this Court, they "are entitled to considerable weight." *See Abbott v. Abbott*, 560 U.S. 1, 16 (2010) (internal quotation marks omitted).

The Government seeks to sidestep the extensive case law cited by Plaintiffs and *Amici Curiae* by misconstruing key facts about the relevant cases. The Government also ignores the broader point that when international organizations have refused to provide an alternative

---

[3] As previously explained, such a decision would also ratify the UN's *ultra vires* action in claiming an immunity broader than that conferred and limited by the UN Charter. Pls.' Opp'n. at 28-29.

settlement mechanism, national courts have upheld the right to a remedy notwithstanding any immunity agreements:

- In *Drago v. International Plant Genetic Resources Institute*, No. 3718/07, ILDC 827 (It.) (Feb. 19, 2007), the Italian Supreme Court found that the International Plant Genetic Resources Institute ("IPGRI") was not entitled to immunity when it failed to provide an independent and impartial extrajudicial remedy in violation of its headquarters agreement.  The Government argues that, because the underlying lawsuit was brought against a private corporation, the decision is inapplicable here.  Reply at 9.  That is incorrect.  IPGRI, now renamed Biodiversity International, is an international organization and cooperative institute of the UN's Food and Agriculture Organization. *See* Constitution of the IPGRI arts. 1, 18 (1996) ("[IPGRI] … shall operate as a non-profit autonomous organization, international in status," and it shall be entitled to "the same rights, privileges and immunities as customarily accorded to other international organizations….").

- In *Stavrinou v. United Nations*, (1992) CLR 992, ILDC 929 (CY 1992) (Sup. Ct. Cyprus 17 July 1992), the Cypriot Supreme Court held that UNFICYP—a UN peacekeeping force governed by an international agreement akin to the UN-Haiti SOFA—was immune from suit under the CPIUN because, on the facts of that case, an alternative dispute settlement mechanism was available to the injured claimant.  The existence of this mechanism was material to the court's holding that immunity did not violate the right to access a remedy, and thus is not dicta as argued by the Government.  Reply at 10.

- The French court of appeals' decision in *UNESCO v. Boulois* is highly relevant to this case, because it held that a UN agency did not enjoy absolute immunity because it had

breached its agreement to refer disputes with private parties to arbitration. *See* Pls.'
Opp'n Ex. 14 (Cour d'Appel [CA] [regional court of appeal] Paris, 14e Ch. A, June 19,
1998, Revue de l'Arbitrage 1999, II, 343 (Fr.), *translated in* 1999 Y.B. Com. Arb. XXIV
294). Importantly, the court found that UNESCO's absolute immunity from jurisdiction
did not permit it to evade its legal obligations to submit to arbitration. *Id.*

- o The Government seeks to undermine the relevance of this decision by contending
  that it examined legal frameworks inapplicable to this case. Reply at 10. This is
  misleading. The France-UNESCO agreement confers absolute immunity on
  UNESCO in France, and, as a UN agency, UNESCO is entitled to immunity
  under the Convention on the Privileges and Immunities of the Specialized
  Agencies ("CPISA"), the companion treaty to the CPIUN. CPISA § 1(c), *adopted*
  Nov. 21, 1947, 33 U.N.T.S. 261 (entered into force Dec. 2, 1948) (defining
  "specialized agencies" to include UNESCO). Both agreements grant immunity in
  terms virtually identical to the CPIUN. *Compare* CPIUN, *supra*, § 2 *with* France-
  UNESCO Headquarters Agreement, Fr.- U.N., art. 12, July 2, 1954 ("The
  Organization, its property and assets wherever located and by whomsoever held,
  shall enjoy immunity from every form of legal process …") *and* CPISA, *supra*, §
  4 ("The specialized agencies, their property and assets, wherever located and by
  whomsoever held, shall enjoy immunity from every form of legal process….").
  Likewise, both agreements contain dispute settlement clauses that are nearly
  identical to Section 29 of the CPIUN. *Compare* CPIUN, *supra*, § 29 *with* France-
  UNESCO Agreement, art. 28 ("The Organization shall make provision for
  appropriate modes of settlement of … [d]isputes arising out of contracts or other

disputes in private law to which the Organization is party") *and* CPISA, *supra*, §
31 ("Each specialized agency shall make provision for appropriate modes of
settlement of: (a) Disputes arising out of contracts or other disputes of private
character to which the specialized agency is a party.").

o   The central issue in *Boulois* was whether UNESCO could enjoy absolute
immunity from national court jurisdiction when it had failed to comply with its
legal obligation to refer claims against it to alternative dispute resolution.  The
fact that the court considered the legal obligation as further articulated in
subsequent agreements does not impact the decision's relevance.  In the case
before this Court, the UN also has obligations further articulated in the SOFA and
General Assembly resolutions governing compensation for injuries caused by UN
peacekeepers.  The bottom line remains the same: that adherence to the
obligations is a material condition to enjoyment of absolute immunity.

•   In *Maida v. Administration for International Assistance*, the Italian Supreme Court
refused to enforce the immunity of the International Refugee Organization ("IRO," now
the UN High Commissioner for Refugees) because the IRO's promise to submit claims to
arbitration, as provided in its regulations, lacked adequate specificity to ensure
independence.  (1956) RDI 575, 23 ILR 510 (Corte di Cassazione) [Supreme Court] (It.)
(May 27, 1955).  As a UN agency, IRO immunity is also governed by the CPISA.
CPISA, *supra*, Annex X (applying clauses without modification to the IRO).  IRO thus
enjoyed immunity equal in scope to that of the UN.  The court found this immunity to be
unenforceable because IRO did not afford access to adequate dispute settlement.

The Government's attempts to distinguish these cases misses the forest for the trees: the cases collectively and unequivocally demonstrate the widely-held view in other jurisdictions that international organizations, including the UN, may not enjoy absolute immunity when they fail to comply with their obligations to provide claimants with alternative means to seek redress.

Similarly, the decisions regarding sanctions cited by *Amici Curiae* should not be disregarded, as the Government submits, on the ground that the courts invalidated local laws implementing UN resolutions. *See* Reply at 11. The key point of these cases is that where the UN does not provide an effective alternate remedy, the right to an effective remedy must be safeguarded at the national level in compliance with the rule of law. *See* Joined Cases C-402/05 & C-415/05 P, Kadi v. Council, 2008 E.C.R. I-06351, ¶¶ 321-28 (finding that, where the UN sanctions regime did not provide for judicial review, the court had to provide such protection); *Nada v. Switzerland*, 2012 Eur. Ct. H.R. 1691, ¶¶ 213-14 (finding that the country implementing the sanctions resolution should have provided an effective remedy where none was available at the UN); *Al-Dulimi v. Switzerland*, 2013 Eur. Ct. H.R. 1173 ¶ 134 (finding that "for as long as there is no effective and independent judicial review, at the level of the [UN], … it is essential that such individuals and entities should be authorized to request the review by the national courts of any measure adopted pursuant to the sanctions regime"). The courts in the sanctions cases were thus assessing whether UN resolutions could be properly implemented domestically when the UN accorded no mechanism for injured individuals to seek redress—essentially the same question at issue here—and took the position that they could not.

Adopting this balancing approach to immunity—which is supported by the plain text of the CPIUN, the treaty's drafting history, and its signatories' subsequent practices—would be consistent with and supported by the decisions of these foreign jurisdictions.

### III. PLAINTIFFS HAVE STANDING TO ASSERT RESPONSIVELY THAT DEFENDANTS HAVE BREACHED THE CPIUN.

The Government concedes that Section 29 imposes an "obligation" on the UN. Reply at 4. Yet, the Government argues that the Defendants should be allowed to evade the legal consequences of its breach because Plaintiffs are individuals and not states party to the CPIUN and SOFA and, therefore, lack standing to assert the breach. However, the Government's interpretation of the law on standing is overbroad and inapplicable here, where Plaintiffs have asserted breach in response to the Government's own effort to invoke the treaties as a defense.

The cases cited by the Government—*Mora v. New York*, 524 F.3d 183 (2d Cir. 2008), and *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir. 1975)—concern standing to assert treaty violations as the basis for seeking relief. In *Mora*, the plaintiffs sued and sought damages for the breach of the Vienna Convention on Consular Relations, and the Court expressly limited its holding to the "narrow question of whether a detained alien may vindicate in an action for damages the failure of the detaining authority to inform him of the availability of consular notification and access." 524 F.3d at 186-87. The plaintiff in *Lujan* petitioned for habeas corpus on the ground that his arrest in Bolivia violated Bolivia's sovereignty as protected by Article 2(4) of the UN Charter. 510 F.2d at 66-68. In both cases, plaintiffs sought to invoke an alleged treaty violation as the substantive basis for their claims.

These cases do not apply where the underlying cause of action is based on domestic law, as it is here. *See Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2d Cir. 2010) ("Because [the plaintiff—an individual] does not seek a remedy under the [VCDR], but instead seeks a remedy under state and federal law, we similarly need not determine … whether the treaty provides 'rights conferred directly upon individuals that are assertable, in a private action brought directly under the Convention itself or pursuant to [federal law].'" (quoting *Mora*, 524 F.3d at 193)).

Here, Plaintiffs' lawsuit arises out of Defendants' negligent and reckless conduct that introduced cholera into Haiti. These claims and the remedies they seek sound primarily in common law torts. It is the Government and Defendants who raised the CPIUN and SOFA as a defense, arguing that the immunity provisions of those treaties should be enforced to bar Plaintiffs' claims. Plaintiffs then asserted breach of the treaties *in response to* that argument.

Private litigants are not prevented from asserting a breach of treaty defensively, *i.e.*, in response to a claim made by the opposing party. *See Indemnity Ins. Co. v. Pan Am. Airways, Inc.*, 58 F. Supp. 338, 340 (S.D.N.Y. 1944) (noting that, because the treaty in question was raised defensively, the court "do[es] not reach the question whether it confers rights or creates causes of action"); Oona Hathaway et al., *International Law at Home: Enforcing Treaties in U.S. Courts*, 37 Yale J. Int'l L. 51, 83-87 (2012) (observing that an individual may generally raise a treaty defensively, even if the treaty does not confer a private right of action or private right, so long as the individual's underlying cause of action is independent of the treaty). This is true even if the treaty does not provide a private right of action.[4]  *See, e.g., Ackermann v. Levine*, 788 F.2d 830

---

[4]    Plaintiffs need not show that the CPIUN and SOFA confer private rights in order to assert them defensively. But in fact, the treaties clearly do confer such rights. It is well-settled that treaties may "contain provisions which confer certain rights upon the citizens or subjects of one of the [signatory] nations … which partake of the nature of municipal [domestic] law, and which are capable of enforcement as between private parties in the courts of the country." *Edye v. Robertson*, 112 U.S. 580, 598 (1884). Section 29 of the CPIUN and Articles 54 and 55 of the SOFA explicitly concern "third party claims" and "private law claims," which by definition are claims brought by private parties who are not signatories to the treaties. *See Emmanuel*, 253 F.3d at 756-57 (evaluating a clause in the predecessor to the SOFA with identical terms, and emphasizing that "[t]he agreement, in referencing 'any dispute or claim of a private law character' without mentioning the Government of Haiti, dispels any argument that the U.N.-Haiti SOFA applies only to Haiti and the UNMIH and not to individuals in Haiti"). These provisions are readily distinguishable from that at issue in *Lujan*, for example, which prohibits the threat or use of force by one state against the territorial integrity of another state, and thus is expressly directed at and limited to state parties. U.N. Charter art. 2 para. 4.

The fact that the CPIUN and SOFA contain separate provisions governing dispute settlement between states and the UN has no bearing on whether the private dispute resolution clauses confer rights on individuals. *See, e.g., Standt v. City of New York*, 153 F. Supp. 2d 417 (S.D.N.Y. 2001) (holding that article 36(1)(b) of the Vienna Convention on Consular Relations confers privately enforceable rights without considering the existence of a mandatory dispute resolution clause for state parties in the treaty's optional protocol.); *see also* Convention Against Torture Other Cruel, Inhuman or Degrading Treatment or Punishment, *opened for signature* Dec. 10, 1984, 1465 U.N.T.S. 85, S. Treaty Doc. No. 100-20 (1980) (providing that individuals shall have a private right of action under

(2d Cir. 1986) (reaching the merits of a private litigant's defense that the plaintiff violated the Hague Convention on Service Abroad, without requiring that the treaty provide a private right of action); *Cook v. United States*, 288 U.S. 102 (1933) (allowing the plaintiff to invoke a treaty between the United States and Britain to challenge the court's jurisdiction, without requiring that the treaty provide a right of action). *See also* Hathaway, *supra*, at 84 ("[C]ase law is consistent with this understanding that a treaty may be enforced defensively even when there is no private right of action."); Carlos Manuel Vazquez, *Treaty-Based Rights and Remedies of Individuals*, 92 Colum. L. Rev. 1082, 1143 (1992) ("A right of action is not necessary to invoke a treaty as a defense.").

Thus, the Government's theory regarding standing does not apply here, where Plaintiffs are asserting breach in response to the Government's attempt to enforce treaties.

## IV. DEFENDANTS' BAD FAITH ACTS BAR ENFORCEMENT OF IMMUNITY.

As explained in Plaintiffs' Opposition, the unclean hands doctrine bars Defendants from receiving immunity protections because they have engaged in continuous wrongful conduct that is directly related to their defense of immunity. *See* Pls.' Opp'n at 32-35. Defendants have repeatedly stonewalled Plaintiffs' requests to engage out of court, refused even to receive Plaintiffs' claims, and released false and misleading information over the course of nearly four years. *Id.* It is this malfeasance that has forced Plaintiffs to turn to domestic courts. According the UN immunity protections here would reward the Defendants' wrongful acts and would result in gross injustice. *See* Bin Cheng, General Principles of Law as Applied by International Courts

---

the treaty in article 13 while simultaneously providing that disputes among states parties shall be resolved through negotiation and arbitration in article 30). The text of the SOFA confirms that state disputes are to be treated separately from private disputes with the UN. SOFA, *supra*, ¶ 55 ("*Except as provided in paragraph 57* [the Haiti-UN dispute settlement clause], any dispute or claim of a private-law-character … shall be settled by a standing claims commission.") (emphasis added).

and Tribunals 149-58 (1994 ed.) (under international law, no one should be allowed to reap advantages from his or her own wrong).  Under the doctrine of unclean hands, the request for immunity should be refused.  The Government fails to present any response to this argument.

## V.  THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN OF PROVING THAT APPLYING IMMUNITY WOULD COMPORT WITH PLAINTIFFS' FUNDAMENTAL RIGHT OF ACCESS.

Plaintiffs' Opposition explains why dismissing this case would violate Plaintiffs' constitutional right of access.  Pls.' Opp'n at 38.  They explain that the only decision to consider UN immunity and the right of access, *Brzak*, is irrelevant because the U.S. plaintiff in that case had access to the UN's internal dispute resolution system, whereas Plaintiffs here have been denied access to any form of dispute resolution.  Pls.' Opp'n at 44.  Moreover, *Brzak* considered a broad facial challenge to the CPIUN.  This case is far more limited.  It concerns the constitutionality of the CPIUN only where the Government seeks immunity for Defendants, even though they have denied Plaintiffs access to required dispute resolution procedures.  This case thus presents an as-applied challenge to the unprecedented way in which enforcing immunity under the CPIUN would completely deprive Plaintiffs of any mechanism for redress.

In the absence of a dispute resolution system, granting Defendants immunity would fail to be a narrowly tailored—and hence, constitutional—infringement on Plaintiffs' right of access.  Pls.' Opp'n at 42-47.  Further, no compelling interest exists to justify this infringement.  *Id.* at 41-42.  UN immunity in this case differs from other types of immunities, such that the court's concern in *Brzak* (that finding a right of access violation would effectively mean that immunity in general could not exist) is unwarranted.  *Id.* at 45-47.

The Government has not responded to any of these arguments in its Reply. Instead, it asserts, in conclusory fashion, that *Brzak* is dispositive.[5] In so doing, the Government fails to explain why the vast dissimilarities between the two cases should be of no consequence. The constitutional issue raised by this case cannot be decided in isolation from the facts and from the narrow scope of Plaintiffs' arguments. It cannot be resolved by blind reliance on *Brzak*.

As the party asserting UN immunity, the Government bears the burden of proving that granting immunity in this case would be constitutional. *See Johnson v. California*, 543 U.S. 499, 505 (2005). The Government fails to satisfy that burden because it does not present any argument that immunity, as applied to the facts of this case, would pass strict scrutiny. The Government offers neither a compelling interest for granting UN immunity, nor an explanation as to how granting such immunity would be narrowly tailored. Accordingly, this Court should rule that applying immunity here would violate Plaintiffs' constitutional right of access. *See, e.g.*, *Beck v. Coats*, No. 11-420, 2012 WL 2990017, at *6 (N.D.N.Y. July 19, 2012) (denying motion for judgment on the pleadings where the defendants did "not put forth any rationale for the [alleged infringement, and i]n fact [did] not offer any argument whatsoever regarding the constitutionality of [it]").

## VI. DEFENDANTS BAN AND MULET ARE NOT ENTITLED TO IMMUNITY UNDER THE CPIUN, THE UN CHARTER, OR THE VCDR.

The Government's contention that Defendants Ban and Mulet are immune under the UN Charter, the CPIUN, and the VCDR disregards Plaintiffs' arguments that the breach of Section 29 of the CPIUN makes immunity unavailable under any of these treaties. The immunity accorded to UN officers under the CPIUN is necessarily derivative of any immunity provided to

---

[5]     The Government also notes that UN immunity has been upheld in previous cases involving U.S. citizens. *See* Reply at 13-14. However, no constitutional right of access issue was raised or addressed in those cases.

the UN itself. *See* Pls.' Opp'n at 36. Because the UN is not entitled to immunity as a result of

its breach of the CPIUN, Defendants Ban and Mulet are also not so entitled.

When CPIUN immunity is unavailable to UN officers, immunity under the UN Charter is

also unavailable. First, the UN Charter is not self-executing in U.S. courts and, therefore, does

not provide any enforceable rights. *See United States v. Al Liby*, No. S10 98 Crim. 1023, 2014

WL 2135939, at *4 (S.D.N.Y. May 22, 2014) ("[N]othing suggests that [the UN Charter] was

intended to be enforceable in federal courts." (citing *Flores v. S. Peru Copper Corp.*, 414 F.3d

233, 250 n.24 (2d Cir. 2003))). Second, the UN Charter provides that the "details of the

application" of UN officer immunity were to be set forth in a treaty such as the CPIUN. *See*

U.N. Charter art. 105, para. 3. Because the CPIUN defines the conditions of Defendants'

immunity, the UN Charter does not provide immunity to Defendants when the CPIUN does not.

The VCDR is only relevant to UN officers to the extent that it defines the scope of

immunity of "diplomatic envoys," applicable to senior UN officers through Section 19 of the

CPIUN. *See, e.g.*, *Brzak*, 597 F.3d at 113 (finding that defendant UN officials were entitled to

diplomatic immunity because "the CPIUN incorporates [diplomatic immunity] by reference").

But by its own terms, the VCDR applies only to diplomats of foreign states, and not to officials

of international organizations.[6] The VCDR is thus not an independent source of immunity for

UN officers, and does not shield them when immunity under the CPIUN is unavailable.[7]

---

[6]    Article 31 of the VCDR applies only to "diplomatic agent[s]," which the VCDR defines as "the head of the mission or a member of the diplomatic staff of the mission." VCDR art. 1(e) Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. In turn, the head of the mission is defined as "the person charged by the *sending State* with the duty of acting in that capacity," *id.* art. 1(a) (emphasis added), and the members of the diplomatic staff are "the members of the staff of the mission having diplomatic rank." *Id.* art. 1(d).

[7]    The Government contends, in a footnote, that its arguments regarding ineffectual service of process under the VCDR and the Headquarters Agreement should be deemed conceded because Plaintiffs allegedly did not respond to those arguments. Reply at 14 n.8. That contention overlooks Plaintiffs' argument that the VCDR applies only through the CPIUN, which has been breached and is therefore inoperable in this case. *See* Pls.' Opp'n.at 36. n.8. In addition, the Government's contention with respect to the Headquarters Agreement underscores Plaintiffs'

Defendants Ban and Mulet cannot enjoy immunity where, for the reasons stated above, they have unclean hands, and where the application of immunity would violate Plaintiffs' constitutional right of access.  The Government has not addressed these arguments in its Reply.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the Government's request that this case be dismissed on the ground of immunity, and affirm that Plaintiffs have properly served process on Defendants.


 Dated: August 28, 2014                                    Respectfully Submitted,


IRA KURZBAN (admitted *pro hac vice*)          /s/: Beatrice Lindstrom_____
Kurzban Kurzban Weinger Tetzeli & Pratt P.A.   BEATRICE LINDSTROM (BL-8321)
2650 S.W. 27th Avenue                          BRIAN CONCANNON, JR. (admitted *pro hac vice*)
Second Floor                                   Institute for Justice & Democracy in Haiti
Miami, Florida 33133                           666 Dorchester Avenue
Tel: (305) 444-0060                            Boston, MA 02127
Fax: (305) 444-3503                            Tel: (617) 652-0876

JEFFREY BRAND (admitted *pro hac vice*)
Center for Law and Global Justice
University of San Francisco School of Law
2130 Fulton Street
San Francisco, CA 94117
Tel: (415) 422-6360
Fax: (415) 422-6433

                              *Attorneys for Plaintiffs*

---

argument that traditional means of serving Defendants were impracticable.  Memorandum of Law in Support of Plaintiffs' Motion for Affirmation that Service Has Been Made, at 6-9 (Feb. 4, 2014).  Neither of these arguments applies to service of MINUSTAH at its base in Haiti, which is not governed by the Headquarters Agreement.

Furthermore, the case cited by the Government in support of its argument for concession, *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010), is off point.  That case holds that a plaintiff who fails to defend *a claim* in any way should be deemed to have "abandoned" the claim.  *Id.* at 268.  Plaintiffs in this case have in no way abandoned any of their claims.  To the contrary, Plaintiffs have been vigorously defending their ability to pursue those claims by responding to the Government's Statement of Interest.

If the Government's reading of *Brandon* were correct, it would necessarily follow that the Government has conceded Plaintiffs' argument that Defendants are not immune in light of the unclean hands doctrine because the Government failed to address that argument in its Reply.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 28th day of August, 2014, a true and correct copy of the

foregoing document was served via mail, on the following:

United Nations
760 United Nations Plaza
New York, NY 10017

MINUSTAH Headquarters
Logistics Base
Boulevard Toussaint Louverture and Clercine 18
Port-au-Prince, Haiti

Ban Ki-Moon
3 Sutton Place
New York, NY 10022

Edmond Mulet
United Nations
760 United Nations Plaza
New York, NY 10017


Copies of the same have also been sent via electronic mail to the following:


Ellen Blain, Esq.
Assistant United States Attorney
ellen.blain@usdoj.gov

Nicholas Cartier, Esq.
United States Department of Justice
nicolas.cartier@usdoj.gov


Dated:  August 28, 2014                    Respectfully submitted,
        New York, New York

                                           */s/: Beatrice Lindstrom*_____
                                           Beatrice Lindstrom (BL-8321)
                                           Institute for Justice & Democracy in Haiti
                                           666 Dorchester Ave.
                                           Boston, MA 02127
                                           Tel: (617) 652-0876