UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                    :
DELAMA GEORGES, *et al.*,                           :
                                    Plaintiffs,     :
                                                    :          13-CV-7146 (JPO)
                  -v-                               :
                                                    :          OPINION AND ORDER
UNITED NATIONS, *et al.*,                           :
                                    Defendants.     :
                                                    :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

Plaintiffs bring this class action diversity suit alleging various tort and contract claims

against defendants the United Nations ("UN"), the United Nations Stabilization Mission in Haiti

("MINUSTAH"), United Nations Secretary-General Ban Ki-moon, and former Under-Secretary-

General for MINUSTAH, Edmond Mulet.  (Dkt. No. 1 ("Compl.").)  Specifically, Plaintiffs

allege that Defendants are responsible for an epidemic of cholera that broke out in Haiti in 2010,

killing over 8,000 Haitians and making over 600,000 ill.  (*Id.* ¶¶ 1-2.)

Before the Court are two issues.  First, Plaintiffs have been unable to serve the UN in

person, and they request affirmation by the Court that service has been made, or, in the

alternative, an extension of time for service of process by alternative means.  Second is the

question whether, under international treaties to which the United States is a party, Defendants

are immune from Plaintiffs' suit.  For the reasons that follow, the Court concludes that all

Defendants are immune.  Accordingly, the case is dismissed for lack of subject matter

jurisdiction, and Plaintiffs' motion is denied as moot.

## I.      Background[1]

Plaintiffs Delama Georges, Alius Joseph, Lisette Paul, Felicia Paule, and Jean Rony

Silfort are citizens of the United States or Haiti who claim that they or their relatives were killed

or made ill by the cholera epidemic that erupted in Haiti in 2010.  (Compl. ¶¶ 14-18.)  The UN is

an international organization founded in 1945 with the goals of "maintain[ing] international

peace and security" and "promot[ing] and encourage[ing] respect for human rights."  (*Id.* ¶ 19.)

The UN's principal place of business is in New York.  (*Id.*)  MINUSTAH is a subsidiary body of

the UN established in 2004 and based in Haiti.  (*Id.* ¶¶ 20, 48.)  Ban Ki-moon is and was, during

the relevant time period, the Secretary-General of the UN.  (*Id.* ¶ 21.)  Mulet was the Special

Representative of the Secretary-General and Head of MINUSTAH from March 31, 2010, to May

17, 2011 (*id.* ¶ 22), and is now the Assistant Secretary-General for UN Peacekeeping Operations

(Dkt. No. 21).

Plaintiffs allege that in October 2010, Defendants deployed over 1,000 UN personnel

from Nepal to Haiti without screening them for cholera, a disease that is endemic to Nepal and

with which some of the personnel were infected.  (Compl. ¶¶ 5, 59.)  Plaintiffs further allege that

Defendants stationed these personnel on a base at the banks of the Meille Tributary, which flows

into Haiti's primary source of drinking water, the Artibonite River.  It was at this base, Plaintiffs

contend, that these recently transferred personnel discharged raw untreated sewage into the

tributary, causing an outbreak of cholera in Haiti.  (*Id.* ¶¶ 6-9.)

Plaintiffs allege that Defendants have failed to establish any claims commission or other

dispute resolution mechanism to resolve the claims of those who have been injured or who have

lost family members to the cholera outbreak.  This refusal, Plaintiffs contend, is in direct

---

[1] The following facts are taken from the Complaint.  They are assumed true for the purposes of
the motion.

contravention of Defendants' responsibility under the Convention on the Privileges and

Immunities of the United Nations ("CPIUN") and the Agreement Between the United Nations

and the Government of Haiti Concerning the Status of the United Nations Operation in Haiti

("SOFA") to offer appropriate modes of settlement for third-party private-law claims.  (*Id.* ¶¶ 10-

12.)

Because Plaintiffs could not personally serve the Complaint, they moved this Court to

affirm that service had been made or to permit service by alternative means.  (Dkt. No. 4.)  The

UN did not respond to Plaintiffs' motion; instead, the United States filed a "Statement of

Interest" contending that Defendants are immune from Plaintiffs' suit and requesting that the

Court dismiss the Complaint for lack of subject matter jurisdiction.  (Dkt. No. 21 ("Statement of

Interest").)

**II.      Discussion**

**A.      Legal Standard**

A case must be dismissed pursuant to Federal Rule of Civil Procedure 12(h)(3) if the

court "determines at any time that it lacks subject-matter jurisdiction."  *See also Cave v. E.*

*Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("If a court perceives at any

stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice

of the defect by dismissing the action.").  A defendant's immunity from suit divests the Court of

subject matter jurisdiction.  *See, e.g.*, *Brzak v. United Nations*, 597 F.3d 107, 111-12 (2d Cir.

2010) (affirming dismissal of suit against the UN for lack of subject matter jurisdiction on

ground of immunity under the CPIUN); *De Luca v. United Nations Org.*, 841 F. Supp. 531, 533

(S.D.N.Y. 1994) (dismissing claim against the UN for lack of subject matter jurisdiction on the

ground of immunity from suit).  The court, in determining whether it has subject matter

jurisdiction, may refer to evidence outside the pleadings.  *Makarova v. United States*, 201 F.3d

110, 113 (2d Cir. 2000) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).  In doing so, however, the court must accept as true all factual allegations in the complaint and "[c]onstru[e] all ambiguities and draw[] all inferences" in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (quoting *Makarova*, 201 F.3d at 113) (first alteration in original).  The party asserting subject matter jurisdiction bears the burden of proving by a preponderance of the evidence that it exists. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

### B.     Immunity from Suit of the United Nations and MINUSTAH

The Charter of the United Nations ("UN Charter") states that the UN "shall enjoy in the territory of each of its Members such privileges and immunities as are necessary for the fulfillment of its purposes."  U.N. Charter art. 105, para. 1.  The CPIUN, which was adopted less than a year after the UN Charter, defines the UN's privileges and immunities in more detail.  *See* Convention on Privileges and Immunities of the United Nations, Feb. 13, 1946, *entered into force with respect to the United States* Apr. 29, 1970, 21 U.S.T. 1418.  The CPIUN provides that "[t]he United Nations, its property and assets wherever located and by whomsoever held, shall enjoy immunity from every form of legal process except insofar as in any particular case it has expressly waived its immunity."  CPIUN art. II, § 2.  Because the CPIUN is self-executing, this Court must enforce it despite the lack of implementing legislation from Congress.  *Brzak*, 597 F.3d at 111-12.

The Second Circuit's decision in *Brzak v. United Nations* requires that Plaintiffs' suit against the UN be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(h)(3).  In *Brzak*, the Second Circuit unequivocally held that "[a]s the CPIUN makes clear, the United Nations enjoys absolute immunity from suit unless 'it has expressly waived its immunity.'"  597 F.3d at 112 (quoting CPIUN art. II, § 2).  Here, no party contends that the UN has expressly

4

waived its immunity.  (Statement of Interest at 6 ("In this case, there has been no express waiver. To the contrary, the UN has repeatedly asserted its immunity.").); (Dkt. No. 43, at 1 ("Waiver is not at issue here.").)  Accordingly, under the clear holding of *Brzak*, the UN is immune from Plaintiffs' suit.  In addition, MINUSTAH, as a subsidiary body of the UN, is also immune from suit.  *See Sadikoglu v. United Nations Dev. Programme*, No. 11 Civ. 0294 (PKC), 2011 WL 4953994, at *3 (S.D.N.Y. Oct. 14, 2011).

Plaintiffs argue that the UN has materially breached the CPIUN such that it is not entitled to the "benefit of the bargain."  Specifically, Plaintiffs insist that the UN has breached section 29(a), which provides that "[t]he United Nations shall make provisions for appropriate modes of settlement of . . . disputes arising out of contracts or other disputes of a private law character to which the United Nations is a party."  CPIUN art. VIII, § 29(a).  Because the UN has failed to provide *any* mode of settlement for the claims at issue here, Plaintiffs argue, it is not entitled to benefit from the CPIUN's grant of absolute immunity.

This argument is foreclosed by *Brzak*.  In *Brzak*, the plaintiffs argued that the UN's dispute resolution mechanism was inadequate to resolve their case, and that this inadequacy stripped the UN of its immunity.  The Second Circuit rejected this argument on the ground that it ignores the "express waiver" requirement of the CPIUN.  *Brzak*, 597 F.3d at 112.  Here too, construing the UN's failure to provide "appropriate modes of settlement" for Plaintiffs' claims as subjecting the UN to Plaintiffs' suit would read the strict express waiver requirement out of the CPIUN.

Moreover, nothing in the text of the CPIUN suggests that the absolute immunity of section 2 is conditioned on the UN's providing the alternative modes of settlement contemplated by section 29.  *See Tachiona v. United States*, 386 F.3d 205, 216 (2d Cir. 2004) ("When interpreting a treaty, we begin with the text of the treaty and the context in which the written

words are used." (internal quotation marks omitted) (interpreting the CPIUN)).  As the Second

Circuit held in *Brzak*, the language of section 2 of the CPIUN is clear, absolute, and does not

refer to section 29: the UN is immune from suit unless it expressly waives its immunity.  *Brzak*,

597 F.3d at 112; *see also Sadikoglu*, 2011 WL 4953994, at *5 ("Nor does the contested status of

the parties' efforts to arbitrate or settle the current dispute strip [the United Nations Development

Programme] of its immunity.  The CPIUN merely requires the UN to 'make provisions for

appropriate modes of settlement of disputes arising out of contracts or other disputes of a private

law character to which the United Nations is a party.'  However, nothing in this section or any

other portion of the CPIUN refers to or limits the UN's absolute grant of immunity as defined in

article II—expressly or otherwise." (citation omitted)).  Further, the CPIUN's drafting history

indicates at most the commitment that, pursuant to section 29, the UN will provide a dispute

resolution mechanism for private claims; it does not, as Plaintiffs argue, indicate the intent that

such a mechanism is *required* in order for the UN to claim immunity in any particular case.  *See*

*Tachiona*, 386 F.3d at 216 ("Treaties are construed more liberally than private agreements, and

to ascertain their meaning we may look beyond the written words to the history of the treaty, the

negotiations, and the practical construction adopted by the parties." (brackets and internal

quotation marks omitted)).

It is true that section 29 uses mandatory language, providing that the UN "*shall* make

provisions for appropriate modes of settlement of . . . disputes . . . ."  This language may suggest

that section 29 is more than merely aspirational—that it is obligatory and perhaps enforceable.

But even if that is so, the use of the word "shall" in section 29 cannot fairly be read to override

the clear and specific grant of "immunity from every form of legal process"—absent an express

waiver—in section 2, as construed by the Second Circuit.

Finally, "in construing treaty language, '[r]espect is ordinarily due the reasonable views of the Executive Branch.'" *Id.* (quoting *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 168 (1999)) (alteration in original); *see also Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2d Cir. 2010) ("[W]hile the interpretation of a treaty is a question of law for the courts, given the nature of the document and the unique relationships it implicates, the 'Executive Branch's interpretation of a treaty is entitled to great weight.'" (quoting *Abbott v. Abbott*, 560 U.S. 1, 15 (2010))).  For the reasons given above, the United States' interpretation that the CPIUN's grant of immunity is vitiated only by an express waiver of that immunity by the UN is reasonable.  Here, where such an express waiver is absent, the UN and its subsidiary body MINUSTAH are immune from suit.

## C.  Immunity from Suit of Ban Ki-moon and Edmond Mulet

The UN Charter provides that "officials of the Organization shall . . . enjoy such privileges and immunities as are necessary for the independent exercise of their functions in connection with the organization."  U.N. Charter art. 105, para. 2.  The CPIUN further provides that "the Secretary-General and all Assistant Secretaries-General shall be accorded . . . the privileges and immunities . . . accorded to diplomatic envoys, in accordance with international law."  CPIUN art. V, § 19.  The Vienna Convention on Diplomatic Relations is the relevant international law here; that convention states that current diplomatic agents "enjoy immunity from [the] civil and administrative jurisdiction" of the United States, except in three situations, none of which is relevant here.[2]  *See* Vienna Convention on Diplomatic Relations, art. 31, Apr.

---

[2] Those situations are: "(a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission; (b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State; [and] (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions."  Vienna Convention art. 31.

18, 1961, *entered into force with respect to the United States* Dec. 13, 1972, 23 U.S.T. 3227, (the

"Vienna Convention"); *Brzak*, 597 F.3d at 113 (stating that, under the Vienna Convention,

"current diplomatic envoys enjoy absolute immunity from civil and criminal process").  Thus,

Ban Ki-moon and Edmond Mulet, both of whom currently hold diplomatic positions, are

immune from Plaintiffs' suit.  Accordingly, Plaintiffs' suit against them must be dismissed.  *See*

22 U.S.C. § 254d (requiring a district court to dismiss "[a]ny action or proceeding against an

individual who is entitled to immunity with respect to such action or proceeding under the

Vienna Convention").

## III.   Conclusion

For the foregoing reasons, the United Nations, MINUSTAH, Ban Ki-moon, and Edmond

Mulet are absolutely immune from suit in this Court.  Plaintiffs' claims against these defendants

are therefore DISMISSED under Rule 12(h)(3) for lack of subject matter jurisdiction.  Plaintiffs'

motion for affirmation that service has been made, or, in the alternative, for service of process by

alternative means is DENIED as moot.

The Clerk of Clerk is directed to close the motion at Docket Number 4 and to close the

case.


SO ORDERED.

Dated: January 9, 2015
     New York, New York

_____
J. PAUL OETKEN
United States District Judge